IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., and WYETH LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 25-1306 (GBW) CONSOLIDATED |
| v. | ) ) | |
| APOTEX INC. and APOTEX CORP., | ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) ) | |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS**
**<u>REGARDING DISCOVERY DISPUTE</u>**

Morris, Nichols, Arsht & Tunnell LLP
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

OF COUNSEL:

Thomas H.L. Selby
Stanley E. Fisher
Christopher J. Mandernach
Andrew L. Hoffman
Ayelet Evrony
Rhochelle Krawetz
Daniel Schneider
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC  20024
(202) 434-5000

*Attorneys for Plaintiffs*

Originally Filed:  July 21, 2026
Redacted Version Filed:  July 28, 2028

Dear Judge Williams:

We write on behalf of Plaintiffs ("Pfizer") in opposition to Apotex's July 17 letter brief ("Br."). The brief confirms what the meet-and-confer record shows:  Apotex lacks authority for its sweeping requests, has no viable relevance theories, distorts—or simply ignores—Pfizer's repeated explanations, and manufactures disputes in a rush to the courthouse.  The motion should be denied.

**I. Prior Litigation Materials:** Apotex's first demand bundles two different document categories—(a) confidential infringement materials concerning its competitors' ANDA products, and (b) prior case settlement agreements—neither of which is relevant to the claims and defenses in this matter.  Rule 26 requires more than the fact that the infringement materials and settlements involve the same patent and speculation that something useful might be in them.  Pfizer has agreed to produce materials bearing on validity of the patent-in-suit, Ex. F at 2; nothing more is required.[1]

**a. Infringement Materials:** Apotex points to purported similarities between this action and the prior actions, Br. at 2, but ignores the dispositive difference: the ANDA products are not the same. Infringement in a Hatch-Waxman case turns on the specific ANDA product at issue.  *See Medicis Pharm. Corp. v. Actavis Mid Atlantic LLC*, 282 F.R.D. 395, 397 (D. Del. 2012).  Courts therefore reject requests for all materials from prior litigations merely because the same patent was asserted. *E.g.*, *Wyeth v. Impax Lab'ys, Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006).  *TQ Delta, LLC v. Dish Network Corp.*, C.A. No. 15-614, D.I. 404 (D. Del. Feb. 23, 2022), is not to the contrary.  *Contra* Br. at 2.  There, the moving party requested expert materials that "pertain to 'the scope and validity of claims,'" including opinions on claim construction.  Ex. I at 3, 5.  Here, Apotex's request is much broader, seeking all infringement-related materials from the prior actions.  Br. at 2.  Further, Pfizer already agreed to produce validity-related materials, there are no prior claim construction proceedings, and the materials Apotex seeks include confidential information from adverse third parties that are competitors, unlike in *TQ Delta*.  *See* Ex. I at 8.

Apotex also assumes that Pfizer will use Dr. Adam Matzger as a testifying infringement expert, and then speculates that prior-action materials "may expose inconsistencies" in his opinions.  Br. at 2.  But "mere suspicion or speculation" is an insufficient basis on which to order relief.  *Ethicon LLC v. Intuitive Surgical, Inc.*, 2018 WL 1392341, at *3 (D. Del. Feb. 12, 2018).  Judge Burke rejected a materially similar request from Dexcel in the prior cases for the same reason.  Ex. 1 (*Pfizer Inc. v. Dexcel Pharma Techs. Ltd.*, C.A. No. 23-879, D.I. 236 (D. Del. Sept. 29, 2025)). The speculation is particularly pronounced here: the expert disclosure deadline is over a year away, and while Pfizer has disclosed multiple experts under the protective order, including Dr. Matzger, Pfizer has yet to receive substantial document discovery from Apotex or samples for testing.  Pfizer has not determined who will perform the testing or submit expert reports.  If another expert is used, Apotex's alleged relevance theory collapses.  *See Pernix Ireland Pain Dac v. Alvogen Malta Ops. Ltd.*, 316 F. Supp. 3d 816, 828 (D. Del. 2018) (holding that expert reports from a different but related litigation cannot be used as substantive evidence or for impeachment of a different expert).

---

[1]    Pfizer also refused to produce these materials because they contain third-party confidential information subject to protective orders in the prior actions.  Pfizer understands that the Intervenors will address this issue.

The Honorable Gregory B. Williams
July 21, 2026

**b. Settlement Agreements**: Apotex fails to satisfy the Federal Circuit's demanding standard for the production of confidential settlement agreements. Because Apotex's only relevance theory centers on two substantive patent issues—obviousness and patent misuse—Federal Circuit law controls, permitting discovery only upon a showing of materiality, mindful of the bedrock policy favoring protection of settlement negotiations. *Adv. Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307-08 (Fed. Cir. 2001). Apotex does not come close to meeting this standard. It tersely claims that the agreements are relevant to its "obviousness defense," Br. at 2, but offers no explanation of how or why the agreements could possibly touch the obviousness analysis. Pfizer has no intention of using the agreements to prove nonobviousness, and courts in this district routinely deny requests for settlement agreements in analogous situations. *E.g.*, Ex. 2 (*Allergan USA, Inc. v. Aurobindo*, C.A. No. 19-1674, at 7:3-17 (D. Del. Jan. 10, 2020)); Ex. 3 (*BioDelivery Sciences Int'l, Inc. v. Chemo Rsch., S.L.*, C.A. No. 19-444, D.I. 148 (D. Del. Jan. 30, 2020)); Ex. 4 (*Alza Corp. v. Par*, C.A. No. 13-1104, D.I. 94 at 15-16 (D. Del. Feb. 19, 2014)); *see also* Ex. 5 (*Celgene Corp. v. Hetero Labs Ltd.*, C.A. No. 17-3387, D.I. 533 (D.N.J. Dec. 8, 2019)) (rejecting demand for prior case settlement agreement involving the same patents). The sole decision Apotex cites is both out-of-circuit and out-of-step with this on-point authority.

Apotex's patent misuse argument fares no better. Br. at 2. Apotex cites its Answer in support, but that only proves Pfizer's point—Apotex has not pleaded patent misuse. D.I. 9 at 10-11. "[T]he discovery rules are designed to assist a party to prove a claim that it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2011 WL 5416334, at *8 (D.N.J. Nov. 7, 2011) (citation omitted). The Court should not permit Apotex's fishing expedition, which is nothing more than an attempt to gain an improper competitive advantage in its own settlement negotiations in this litigation.

**II. Tafamidis Solid-State Forms:** Apotex next moves for "all documents in [Pfizer's] possession regarding tafamidis solid forms," and claims that "Pfizer has agreed to produce only R&D documents related to the '441 patent." Br. at 3. That is wrong, and there is no dispute for the Court to resolve. Pfizer is willing to undertake a reasonable search for the requested documents. As Pfizer repeatedly explained, however, its research into tafamidis solid-state forms all occurred before the patent-in-suit was filed. Ex. 6 at 7. Thus, the documents Apotex seeks—"tafamidis crystal forms … absent from the specification"—almost without exception pre-date the patent filing. The "post-issuance materials" Apotex invokes are publicly available, third-party patent filings purporting to describe tafamidis solid-state forms, which were cited by defendants' validity experts in the prior litigation. Those materials will be produced, as Pfizer told Apotex on multiple occasions. *E.g.*, Ex. 6 at 4. Pfizer further has agreed to produce not only research-and-development documents, but also regulatory documents, FDA correspondence, and prosecution files. *E.g.*, Ex. 7 at 10-11, 51-55. In short, Pfizer has agreed to a reasonable search for non-privileged materials and has committed to produce over 100,000 documents comprising millions of pages relating to tafamidis solid-state forms.

**III. Samples:** Apotex's "one-way street" rhetoric, Br. at 3, ignores the law and obscures a basic distinction in ANDA litigation. Samples of Apotex's ANDA product bear on whether the accused product infringes the patent-in-suit because infringement focuses "on what is likely to be sold following FDA approval." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1568 (Fed. Cir. 1997). Pfizer's commercial product and API are different. As a matter of law, "[i]nfringement is

2

The Honorable Gregory B. Williams
July 21, 2026

determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention." *Int'l Visual Corp. v. Crown Metal Mfg. Co., Inc.*, 991 F.2d 768, 772 (Fed. Cir. 1993) (citation omitted); *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994). Testing Vyndamax® or its API does not change what Apotex's ANDA product is or whether it meets the asserted claims.

During the meet-and-confer process, Pfizer pressed Apotex for authority supporting its novel request. Apotex identified none, offering only the empty assertion that the request comports with "well-established practice in ANDA crystal form cases." Ex. 6 at 8. Apotex repeats the same refrain here, Br. at 3 (calling Pfizer's position "contrary to longstanding practice"), but fails to cite a single case where the plaintiff in ANDA litigation was compelled to produce samples of its own product. To the contrary, cases on all fours reach the opposite conclusion.

*In re Fetzima*, 2019 WL 2385699 (D.N.J. June 6, 2019), is exemplary. There, the defendant sought samples of the innovator company's API, arguing they were central to the solid-state patent asserted in the case and might support a counterclaim. *Id.* at *3-4. The court rejected the request because the defendant, like Apotex, cited no case supporting its unprecedented position, and seeking information to support hypothetical claims "is an improper use of the discovery process." *Id.*; *see also* Ex. 8 (*Novartis Pharms. Corp. v. Actavis South Atl. LLC*, C.A. No. 11-1077, D.I. 174 at 38-43 (D. Del. Nov. 7, 2012) (denying request for brand's samples as irrelevant)). Apotex's unpled, far-fetched delisting theory fails for the same reason. Br. at 3. It asks the Court to assume that Pfizer misled the FDA when it represented—both in words and in data—that Vyndamax® comprises Form 1, a form Apotex admits is covered by the asserted claims. Ex. 9 at -473-74.

Frustrated by the law, Apotex and its expert, Dr. Hollingsworth, argue that pure samples of the forms disclosed in the '441 patent are needed as reference standards. Br. at 3; Ex. G ¶¶ 15-17. But "[i]nfringement is determined on the basis of the claims," *Int'l Visual Corp.*, 991 F.2d at 772, and the claims recite specific analytical parameters—not a particular form, *e.g.*, Ex. 10 at claim 1 ("A crystalline form of [tafamidis], wherein said crystalline form has an analytical parameter selected from the group consisting of" two solid state NMR shifts, one PXRD peak, and one Raman shift peak.). Reference standards thus are irrelevant to the infringement inquiry. *Schering*, the case Apotex cites for the unremarkable proposition that it may test its own product, Br. at 3, makes no mention of compelled innovator-supplied reference standards, or reference standards at all. Even if such standards were scientifically useful, Apotex has not shown why Pfizer must supply them. Pfizer does not regularly produce forms other than Form 1. And Apotex is equally positioned to make the requested forms—the patent provides recipes, Ex. 10 at 21:45-23:4, and Apotex does not explain why it or its experts cannot generate them. ███████████████████████ ████████████████████████████████████████████████████—confirming that reference materials, if necessary, can be (and have been) acquired without a court order compelling Pfizer to supply them. Ex. 11 at -872-877. That testing also disproves Apotex's illusory, unpled delisting threat: ████████████████████████████████████████████████ ██████████████████████████ *Id.* It cannot now try to sow doubt before this Court with (baseless) suggestions that are wholly contradicted by ████████████████████ ██████ The Court should not compel Pfizer to produce its own drug product and API samples, especially where Apotex has no viable relevance theory.

3

The Honorable Gregory B. Williams
July 21, 2026

Respectfully,

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)

MED/bac
Attachments

cc:    Clerk of the Court (via hand delivery; w/attachments)
        All Counsel of Record (via electronic mail; w/attachments)

4

# EXHIBIT 1

*Pfizer Inc. v. Dexcel Pharma Techs. Ltd.*,
C.A. No. 23-879, D.I. 236 (D. Del. Sept. 29, 2025)

# *Pfizer Inc. et al v. Dexcel Pharma Technologies Limited, et al*

**Delaware District Court**

Case no. 1:23-cv-00879-GBW-CJB (D. Del.)
Filed date: September 29, 2025
Docket entry no.: 236

Docket text:

ORAL ORDER: The Court, having reviewed Defendant Dexcel Pharma Techs. Ltd.'s ("Dexcel") discovery dispute motion ("Motion"), (D.I. 195 ), and the briefing related thereto, (D.I. 196 ; D.I. 199 : D.I. 200 ), hereby ORDERS that the Motion is DENIED. With the Motion, Dexcel seeks an order that Plaintiffs must produce redacted copies of certain "Contention Documents" involving communications between Plaintiffs and Dexcel's co-Defendants concerning the co-Defendants' ANDAs. (D.I. 196 ; D.I. 196 -5) Because the current Protective Order would otherwise prohibit the requested discovery, Dexcel needs to demonstrate good cause to support its request. (D.I. 196 at 2); see Pansy v. Borough of Stroudsburg, 23 F.3d 772, 790 (3d Cir. 1994). But in support of its Motion, Dexcel said only that it had "reason to believe" that Plaintiffs' infringement assertions against Co-Defendants includes potentially contradictory statements that undermine Plaintiffs' rebuttal validity arguments, (D.I. 196 at 1), or that this is "potentially" the case, (id. at 2). But Dexcel provided no further information to support these conclusory assertions, and thus its request is essentially premised on nothing more than speculation. (D.I. 199 at 1) And speculation is insufficient to justify a request for discovery, see MacQueen v. Union Carbide Corp., Civil Action No. 13-831-SLR-CJB Consolidated, 2014 WL 6809811, at *9 (D. Del. Dec. 3, 2014), or to demonstrate good cause. Ordered by Judge Christopher J. Burke on 09/29/2025. (sam) (Entered: 09/29/2025)

This PDF was generated on September 30, 2025 by PacerPro for a text-only docket entry.

https://app.pacerpro.com/cases/18476134

# EXHIBIT 2

*Allergan USA, Inc. v. Aurobindo Pharma Ltd.*,
C.A. No. 19-1674 (D. Del. Jan. 10, 2020)
(excerpted)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ALLERGAN USA, INC., ALLERGAN )
HOLDINGS UNLIMITED COMPANY, )
ALLERGAN PHARMACEUTICALS )
INTERNATIONAL LIMITED and )
JANSSEN PHARMACEUTICA NV, )
                    )
        Plaintiffs, )
                    ) C.A. No. 19-1674(RGA)
v. )
                    )
AUROBINDO PHARMA LTD. and )
AUROBINDO PHARMA USA, INC., )
                    )
        Defendants. )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALLERGAN USA, INC., ALLERGAN )
HOLDINGS UNLIMITED COMPANY and )
EDEN BIODESIGN, LLC )
                    )
        Plaintiffs, )
                    ) C.A. No. 19-1727(RGA)
v. )
                    )
AUROBINDO PHARMA LTD., AUROBINDO )
PHARMA USA, INC., ALKEM )
LABORATORIES LIMITED, HETERO )
LABS LIMITED, HETERO USA INC., )
MSN PHARMACEUTICALS, INC., SUN )
PHARMACEUTICAL INDUSTRIES )
LIMITED and ZYDUS )
PHARMACEUTICALS (USA) INC., )
                    )
        Defendants. )

J. Caleb Boggs Courthouse
844 North King Street
Wilmington, Delaware

Friday, January 10, 2020
12:24 p.m.
Scheduling Conference

BEFORE: THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

APPEARANCES:

MORRIS NICHOLS ARSHT & TUNNELL LLP
BY: JEREMY A. TIGAN, ESQUIRE

-and-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
BY: PETER J. ARMENIO, ESQUIRE

For the Plaintiffs

MORRIS JAMES, LLP
BY: KENNETH L. DORSNEY, ESQUIRE

-and-

KRATZ & BARRY LLP
BY: GEORGE J. BARRY, III, ESQUIRE

For the Defendants
Aurobindo Pharma Ltd and
Aurobindo Pharma USA, Inc.

MORRIS JAMES, LLP
BY: KENNETH L. DORSNEY, ESQUIRE

-and-

PERGAMENT & CEPEDA
BY: DMITRY V. SHELHOFF, ESQUIRE

For the Defendants
Hetero Labs Limited and
Hetero USA Inc.

YOUNG CONAWAY STARGATT & TAYLOR LLP
BY: PILAR G. KRAMAN, ESQUIRE

-and-

LOCKE LORD LLP
BY: DAVID B. ABRAMOWITZ, ESQUIRE

For the Defendant
Zydus Pharmaceuticals (USA) Inc.

APPEARANCES CONTINUED:

HEYMAN ENERIO GATTUSO & HIRZEL LLP
BY: DOMINICK T. GATTUSO, ESQUIRE

-and-

WINSTON & STRAWN LLP
BY: JOVIAL WONG, ESQUIRE

For the Defendant
Sun Pharmaceutical Industries Limited

PHILLIPS GOLDMAN McLAUGHLIN & HALL, P.A.
BY: DAVID A. BILSON, ESQUIRE

-and-

KNOBBE MARTENS
BY: ANDREA L. CHEEK, ESQUIRE
BY: ANDREW MORRELL, Ph.D.

For the Defendant
Alkem Laboratories Limited

STAMOULIS & WEINBLATT LLC
BY: STAMATIOUS STAMOULIS, ESQUIRE

-and-

GOLDBERG SEGALLA
BY: RICHARD JUANG, ESQUIRE

For the Defendants
MSN Laboratories Private Limited and
MSN Pharmaceuticals, Inc.

*** PROCEEDINGS ***

THE COURT: Good afternoon. Please be seated. Thank you for your patience. I was in court on a different matter that ran long.

So this is the Rule 16 for two cases which I see seem to involve five different generics which the first one is Allergan USA versus Aurobindo Pharma, Civil Action Number 19-1674, and the other one is 19-1727.

So why don't we just have who's here, then I have one or two questions. I saw what you have a dispute about. It's a good dispute to have. I think I can resolve that.

And so Mr. Tigan, there you are.

MR. TIGAN: Good afternoon, Your Honor. I'm here on behalf of all the plaintiffs in both actions, and I'm joined by Mr. Armenio with Quinn Emanuel.

MR. ARMENIO: Good afternoon.

THE COURT: Good afternoon, Mr. Armenio. Have I seen you before?

MR. ARMENIO: Including just last Thursday, we had a final pretrial conference --

THE COURT: Yes.

MR. ARMENIO: -- in another matter.

THE COURT: Yes. Okay. I know what you're talking about. Right. Got it.

Okay. Mr. Dorsney.

MR. DORSNEY: Good afternoon, Your Honor. I'm here on behalf of two defendants, Aurobindo and Hetero, and I have co-counsel on the line for Aurobindo, George Barry from Kratz & Barry. And for Hetero, Dmitry Shelhoff from

**5**

Pergament & Cepeda. And I am from Morris James, Your Honor.

THE COURT: Okay. Well, good afternoon to counsel on the line.

Ms. Kraman, there you are.

MS. KRAMAN: Hello. Pilar Kraman from Young Conaway for Zydus Pharmaceuticals in the 19-1727 matter, and with me David Abramowitz from Locke Lord.

MR. ABRAMOWITZ: Good afternoon, Your Honor.

THE COURT: Hi, Mr. Abramowitz.

Mr. Gattuso, there you are.

MR. GATTUSO: Good afternoon, Your Honor. Dominick Gattuso with Heyman Enerio Gattuso & Hirzel on behalf of Sun. I have with me Jovial Wong from Winston & Strawn.

THE COURT: Okay. And Mr. Bilson.

MR. BILSON: Good afternoon, Your Honor. David Bilson from Phillips Goldman McLaughlin & Hall for Alkem Laboratories. With me from Knobbe Martin at the conference table is Andrea Cheek and back here with me is Andrew Morrell.

THE COURT: And Mr. Stamoulis.

MR. STAMOULIS: Good afternoon, Your Honor. Stam Stamoulis here on behalf of MSN, and with me on the phone is Richard Juang from the Goldberg Segalla firm.

MR. JUANG: Good afternoon, Your Honor.

**6**

THE COURT: Okay. And good afternoon, Mr. Juang.

So good afternoon to all of you. So just why do we have two cases and I guess six defendants? Is there some reason? I didn't look. Are some of the defendants in one case and some of the defendants in the other case?

MR. ARMENIO: So how it's organized, Your Honor, this is Peter Armenio for the plaintiffs, Aurobindo is the only generic in this case to challenge the compound patents. There are fundamental patents to the compound eluxadoline, the active ingredient.

THE COURT: So based on the paragraph 4 certification, that's how you divided it up?

MR. ARMENIO: Correct.

THE COURT: Okay.

MR. ARMENIO: So -- or eluxadoline in the Orange Book, there are patents on compounds. There are patents on polymorphs. There are patents on a composition that helps the product be abuse resistant because there are aspects of it that may lead people to try to abuse the product.

So Aurobindo is the only company to certify against the compound patents, the one and only, and there are different plaintiffs because there's a different ownership structure for the compound patents. So for example, in example Janssen Pharmaceuticals --

**7**

THE COURT: Too much information. Thank you. You've answered the question.

Okay. All right. So in terms of the dispute, as I understand it, my new model order talked about producing settlement agreements at the initial conference, and so I had in mind for that the cases where damages were at issue. And you know, unless plaintiff says that it's going to be doing secondary considerations and saying that licensing proves that it's non-obvious, I don't know what the relevance of settlement agreements would be.

So in any event, but certainly I would go with not including this paragraph here. But certainly, like I said, it's something that might even cause me to have to revise my form. And so as I understand it, that's in both of the proposed scheduling orders. And if you want, I can just cross out the defendant's proposal because everything else is agreed to; right?

MR. ARMENIO: Yes, Your Honor.

THE COURT: And I saw that you wanted to put off figuring out how we would manage these cases until or manage in terms of how long the trial would be until some date which I believe was in January of 2022. When is it?

MR. ARMENIO: Yes, Your Honor. It's in Paragraph 15. We included that and just because there were 14 total patents and multiple different defendants with

**8**

different challenges we thought it might be better, instead of having a dispute now, to just bring it to Your Honor closer to trial.

THE COURT: No, I think that's a reasonable thing. Does anyone object to that?

MS. KRAMAN: No.

THE COURT: Well, I guess no one objects to that because no one's -- okay. So let me give you the dates that I had in mind. Actually, so in Paragraph 15, the date that's here for the trial is May 2nd of 2022, and the status conference date is January 7, 2022 at 9:00 a.m.

Does that timing work in terms of what you all had in mind?

MR. ARMENIO: Yes, for plaintiffs, Your Honor.

MR. ABRAMOWITZ: Yes, for defendants, Your Honor.

THE COURT: I'm just checking. That would be the same in both. I mean, one of the things I suppose that could be decided in January of 2022 is whether the compound patents and all these other patents were all going to be tried at the same time or different times. So why don't we just put in May 2nd, also, in both of the orders, though it's understood that's not a decision at this point as to that these two are going to be tried at the same time.

I'm sure some of you, maybe all of you know that

9

I've tried various different things to keep these kinds of cases from becoming overwhelmingly complex for me by sometimes separating infringement, sometimes by just waiting for the plaintiff to reduce the number of asserted patents, sometimes by having the defendant stipulate to things, but this is all a reason to like let it shake out in January of 2022 when we'll have a much better idea of what's going on.

I forget.  So probably there's some other dates.  Pretrial conference in Paragraph 13 would be April 15, 2022 at 9:00 a.m.  Claim construction hearing, I haven't looked at my calendar specifically, but 9:00 a.m. on December 22nd of 2020.

Hold on.  Let me look at my calendar.  I just want to make sure that I want to have a hearing on that date.

Off the record.

(Discussion held off the record.)

THE COURT:  All right.  Back on the record.

I'm not entirely sure why we picked December 22nd.  So what I'd like to do is I'd like to do it on December 21st rather than the 22nd.  Is that all right?

MS. KRAMAN:  Mm-hmm.

THE COURT:  At 9:00 a.m.

MR. ARMENIO:  Yes, for plaintiffs, Your Honor.

MR. ABRAMOWITZ:  Yes, for defendants.

10

THE COURT:  All right.  And I think that's all.  Is there anything else you wanted to discuss while you're here?

MR. ARMENIO:  Not for plaintiffs, Your Honor.  Thank you for your time.

MR. ABRAMOWITZ:  Not for defendants, Your Honor.

THE COURT:  Okay.  Do you want me to just cross things out and sign this?

MS. KRAMAN:  Sure.

MR. ABRAMOWITZ:  Yeah, that's fine.

MR. ARMENIO:  That would be great.

THE COURT:  All right.  Well, it's nice to meet you all.

Off the record.

(Discussion held off the record.)

THE COURT:  So back on the record.  We'll be in recess.  Thank you very much.

(Everyone said, Thank you, Your Honor.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Heather M. Triozzi
Certified Merit and Real-Time Reporter
U.S. District Court

# EXHIBIT 3

*BioDelivery Sciences Int'l Inc. v. Chemo Research, S.L.*,
C.A. No. 19-444, D.I. 148 (D. Del. Jan. 30, 2020)

Query     Reports     Utilities     Help     Log Out

DISCOVERY-CJB,PATENT

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:19-cv-00444-CFC-CJB

BioDelivery Sciences International, Inc. et al v. Chemo Research, S.L. et al

Assigned to: Judge Colm F. Connolly

Referred to: Judge Christopher J. Burke

Related Cases: 1:16-cv-00175-GMS
1:16-cv-01303-GMS
1:17-cv-00118-GMS
1:17-cv-00282-GMS
1:18-cv-01395-CFC-CJB
1:22-cv-01196-CFC
1:26-cv-00871-UNA
1:25-cv-00926-CFC

Cause: 35:271 Patent Infringement

Date Filed: 03/01/2019

Jury Demand: None

Nature of Suit: 835 Patent - Abbreviated New Drug Application(ANDA)

Jurisdiction: Federal Question

## Plaintiff

**BioDelivery Sciences International, Inc.**     represented by     **Jeremy A. Tigan**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302-351-9106
Email: JTigan@morrisnichols.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony David Raucci**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302-351-9392
Email: araucci@morrisnichols.com
*ATTORNEY TO BE NOTICED*

**Bonnie Fletcher Price**
Email: bfletcherprice@cooley.com
*TERMINATED: 08/24/2022*
*PRO HAC VICE*

**Charles E. Lipsey**
Email: charles.lipsey@finnegan.com
*TERMINATED: 10/13/2021*
*PRO HAC VICE*

custodians. And the Court has no basis to believe that Plaintiffs have failed to list persons who otherwise qualify under Paragraph 3(a)'s definition of a "Custodian[].": (3) With regard to Defendants' complaint that they have not received e-mail from the three listed Paragraph 3 custodians, the Court understands that issue to be moot for now, as Plaintiffs have represented that they are searching for and producing such e-mail.; (4) And with regard to Defendants' request that Plaintiffs reveal their search terms and participate in the process described in Paragraph 5(b) of the Default Standard, the Court agrees with Plaintiffs that the parties seem to have previously understood and mutually agreed that they would not participate in the Paragraph 5(b) process in this case. After all, Defendants did not provide any of their search terms to Plaintiffs during the discovery period. (D.I. 135 at 1) At this time, after significant electronic document search efforts have already been completed, the Court will not order the parties to belatedly attempt the Paragraph 5(b) process. Moreover, Defendants have not yet made a sufficient case that Plaintiffs' actual production of documents is deficient (such that some late-in-the-game exchange of search terms or some additional searching is otherwise warranted).; (5) For these reasons, Defendants' motion in this regard is DENIED. Ordered by Judge Christopher J. Burke on 1/30/2020. (mlc) (Entered: 01/30/2020)

| 01/30/2020 | 147 | ORAL ORDER: The Court, having reviewed Defendants' discovery dispute motion, (D.I. 124 ), and the parties' letter briefs, (D.I. 127, 135), and having heard oral argument, HEREBY ORDERS that with regard to the dispute about documents between Plaintiffs and Endo "concerning Belbuca and patent licensing negotiations and licensing fees relating to Belbuca[,]" (D.I. 127 at 2; see also D.I. 135 at 3-4), the Court GRANTS Defendants' request. The documents appear relevant to Plaintiffs' objective considerations of non-obviousness case as to long-felt need (particularly documents relating to Endo's exiting of the partnership) for the reasons set out by Defendants, and so such discovery is warranted. Ordered by Judge Christopher J. Burke on 1/30/2020. (mlc) (Entered: 01/30/2020) |
|---|---|---|
| 01/30/2020 | 148 | ORAL ORDER: The Court, having reviewed Defendants' discovery dispute motion, (D.I. 124 ), and the parties' letter briefs, (D.I. 127, 135), and having heard oral argument, HEREBY ORDERS with regard to Defendants' request that Plaintiffs produce certain documents from two related cases and produce certain research and development documents, (D.I. 127 at 2-3; D.I. 135 at 2-3): (1) As to documents from the Teva Litigation, the Court DENIES Defendants' request as moot, as it understands that Plaintiffs have "produced everything" from that case. (Tr. at 51); (2) As to documents from the Actavis Litigation, to the extent that invalidity contentions from that litigation regarding the '866 patent have not yet been produced, (Tr. at 51, 58), the Court GRANTS Defendants' request that they be timely produced, as that patent is also at issue in this litigation. As to the other category of documents regarding that litigation called out by Defendants' counsel during the teleconference (i.e., the Osborne and Tipulski depositions, (Tr. at 58-59)), because that material was not specifically referenced or discussed in Defendants' letter, (D.I. 127 at 2), the Court has little information about its relevance. Thus, the Court DENIES that request WITHOUT PREJUDICE to Defendants later making a more fulsome argument as to the relevance of the depositions.; (3) As to both the Actavis and Teva Litigations, the Court also DENIES WITHOUT PREJUDICE Defendants' request for settlement agreements. Here too, the Court had little argument from the parties about that issue, (Tr. at 44-45, 53-54), and from that argument the Court has heard, it has not yet been convinced that the agreements are relevant to the claims and defenses at issue in this case.; (4) With regard to Defendants' request for "discovery into Onsolis[,]" (D.I. 127 at 3), the Court DENIES the request WITHOUT PREJUDICE. The Court is convinced that the parties have not met and conferred over this issue. (D.I. 135 at 2; Tr. at 55) In light of that, and also in light of Defendants' acknowledgement that the documents are "less relevant" to this case than other materials at issue, (Tr. at 48), no relief is appropriate at this time.; (5) As to Defendants' request for "discovery into... |

# EXHIBIT 4

*Alza Corp. v. Par*,
C.A. No. 13-1104, D.I. 94 (D. Del. Feb. 19, 2014)
(excerpted)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


ALZA CORPORATION,                  :    CA NO. 13-1104-RGA

                                   :    February 17, 2014

              Plaintiff,           :

                                   :    9:06 o'clock a.m.

v.                                 :

                                   :

PAR, et al.,                       :

                                   :

              Defendants.          :

...........................:


TRANSCRIPT OF DISCOVERY DISPUTE

BEFORE THE HONORABLE RICHARD G. ANDREWS

UNITED STATES DISTRICT JUDGE


APPEARANCES:


For Plaintiff:      ASHBY & GEDDES

                    BY:  STEVEN J. BALICK, ESQ

                              -and-

agreements relating to the patents-in-suit.  We asked for that prior to talking to Judge Thynge, No. 1.

No. 2, Alza is not talking.  They've -- they've said there are no settlement negotiations, so that's not an issue.

MR. CHOI:  I don't think that's true, your Honor.

THE COURT:  Well, that's not -- and I don't think I really need to hear back and forth on that.

MR. CHOI:  Your Honor, can I make one point?

The point about marketing, generics don't market.  The speculation about there being some agreement in the agreements about marketing efforts, I think it's just purely speculative.

THE COURT:  I think I've got the gist of it here.

How long are these three agreements?

(Pause)

All right.

Why don't you all sit here for a while and we'll be back.

(A recess was taken from 9:21 o'clock a.m. until 9:52 o'clock a.m.)

THE COURT:  Please be seated.

All right.

So I've looked through these three Settlement Agreements.  Most of the things that are speculated in the defendant's letter, they're just not there.

And what's more is, they are not about these

agreements.  None of them even mention the '798 patent.

I'm kind of curious.

I notice in your letter, Mr. Freno --

MR. FRENO:  Oh, yes.

THE COURT:  Sorry.

You said in the first agreement, that Alza entered into this agreement making Actavis's products authorized, the generics concerned, until the end of 2013.

Why do you say until the end of 2013?

MR. FRENO:  I think it was public information that was from a press release.

THE COURT:  Okay.

So, the only thing that's conceivably in these agreements that could possibly be relevant to anything, I think, is the information about pricing, and I'm not persuaded that that has any relevance to commercial success at all.

I think you're going to be able to find out what the prices are through the, more or less, public sources that Mr. Choi mentioned.

Further, in terms of what I've heard before on commercial success, and how I've seen the experts do it is they use sales data, and whether the royalty rate is 1 percent or 10 percent or 20 percent, that doesn't really effect what the amount of the sales are.

So, taking into account that I think there should be

something more than just the minimum standard for doing discovery of Settlement Agreements, I don't really think I see here any reason to turn them over, so I'm not going to -- I'm not going to ask him to turn them over at all, all right?

MR. FRENO:  I guess the only question is, to the extent that during expert discovery, or later on in the case, if some of these -- pricing becomes an issue --

THE COURT:  If it becomes an issue, bring it back up. I mean, you've got a representation from the plaintiff.  They don't ever want to have these things see the light of day and they're not going to use them.

If your experts comes up with, Geez, I can't tell whether it's been a commercial success, unless there's a royalty rate that is 1 percent or 2 percent, come on back.  I don't see anything -- frankly, I'm pretty dubious that that will happen.

If it does, feel free to come back, okay?

MR. FRENO:  Okay.  And, then, obviously, you've had an opportunity to look at the details.

There's nothing -- I presume there's nothing with regard to dividing out?

I think you said that the '798 is not even mentioned.

THE COURT:  Right.  As far as it's not even mentioned in any of these three agreements.

MR. CHOI:  And not by name.

I think one of the agreements talked about

continuations divisional, so the '798 is a continuation of the '129.

I don't think there's any indication that the '798 patent was specifically contemplated in any of those agreements at all.

MR. FRENO:  There is another patent that was just Orange Book listed that Alza owns, and that will probably be introduced into this case.  There are other patents at stake.  I just want to make sure that -- you know, you, obviously, had the opportunity to review them, but it seems hard to believe that the agreements don't contemplate later patents that are going to issue.

I have nothing more to say.

THE COURT:  I mean, you know, I was actually reading through, and I was kind of surprised like on the Settlement Agreement, it didn't even mention the patents.

I'm sorry.  The Settlement Agreement.  That's not what I meant.  I meant the Supply Agreement.

MR. CHOI:  I think that's correct, your Honor.

MR. FRENO:  It's about the product.

THE COURT:  Right.

So, in any event, if down the road it seems like this is somehow or other critical, bring it up, and I'll revisit the issue, but right now I just don't see that it's -- you know, most of the things that you thought it might possibly have it

just doesn't have, and the one thing that -- the only thing that I thought might be an issue was commercial success, but I'm not been persuaded that anything you said today that would lead to think that anything that's in here actually ties in, that you can't just as well from somewhere else.

But if I turn out to be mistaken about that, let me know, okay?

MR. FRENO:  Yes, your Honor.

THE COURT:  I'll give these back to you in a minute.

I just want to go and remove the tabs, okay.

MR. FRENO:  Okay.

MR. CHOI:  Thank you.

(The agreements were handed back to counsel.)

(The proceedings adjourned at 9:58 o'clock a.m.)

* * *

# EXHIBIT 5

*Celgene Corp. v. Hetero Labs Ltd.*,
C.A. No. 17-3387, D.I. 533 (D.N.J. Dec. 8, 2019)

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CELGENE CORPORATION,          :
                              :
          Plaintiff,          :     Civ. Action No. 17-3387 (ES)(MAH)
                              :
     -v-                      :     CONSOLIDATED WITH:
                              :          17-3159 (ES)(MAH)
HETERO LABS LIMITED; HETERO   :          18-13715 (ES)(MAH)
LABS LIMITED UNIT-V; HETERO   :          19-143 (ES)(MAH)
DRUGS LIMITED; HETERO USA, INC.;  :      18-16035 (ES)(MAH)
AUROBINDO PHARMA LIMITED;     :          18-14111 (ES)(MAH)
AUROBINDO PHARMA USA, INC.;   :          18-14366 (ES)(MAH)
AUROLIFE PHARMA LLC; EUGIA    :          18-16395 (ES)(MAH)
PHARMA SPECIALTIES LIMITED;   :
APOTEX INC.; APOTEX CORP.;    :
MYLAN PHARMACEUTICALS, INC.;  :
MYLAN INC.; MYLAN, N.V.;      :     **SPECIAL DISCOVERY MASTER**
BRECKENRIDGE PHARMACEUTICAL,  :           **ORDER NO. 3**
INC.; TEVA PHARMACEUTICALS    :
USA, INC.,                    :
          Defendants.         :

_____

This Order rules on Defendant Apotex's Application to Compel Plaintiff Celgene to Produce a Settlement Agreement Involving the Patents-in-Suit, filed June 19, 2019 (ECF No. 362). Specifically, Apotex seeks to obtain the settlement agreement that Celgene entered into with Synthon Pharmaceuticals Inc., Synthon B.V., and Synthon S.R.O. (collectively "Synthon"), and Alvogen Pine Brook LLC ("Alvogen") in connection with *Celgene Corporation v. Synthon Pharmaceuticals Inc., et al.*, C.A. Nos. 18-10775 and 19-9737 (ES)(MAH)(D.N.J.) ("Settlement Agreement"). The Special Discovery Master has considered the parties' written submissions on this issue (ECF Nos. 362, 377, 390, 429, and 432), and has heard and considered the arguments on this topic presented by the parties at the November 15, 2019 hearing in this matter.

Apotex argues that the Settlement Agreement is relevant to invalidity, unenforceability and remedy issues in the litigation between Celgene and Apotex.  With respect to invalidity, Apotex argues that Defendants have challenged the patents-in-suit on obviousness grounds, and that, in response, Celgene has asserted that the patents-in-suit are not obvious for a number of reasons, including reasons involving objective indicia of non-obviousness such as commercial success.  Apotex asserts that if the Settlement Agreement includes a license to any of the patents-in-suit, that license itself may be probative of non-obviousness.  According to Apotex, that license may also be relevant to the nexus between Celgene's alleged commercial success and the novel aspects of the claimed subject matter.

Regarding unenforceability, Apotex argues that the Settlement Agreement could show patent misuse if, for example, Celgene conditioned a license to the patents-in-suit on Synthon and Alvogen purchasing the active ingredient – pomalidomide, which is unpatented – from Celgene, or if the license demands royalties past the expiration of the patents-in-suit.  For its remedy argument, Apotex asserts that if the Settlement Agreement includes a license setting a royalty rate for any of the patents-in-suit, this could undercut Celgene's attempts to prove irreparable harm because it would suggest the adequacy of damages to remedy infringement.

Celgene responds that Apotex's request for the Settlement Agreement is an attempt to gain an improper competitive advantage in its own settlement negotiations in this litigation. Celgene also argues that the production of the Settlement Agreement would have a chilling effect on other potential settlements in this consolidated litigation and in other Hatch-Waxman cases. Celgene contends that the Settlement Agreement should not be discoverable under Federal Rule of Evidence ("FRE") 408 and that Apotex's request for the Settlement Agreement fails to satisfy the relevance and proportionality requirements of Federal Rule of Civil Procedure ("FRCP") 26.

Responding to Apotex's relevance assertions based on non-obviousness grounds, Celgene argues that any licensing of the patents-in-suit is minimally relevant to commercial success and completely irrelevant to Apotex's nexus arguments for those patents for which Celgene is not asserting commercial success.[1]  Regarding unenforceability, Celgene argues that Apotex has not pled patent misuse in this case, that the deadline for amending pleadings has passed, and that Apotex's alleged basis for patent misuse is unsupported speculation that merely constitutes a fishing expedition.  With respect to Apotex's remedy argument, Celgene contends that courts have rejected this alleged theory of relevance because an injunction is the ordinary remedy granted to a successful patentee in Hatch-Waxman cases.

The Special Discovery Master finds that Apotex has failed to demonstrate that ordering production of the confidential Settlement Agreement entered into by other defendants in this case is relevant and proportional to the needs of this case under FRCP 26.  As Apotex's counsel admitted at the November 15 hearing, all of Apotex's arguments regarding the relevance of the Settlement Agreement "require speculation."  Nov. 15, 2019 Hearing Transcript ("Hrg. Tr.") at 156:3-10.  Moreover, in response to questions from the Special Discovery Master, Celgene's counsel put to rest some of the speculative grounds argued for relevance by the representation at the hearing that any license relating to the Settlement Agreement does not extend beyond the expiration of the patents-in-suit and that any royalties in the licensing of the Settlement Agreement are not tied to any unpatented goods.  Hrg. Tr. at 159:8-160:6.  In its letter brief, Celgene also pointed out that, through documents produced in the case, Apotex knows that Celgene does not manufacture pomalidomide, and that publicly available information on the

[1] Celgene points out that it has not asserted commercial success for the "later expiring formulation patents" in this litigation.  (ECF No. 377 at 4)

3

FDA website shows that Celgene does not hold a Drug Master File for pomalidomide.  (ECF No. 377 at 6).  Thus, Apotex knows that Celgene is not engaging in the activities that Apotex cited as potential patent misuse examples.

Apotex's arguments that a patent license itself may be probative of non-obviousness of the patents-in-suit is insufficient to justify production in this case.  As the Advisory Committee Notes to FRE 408 explain, evidence of an offer to compromise is not admissible at least in part because such "evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position" and given the "consistently impressive ground [of] promotion of the public policy favoring the compromise and settlement of disputes." FRE 408 Notes of Advisory Committee on Proposed Rules.

Apotex's nexus arguments also fail to establish relevance with respect to those patent claims for which commercial success is not being asserted by Celgene, and are speculative as to relevance to commercial success for the other patents-in-suit.  The Federal Circuit "has rejected discovery of settlement agreement where there has been no showing of the 'materiality of the settlement agreement[,]' being 'mindful . . . of the policy in favor of protecting settlement negotiations from being admitted as evidence, thus serving to encourage settlements.'"  *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. 17-01065, 2019 WL 1571666, at *3 (D. Del. Apr. 11, 2019) (quoting *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.* 265 F.3d 1294, 1308 (Fed. Cir. 2001)).

Magistrate Judge Hammer, citing Judge Salas has previously "recognized the inherent tension between Fed. R. Evid. 408 . . . and Rule 26," noting that "Courts in this district . . . have attempted to reconcile 'the two competing rationales behind the rules by requiring the moving party to make a "particularized showing that the evidence sought is relevant and calculated to

4

lead to the discovery or admissible evidence."'" *Deluxe Bldg. Sys. Inc. v. Constructamax, Inc.*, No. 06-2996, 2016 WL 10572481 at *2n.3 (D.N.J. May 16, 2016) (quoting *Ford Motor Co. v. Edgewood Props. Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009). Now that the FRCP 26 standard has changed to a stricter standard of proportionality, the "particularized showing" necessary to obtain a confidential settlement agreement entered into by another party must be demonstrably relevant and proportional to warrant production in the face of the competing interests of FRE 408. Here, Apotex has failed to establish such relevance and thus, requiring the production of the Settlement Agreement is not proportional to the needs of this case.

Apotex's injunctive relief arguments also do not provide a sufficient basis for production of the Settlement Agreement in this matter. As at least one court has pointed out, "certain theories of relevance that would be applicable in other infringement actions are not applicable in [Hatch-Waxman cases]" and that "while settlement agreements can be pertinent to the availability of injunctive relief to the extent they bear on the adequacy of monetary relief, that is less likely to be a factor in a Hatch-Waxman case, because an injunction is the ordinary remedy granted to a successful patentee [under 35 U.S.C. § 271(e)(4)(B)]. *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-cv-1455-WCB, 2017 WL 132265, at *2 (E.D. Tex. Jan 12, 2017). Here, Celgene is statutorily entitled to injunctive relief because this case is a Hatch-Waxman litigation. *See* 35 U.S.C. §§ 271(e)(2) and 271(e)(4)(A). As such, Apotex's remedy argument is insufficient to meet the standard necessary to compel production of this Settlement Agreement.

For the foregoing reasons, Defendant Apotex's Application to Compel Celgene to Produce a Settlement Agreement Involving the Patents-in-Suit is **DENIED**.

**SO ORDERED**

Dated: December 8, 2019                    */s/ Faith S. Hochberg*

                                            Hon. Faith S. Hochberg, U.S.D.J. (ret.)

5

# EXHIBIT 6

Email Correspondence Between the Parties

| | |
|---|---|
| **From:** | Hoffman, Andy |
| **To:** | Shrestha, Roshan P.; Shannon, Luke T.; "Dellinger, Megan E."; Evrony, Ayelet; Mandernach, Christopher; Fisher, Stanley; Selby, Thomas; Pfizer-Tafamidis |
| **Cc:** | "Jack Phillips"; "David A. Bilson"; Alul, Andrew M.; Ruzich, Richard T. |
| **Subject:** | RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis) |
| **Date:** | Thursday, June 11, 2026 4:44:22 PM |
| **Attachments:** | 06.11.26 DRAFT Joint Ltr. requesting disc. dispute telecon-201149781-v3 (WC Edits).docx |

Luke and Roshan,

This a joint letter, not Apotex's motion.  Your original (and current) draft did not accurately reflect the parties' positions or negotiations.  We will not agree to a characterization of the issues that misstates facts, nor will we agree to relegate our concerns to a footnote.  Your most recent edits reaffirm our concern that, in its haste to manufacture disputes and burden the Court at this early juncture of the case, Apotex is expanding its positions and shifting the goalposts.  Not only are such tactics inappropriate, they undercut the parties' efforts to meet and confer and narrow disputes for the Court.  We have attempted to correct these issues in the attached draft.

As to the first issue, your drafts do not accurately convey the points of disagreement.  Pfizer has agreed to produce documents related to the '441 patent from the prior litigation containing only Pfizer confidential information.  May 14, 2026 Letter from A. Hoffman to R. Shrestha at 2.  That includes invalidity contentions, certain deposition transcripts and expert reports, etc.  The issue for the Court's resolution is whether Pfizer must produce additional materials from the prior litigation containing third-party confidential information and for which Apotex has not established any relevance.  As for licenses and agreements, your framing of the issue again misrepresents what Pfizer agreed to produce.  Pfizer's Responses and Objections to Apotex's First Set of RFPs at 70.  The sole dispute is whether Pfizer must produce settlement agreements related to the '441 patent.  Our edits correct each of these errors and present a neutral framing of the issue.

As to the second issue, in letter correspondence and the parties' meet and confers, you repeatedly conveyed that Apotex seeks documents related to Pfizer's development of crystalline forms of tafamidis after the filing of the '441 patent.  May 5, 2026 Letter from R. Shrestha to T. Selby at 3.  According to Apotex, such documents are relevant to its written description defense.  *Id.*  No other relevance argument has ever been articulated, nor has Apotex ever expressed that Pfizer's RFP response was otherwise deficient.  We repeatedly have requested a clear statement of what Apotex believes Pfizer is refusing to produce and what you intend to ask the Court to order in light of what we already told you Pfizer does (and does not) possess.  We have not met and conferred on Apotex's expanded request and will inform the Court accordingly, as needed.  Again, our edits address these errors.

Pfizer has worked cooperatively and in good faith throughout this entire process, and has offered multiple compromises to allow the disputed issues to reach the Court.  Any representation by Apotex to the Court that Pfizer "did not reasonably cooperate in its submission" would be patently false, as pages of email exchanges, hours of meet and confer time, and multiple redline drafts confirm.  Refusing to sign a unilaterally drafted submission that rejects every single one of Pfizer's proposed edits and makes multiple inaccurate representations to the Court is not a failure to "reasonably cooperate."

* * *

As for our inquiries regarding Apotex's samples:  Apotex previously stated it was "looking into the[se] issues" only to now about-face after delaying a response for weeks.  Such tactics are plainly improper.  Nonetheless, if Apotex is taking the position that each and every one of Pfizer's inquiries about samples to date, including expiry and retesting, will be addressed in your response to Interrogatory No. 5, we will wait for that response.  Otherwise, we renew our request to meet and confer.  There is nothing premature about Pfizer's demands, contrary to your email.  Pfizer served RFPs related to samples, and Apotex provided responses that were vague and demand clarification so that Pfizer can determine whether to involve the Court.

1

We understand from your response to Pfizer's request for 5 grams of API from each available batch that Apotex is in possession of 5g and that producing 5g is not overly burdensome.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 | ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Thursday, June 11, 2026 10:57 AM
**To:** Hoffman, Andy <AHoffman@wc.com>; Shannon, Luke T. <LShannon@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Andy,

Apotex has already responded to your inquiry regarding samples.  With respect to questions concerning samples that Apotex has not yet even produced yet, we previously requested that Pfizer submit those questions by interrogatory, to which Apotex will respond in due course.  Apotex is under no obligation to address Pfizer's questions via email concerning API or ANDA product samples it has not yet even produced, and it will not do so.  We understood that Pfizer recognized this, as evidenced by its service of Interrogatory No. 5 just two weeks ago.  Apotex has two additional weeks to respond to that interrogatory and is not required to provide any advance preview of its response.  Moreover, Pfizer's demand for information regarding samples that have not yet been produced is entirely premature.

We have also already explained that providing 3 grams of API from each available batch is sufficient, and that any additional quantity is unnecessary.  Apotex maintains this position.

If we do not receive Pfizer's approval to file the draft joint letter by close of business today, Apotex will proceed with filing the letter unilaterally and will inform the Court that Pfizer did not reasonably cooperate in its submission.

Best regards,
Roshan

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Thursday, June 11, 2026 9:28 AM
**To:** Shannon, Luke T. <LShannon@taftlaw.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M.

<AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Luke,

Your refusal to answer basic questions about Apotex's samples for now nearly a month is unacceptable. By 1pm ET today, please provide answers to the questions we have asked (no less than four times). If Apotex is unwilling to meet that deadline, please provide your availability to meet and confer this afternoon so we can raise this issue with the Court. We are available between 1-2pm and 3-5pm ET. For the avoidance of doubt, below is the information Apotex has failed to provide.

API samples:

- the API batches from which samples will be produced;
- when those API batches were last tested;
- the current expiry date of those API batches; and
- whether those API batches will be retested, and if so, when.

Whether Apotex insists that 5g of API is more burdensome to produce than 3g and, if so, evidence substantiating that claim.

ANDA Product samples:

- when the ANDA Product exhibit batches were last tested;
- the current expiry date of the ANDA Product exhibit batches; and
- whether the ANDA Product exhibit batches will be retested, and if so, when.

We will respond to your edits to the joint letter in due course.

Regards,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shannon, Luke T. <LShannon@taftlaw.com>
**Sent:** Wednesday, June 10, 2026 6:56 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Andy,

Please find attached the current draft of the joint letter. We've incorporated your identification of Plaintiffs' counsel who participated in the meet and confers, but have not adopted your revisions to the bullet-point list describing the

disputes requiring the Court's assistance.

Your proposed revision to the first bullet does not reflect that, during the meet-and-confer process, Apotex narrowed the scope of documents sought under RFP Nos. 28 and 86–90.  We also did not include your edits to the second bullet, as RFP Nos. 51–53 and 56 are not limited to documents concerning "the development" of tafamidis solid forms.

With respect to your clarification regarding third-party documents relating to solid tafamidis forms, Apotex intends to proceed on this issue.  It remains unclear what "validity-related documents from the prior litigation" Plaintiffs intend to produce (particularly in light of Pfizer's refusal to produce materials from the prior consolidated action, as noted in the first bullet).  More fundamentally, the possibility that Apotex may obtain certain third-party materials directly does not relieve Pfizer of its obligation to produce responsive documents within its possession, custody, or control.

Please confirm whether Plaintiffs consent to filing the letter.  If Pfizer maintains objections to Apotex's characterization of the disputed issues, we request that those concerns be addressed by footnote rather than by revising the substantive descriptions.

We look forward to your prompt response and will address the remaining points in your email shortly.

Thank you,
Luke

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Wednesday, June 10, 2026 3:52 PM
**To:** Shannon, Luke T. <LShannon@taftlaw.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Luke,

Our edits to the draft joint letter are attached.

We are disappointed to see Apotex has chosen to burden the Court on these issues.  We will not detail our positions again, which have been explained at length in letter correspondence and during the parties' meet-and-confers.  Suffice it to say, Apotex has yet to adequately explain the relevance of these materials.  We will apprise the Court accordingly.

To clarify a point in your email below: the third party documents we referenced are patent applications submitted by unrelated entities purporting to describe solid forms of tafamidis.  These applications are cited in the validity-related documents from the prior litigation that we intend to produce.  We have no reason to believe Pfizer otherwise is in possession of any documents concerning solids forms of tafamidis developed by third parties.  In light of this and other explanations, we still do not understand what relief Apotex intends to seek, since the Court cannot order Pfizer to produce documents not in its possession, custody, or control.

As for the DMF, each sequence should be accompanied by a cover letter, identifying the substance of the submission.

4

We are missing those cover letters and thus cannot say with more specificity what portions of sequences 2-6 are missing.  Apotex can and/or should know what has been submitted to FDA.  We reiterate our request that Apotex produce all sequences of the DMF and any correspondence with FDA related to the DMF.

Despite multiple asks, Apotex still has not provided the information we requested with respect to samples of Apotex's ANDA Product and its tafamidis API.  By no later than COB June 12, please provide the information requested in my email dated May 27, and provide your availability to meet and confer June 15 so we can seek the Court's assistance, as needed.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shannon, Luke T. <LShannon@taftlaw.com>
**Sent:** Wednesday, June 10, 2026 1:59 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

We were expecting a response early this week to the draft joint letter circulated last week, but have not yet received one from Pfizer.  Please provide Pfizer's edits to the letter by close of business today.

Thank you,
Luke

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Friday, June 5, 2026 5:15 PM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Roshan,

Thank you.  While reserving all rights, we will review Apotex's draft and the issues raised in your email, and respond early next week.

Regards,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Friday, June 5, 2026 2:51 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Shannon, Luke T. <LShannon@taftlaw.com>; 'Dellinger, Megan E.'
<mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher
<CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis
<Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M.
<AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Andy,

We understand your Wednesday response regarding documents pertaining to tafamidis solid forms to mean that
Pfizer is refusing to produce materials beyond those related to the research and development underlying the '441
patent.  This includes documents concerning tafamidis solid forms developed by third parties, which Pfizer
contends are "equally available to Apotex," without identifying the specific forms or the third parties involved.  We
do not find this position acceptable, and it is apparent that the parties have reached an impasse on this issue.

Attached please find a draft letter requesting a discovery dispute teleconference with the Court.  Please let us know
as soon as possible if Pfizer has any proposed edits.

With respect to the final paragraph of your Wednesday email, Apotex has agreed to produce all ANDA and tafamidis
DMF correspondence within its possession, custody, or control.  To the extent Pfizer believes certain ANDA or DMF
correspondence is missing from Apotex's production to date, we note that the deadline for substantial completion
of document production is December 1, 2026.  We also confirm that Apotex will request DifGen and MSN to
provide any responsive ANDA or DMF correspondence in due course.

Regarding the allegedly missing DMF sequences, Apotex believes it has produced all such sequences within its
possession, custody, or control.  To evaluate your concern, we ask that Pfizer identify with greater specificity the
materials it contends are missing, rather than referring generally to "some or all of sequences 2–6."

We look forward to your response.

Best regards,
Roshan

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Wednesday, June 3, 2026 8:42 AM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; 'Dellinger, Megan E.'
<mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher
<CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis
<Pfizer-Tafamidis@wc.com>

**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Roshan,

*First*, despite Pfizer's reasonable (and repeated) request, Apotex refuses to provide any legal authority to support its position with respect to Pfizer samples.  Rather than do so, Apotex offers only the empty assertion that the request comports with "well-established practice in ANDA crystal form cases."  Were it so "well-established," it should be straightforward for Apotex to identify cases where a court compelled the plaintiff in an ANDA case, with claims and defenses similar to those at issue here, to produce samples of its own product.  Apotex has provided none.  Apotex appears intent on seeking relief from the Court without providing any support that may aid in narrowing or resolving the dispute.  Should Apotex do so, Pfizer has no choice but to inform the Court that upon Pfizer's repeated request for legal authority supporting Apotex's position, Apotex refused to provide any such authority.

*Second*, with respect to documents relating to solid forms of tafamidis, Pfizer made clear in its 6/1 email correspondence that "the Pfizer research you seek all took place before the filing of the '441 patent."  There are no discoverable documents that post-date the filing of the '441 patent related to Pfizer's development of solid-state forms of tafamidis.  To the extent third parties worked on solid-state forms of tafamidis, that work is equally available to Apotex.  There is no relief for the Court to order.  We have now explained this issue to Apotex in writing (multiple times) and orally during our meet-and-confer.  If Apotex nonetheless proceeds to raise this issue with Court, we will again have no choice but to inform the Court of Apotex's repeated misstatement of Pfizer's responses and position.

*Third*, at our 5/21 meet-and-confer, and again in a 5/27 email correspondence, Pfizer inquired regarding (i) Apotex's incomplete production of MSN's DMF and DMF related documents, and (ii) the expiry, representativeness, and testing of API and ANDA Product samples.  As to (i), based on our review of Apotex's productions, we appear to missing some or all of sequences 2-6, including some FDA cover letters identifying those sequences.  We also appear to be missing FDA correspondence regarding DMF deficiencies.  *See, e.g.*, APO-TAF-00025968 at -968 ("DMF# 034736 has been assessed and found inadequate.  The DMF holder, MSN Laboratories Private Limited, has been notified of any deficiencies.  Please work with your DMF folder to resolve any issues with the DMF in a timely manner.").  If we are mistaken, please identify these documents by Bates.  Pfizer renews its request that Apotex confirm whether it will request that MSN provide the complete tafamidis DMF as well as documents related to the DMF, including correspondence with FDA.  Please state Apotex's positions regarding these issues by 5pm ET on 6/4.

Regards,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Tuesday, June 2, 2026 1:07 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Shannon, Luke T. <LShannon@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

7

Andy,

We are available on Thursday at 1:30 PM EDT.  Please circulate the dial-in details.

Your response regarding documents relating to solid forms of tafamidis (Apotex RFP Nos. 28, 75, and 86–90) is not merely unclear—it is untenable.  As best we can tell, Pfizer is attempting to limit its production to materials tied to the research and development of the '441 patent, while refusing to produce plainly responsive documents within Plaintiffs' possession, custody, or control concerning solid tafamidis forms that post-date the '441 patent.  That position has no basis in the Federal Rules and is unacceptable.  If Pfizer does not promptly confirm that it will produce these materials, we will seek relief from the Court without further notice.

With respect to samples that Apotex seeks from Plaintiffs, the parties are clearly at an impasse.  Apotex has fully satisfied its obligations under L. Civ. R. 37.1.  Pfizer's refusal to produce samples is unjustified and inconsistent with well-established practice in ANDA crystal form cases.  We see no value in endless meet-and-confer on this issue.  Apotex will seek appropriate relief from the Court.

Best,
Roshan

**Roshan P. Shrestha, Ph.D.**
Partner
rshrestha@taftlaw.com
Dir: 312.840.4339
Tel: 312.527.4000
111 East Wacker Drive, Suite 2600
Chicago, IL 60601

**Taft Bio**
**Download vCard**
**taftlaw.com**

**Now over 1,250 attorneys strong.**

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Monday, June 1, 2026 8:11 AM
**To:** Shannon, Luke T. <LShannon@taftlaw.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Luke,

The only time the other generics are all available to meet and confer this week is Thursday, June 4, at 1:30 pm ET.  Please let us know if that time works for you, and I will circulate an invite.

As for documents relating to solid forms of tafamidis, your understanding generally is correct.  To be clear, we explained last week and in our letter correspondence that the categories of documents Pfizer agreed to produce encompass Pfizer's development of solid forms of tafamidis free acid.  In other words, the Pfizer research you seek all

8

took place before the filing of the '441 patent.  To the extent Apotex seeks documents about purported crystalline forms of tafamidis developed by third parties after filing of the '441 patent, such documents are equally available to Apotex.

We continue to confer with our client on Apotex's request for samples.  To aid that process, please provide any authority you have for the proposition that a brand must produce samples of its drug product and API given the specific claims and defenses that Plaintiffs and Apotex have advanced here.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Hoffman, Andy
**Sent:** Thursday, May 28, 2026 12:29 PM
**To:** Shannon, Luke T. <LShannon@taftlaw.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Luke,

We will inquire about the other generics' availability to meet and confer next week, and get back to you on the other issues in due course.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shannon, Luke T. <LShannon@taftlaw.com>
**Sent:** Wednesday, May 27, 2026 6:34 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel,

9

We are looking into the issues raised in your email from this morning.  In the meantime, we write to (a) address your fifth point promptly, as we are preparing to move to compel Pfizer to produce documents it is withholding on third-party confidentiality grounds, and (b) confirm Pfizer's position regarding deficiencies in its discovery responses discussed during last Thursday's meet and confer

**Documents Withheld on Third-Party Confidentiality Grounds**

Apotex RFP Nos. 28, 75, and 86–90 seek documents within Pfizer's possession, custody, or control.  These requests are directed to Pfizer under Rule 34—not to any third party.  Apotex has therefore satisfied its meet-and-confer obligations with respect to these documents and is not required to engage in further meet-and-confers with non-parties.

Nonetheless, in the interest of cooperation, Apotex is willing to meet and confer with counsel for any third parties asserting confidentiality over the documents at issue.  Please arrange such a meet and confer and provide proposed dates and times for this Friday or early next week.

**Documents Regarding Solid Forms of Tafamidis**

During last Thursday's meet and confer, we understood that Pfizer agreed to search for and produce documents relating to solid forms of tafamidis without limiting its efforts to materials generated in connection with the work leading to the '441 patent.  That is, Pfizer would search for and produce responsive documents regardless of when the underlying research occurred.

Please confirm that this understanding is correct as soon as possible.  If not, we intend to seek relief from the Court on this issue.

**Samples of Vyndamax, API, and Tafamidis Forms**

We understand that the parties have reached an impasse regarding Pfizer's production of samples.  Apotex will therefore be moving on this issue.

\*       \*       \*

Please provide us with Pfizer's responses to the open items above by no later than next Monday, June 1.

Thank you,
Luke

**Luke T. Shannon**
Of Counsel
LShannon@taftlaw.com
Dir: 312.836.4115
Tel: 312.527.4000
111 East Wacker Drive, Suite 2600
Chicago, IL 60601

**taftlaw.com**

**Now over 1,250 attorneys strong.**

10

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Wednesday, May 27, 2026 8:00 AM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel,

I write to follow-up on several requests made during our meet-and-confer last Thursday, May 21, and related issues.

First, as discussed, Apotex's production of MSN's tafamidis DMF and DMF-related documents is incomplete. Setting aside whether production of the complete DMF and related documents is required as part of Apotex's core technical documents, please confirm whether Apotex will request that MSN provide the complete tafamidis DMF as well as documents related to the DMF, including correspondence with FDA. *See* Pfizer's RFP No. 2.

Second, please provide the following information and confirm whether Apotex will stipulate that any API samples it produces are representative of the API used when manufacturing its ANDA Product:

- the API batches from which samples will be produced;
- when those API batches were last tested;
- the current expiry date of those API batches; and
- whether those API batches will be retested, and if so, when.

Third, Pfizer reiterates its request for 5g of each API exhibit batch.  Please confirm Apotex's agreement.  If Apotex insists that 5g is more burdensome to produce than 3g, please substantiate that claim.

Fourth, Apotex's response to Pfizer's request for samples of Apotex's ANDA Product is ambiguous as to whether those samples are expired.  Please provide the following information and confirm whether Apotex will stipulate that any ANDA Product samples it produces are representative of Apotex's ANDA Product:

- when the ANDA Product exhibit batches were last tested;
- the current expiry date of the ANDA Product exhibit batches; and
- whether the ANDA Product exhibit batches will be retested, and if so, when.

Fifth, we have inquired whether the other generics oppose production of documents containing their confidential information.  Hikma opposes the production.  We are awaiting responses from the other generics and suggest a meet and confer with those that oppose to determine whether the parties' disagreements can be resolved.

Please provide Apotex's responses to the items above by Monday, June 1.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 | ahoffman@wc.com | www.wc.com

11

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Tuesday, May 19, 2026 10:32 AM
**To:** Hoffman, Andy <AHoffman@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Andy,

We are available at 5 PM ET on May 21, Thursday. Please use the following Zoom link.

https://taftlaw.zoom.us/launch/jc/97803988909

Regards,
Roshan


**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Monday, May 18, 2026 9:13 AM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Roshan,

Unfortunately, that window does not work for us.  We are available at 5pm ET this Thursday or Tuesday, 5/26, from 10am-noon.  Please let us know if one of those times works for you.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 | ahoffman@wc.com | www.wc.com


**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Friday, May 15, 2026 6:30 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>

12

**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Andy,

We are unavailable at the times you referred in your letter. We are however available on Wednesday afternoon between 1-5 PM ET. If a time in this window works for you, please circulate a dial-in.

Regards,
Roshan

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Friday, May 15, 2026 1:54 PM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Roshan,

Our availability was set forth in the letter correspondence.  If those times don't work, please propose some alternatives.

Thanks,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Friday, May 15, 2026 2:44 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel,

Please provide us with your availability to meet and confer next week.

- Roshan

13

**Roshan P. Shrestha, Ph.D.**
Partner
rshrestha@taftlaw.com
Dir: 312.840.4339
Tel: 312.527.4000
111 East Wacker Drive, Suite 2600
Chicago, IL 60601

**Taft Bio**
**Download vCard**
**taftlaw.com**

**Now over 1,250 attorneys strong.**

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Thursday, May 14, 2026 2:14 PM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)


Counsel,

Please see the attached correspondence.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 | ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Tuesday, May 5, 2026 11:34 AM
**To:** Liu, Michael <mliu@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Hoffman, Andy <AHoffman@wc.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)


Counsel, please see attached correspondence.

Regards,
Roshan

**Roshan P. Shrestha, Ph.D.**
Partner
rshrestha@taftlaw.com

14

Dir: 312.840.4339
Tel: 312.527.4000   |   Fax: 312.966.8573
111 E. Wacker Drive, Suite 2600

Chicago, Illinois 60601-4208

**Taft Bio**
**Download vCard**
**taftlaw.com**

**Now over 1,250 attorneys strong.**

Taft has expanded its service offerings by combining with Morris, Manning & Martin (Atlanta and Washington, D.C.), Mrachek Law (Florida), and Sherman & Howard (Mountain West).  Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

15

# EXHIBIT 7

Pfizer's Responses and Objections to Apotex's First Set of Requests for the Production of Documents and Things (Nos. 1-90) (excerpted)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PFIZER INC., FOLDRX )
PHARMACEUTICALS, LLC, PF PRISM )
IMB B.V., and WYETH LLC, )
)
        Plaintiffs, )
)
      v. )   C.A. No. 25-1306 (GBW)
)   CONSOLIDATED
APOTEX INC. and APOTEX CORP., )
)
        Defendants. )

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT
APOTEX'S FIRST SET OF REQUESTS FOR THE PRODUCTION
OF DOCUMENTS AND THINGS (NOS. 1-90)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the applicable

Local Rules of the U.S. District Court for the District of Delaware, Plaintiffs Pfizer Inc., FoldRx

Pharmaceuticals, LLC, PF PRISM IMB B.V., and Wyeth LLC, (collectively, "Plaintiffs"), by

their undersigned counsel, hereby object and respond as follows to Defendants' Apotex Inc. and

Apotex Corp. (collectively, "Apotex") First Set of Requests for the Production of Documents

and Things to Plaintiffs (Nos. 1–90).  Except as provided otherwise, documents produced in

response to these Requests (as set forth in detail below) will be produced on a rolling basis and

in accordance with the Court's scheduling order.

## GENERAL OBJECTIONS

1.    The following general objections form a part of, and are hereby incorporated into, the

response to each and every Request set forth below.  Nothing in those responses, including any

failure to recite a specific objection in response to a particular Request, should be construed as a

waiver of any of these general objections.

practices.  Plaintiffs further object to this definition to the extent that it includes items not within Plaintiffs' possession, custody, or control—for example, oral communications.  Plaintiffs will construe "communication" only to the extent required by the applicable rules, law, doctrines, and practices.

24.    Plaintiffs object to each Request, definition and instruction to the extent it affords an inadequate basis to determine the documents or things, if any, that are responsive to it.

25.    Plaintiffs expressly reserve the right to supplement these general objections and the specific objections below.

### DEFINITIONS

1.    As used herein, "Named Inventors" means each of the named inventors of the Patent-in-Suit.

2.    As used herein, "Research and Development Documents" means any nonprivileged documents that refer or relate to the research and development leading to the discovery of the invention claimed in the Patent-in-Suit, dated before August 31, 2015, which are located after a reasonable search of:

    a.    The Named Inventors' reasonably accessible files, and

    b.    Plaintiffs' reasonably accessible files from their project archives, including historical lab notebooks and related technical documents/data.

For clarity, "Research and Development Documents" does not include, and specifically excludes, the documents and things identified in exclusions from production and limitations on production as set forth in the general objections above and specific objections below.  Likewise, "Research and Development Documents" does not include, and specifically excludes, any documents from August 31, 2015, or later.

10

3.    As used herein, the "Patent and Prosecution Documents" means:

   a.    The Patent-in-Suit;

   b.    The certified file history for the Patent-in-Suit;

   c.    Any PTE application filed with respect to the Patent-in-Suit; and

   d.    Any non-privileged documents that refer or relate to the prosecution of the Patent-in-Suit that are located after a reasonable search of Plaintiffs' patent files.

For clarity, "Patent and Prosecution Documents" does not include, and specifically excludes, the documents and things identified in exclusions from production and limitations on production as set forth in the general objections above and specific objections below.

4.    As used herein, "Regulatory Documents" means:

   a.    New Drug Application ("NDA") Nos. 212161, with the exception of Module 5, which substantially comprises confidential patient information; and

   b.    Any correspondence between Pfizer and the FDA regarding NDA No. 212161.

For clarity, "Regulatory Documents" does not include, and specifically excludes, the documents and things identified in exclusions from production and limitations on production as set forth in the general objections above and specific objections below.

5.    As used herein, the term "Licenses and Agreements" means:

   a.    Copies of any agreements concerning the Patent-in-Suit that have been filed with the United States Patent and Trademark Office,

11

b.      Copies of any executed licenses pertaining to the Patent-in-Suit located after a reasonable search, and

c.      Copies of any executed covenants not to sue pertaining to the Patent-in-Suit located after a reasonable search.

For clarity, "Licenses and Agreements" does not include, and specifically excludes, the documents and things identified in exclusions from production and limitations on production as set forth in the general objections above and specific objections below.  "Licenses and Agreements" further specifically excludes any settlement agreements between Plaintiffs and any third-party. Production of any "Licenses and Agreements" comes subject to the opportunity to object and/or approval of Plaintiffs' contractual partners."

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1.

All documents and things identified or that you are requested to identify in response to Apotex's interrogatories to Plaintiffs or concerning Plaintiffs' responses to those interrogatories.

### RESPONSE TO REQUEST NO. 1:

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs further object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not relevant to any party's claim or defense nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)).  Plaintiffs further object to this Request as premature, as Plaintiffs have not yet determined which documents they intend to rely upon in responding to any interrogatory or request for admission served in this litigation.  Plaintiffs further object to this Request on the grounds that determination of responsiveness requires a legal conclusion.  Plaintiffs further object to this Request as vague and ambiguous, including because it uses the phrase

12

party confidential information.   Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents and things concerning" the subject matter of this Request, is not limited to the Patent-in-Suit and/or VYNDAMAX®, and is not limited with respect to time.   Plaintiffs further object to this Request to the extent it seeks publicly available documents that are equally accessible by Plaintiffs and Apotex.   Plaintiffs further object to this Request because it seeks documents outside of Plaintiffs' custody and control.   Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other discovery Requests, including Request Nos. 49 and 51-53.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Research and Development Documents, Patent and Prosecution Documents, Licenses and Agreements, and Regulatory Documents.

### REQUEST FOR PRODUCTION NO. 51.

All documents concerning any solid form of tafamidis, including any crystalline form or amorphous form of tafamidis.

### RESPONSE TO REQUEST NO. 51:

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs further object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not relevant to any party's claim or defense nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)), including because it is not limited with respect to time, calls for all manufacturing batch records and related data associated with Plaintiffs' VYNDAMAX®  products and their API, seeks "all documents concerning" the subject matter of the Request, is not limited to the Patent-at-Issue and/or VYNDAMAX®, and seeks information not relevant to any claims or defenses in the Current Litigation.  Plaintiffs further object to this Request

to the extent that it seeks documents protected by the attorney-client privilege, the work-product

doctrine, the common-interest privilege, and/or any other applicable privilege. Plaintiffs further

object to this Request as duplicative of at least Apotex's Request for Production Nos. 50 and 52-

55. Plaintiffs further object to this Request to the extent it seeks documents containing third-party

confidential information.

Subject to and without waiving the foregoing specific objections and the general objections,

Plaintiffs will produce the non-privileged Regulatory Documents, Patent and Prosecution

Documents, and Research and Development Documents.

**REQUEST FOR PRODUCTION NO. 52.**

All documents, communications and things concerning any salt, polymorph, and/or polymorph
of a salt of tafamidis.

**RESPONSE TO REQUEST NO. 52:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs

further object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks

documents not relevant to any party's claim or defense nor proportional to the needs of the case

(in accordance with Fed. R. Civ. P. 26(b)(1)), including because it is not limited with respect to

time and calls for all manufacturing batch records and related data associated with Plaintiffs'

VYNDAMAX® products and their API, seeks "all documents, communications and things

concerning" the subject matter of the Request, is not limited to the Patent-at-Issue and/or

VYNDAMAX®, and seeks information not relevant to any claims or defenses in the Current

Litigation. Plaintiffs further object to this Request to the extent that it seeks documents protected

by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or

any other applicable privilege. Plaintiffs further object to this Request as duplicative of at least

Apotex's Request for Production Nos. 50-51 and 53-55.  Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Regulatory Documents, Patent and Prosecution Documents, and Research and Development Documents.

**REQUEST FOR PRODUCTION NO. 53.**

All documents concerning any process of process of preparing tafamidis.

**RESPONSE TO REQUEST NO. 53:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege.  Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents concerning" the subject matter of the Request, is not limited to the Patent-in-Suit and/or VYNDAMAX®, and is not limited with respect to time.  Plaintiffs further object to this Request as vague and ambiguous, including because it uses the phrase "process of process of."  Plaintiffs further object to this Request to the extent it seeks publicly available documents that are equally accessible by Plaintiffs and Apotex.  Plaintiffs further object to this Request as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery.  Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other

discovery Requests, including Request No. 50.  Plaintiffs further object to this Request because it seeks documents outside of Plaintiffs' custody and control.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Research and Development Documents.

### REQUEST FOR PRODUCTION NO. 54.

All documents and things concerning any U.S., foreign, and/or international patents or patent applications that disclose, describe, and/or claim tafamidis.

### RESPONSE TO REQUEST NO. 54:

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege.  Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents and things concerning" the subject matter of this Request, is not limited to the Patent-in-Suit and/or VYNDAMAX®, and is not limited with respect to time.  Plaintiffs further object to this Request to the extent it seeks publicly available documents that are equally accessible by Plaintiffs and Apotex.  Plaintiffs further object to this Request on the grounds that determination of responsiveness requires a legal conclusion.  Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other discovery Requests.  Plaintiffs further object to this Request because it seeks documents outside of Plaintiffs' custody and control.  Plaintiffs further object to this Request because it seeks Related Patent Applications and Foreign Counterpart Applications.

Plaintiffs will not produce documents concerning only Foreign Counterpart Applications or Related Patent Applications.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Patent and Prosecution Documents.

**REQUEST FOR PRODUCION NO. 55.**

All documents and things concerning any publications by persons engaged in research on behalf of Plaintiffs with respect to solid forms of tafamidis or processes of preparing tafamidis.

**RESPONSE TO REQUEST NO. 55:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege.  Plaintiffs further object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not relevant to any party's claim or defense nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)), including because it is not limited with respect to time, is not limited to the Patent-in-Suit and/or VYNDAMAX®, and extends to "persons engaged in research on behalf of Plaintiffs."  Plaintiffs further object to this Request to the extent it seeks documents, information, and things that are in the public domain and are of no greater burden for Apotex to obtain than Plaintiffs.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Research and Development Documents.

**REQUEST FOR PRODUCTION NO. 56.**

All documents, communications and things concerning any testing, study, consideration or experiment conducted by or on behalf of the Inventors relating to any solid forms of tafamidis, including any salt, polymorph, and/or polymorph of a salt of tafamidis.

party confidential information.   Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents and things" related to the subject matter of this Request and is not limited to the Patent-in-Suit and/or VYNDAMAX®.   Plaintiffs further object to this Request to the extent it seeks publicly available documents that are equally accessible by Plaintiffs and Apotex.   Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other discovery Requests, including Request No. 86.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs are willing to meet and confer regarding this Request.

<table>
<tr><td></td><td>MORRIS, NICHOLS, ARSHT & TUNNELL LLP</td></tr>
<tr><td></td><td><em>/s/ Megan E. Dellinger</em></td></tr>
</table>

OF COUNSEL:

Thomas H.L. Selby
Stanley E. Fisher
Christopher J. Mandernach
Andrew L. Hoffman
Ayelet Evrony
Rhochelle Krawetz
Daniel Schneider
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC  20024
(202) 434-5000

April 10, 2026

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiffs*

79

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, copies of the foregoing were caused to be served upon

the following in the manner indicated:

John C. Phillips, Jr., Esquire                                          *VIA ELECTRONIC MAIL*
David A. Bilson, Esquire
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806
*Attorneys for Defendants Apotex Inc. and Apotex*
*Corp.*

Andrew M. Alul, Esquire                                              *VIA ELECTRONIC MAIL*
Richard T. Ruzich, Esquire
Luke T. Shannon, Esquire
Roshan P. Shrestha, Ph.D.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL  60601
*Attorneys for Defendants Apotex Inc. and Apotex*
*Corp.*

*/s/ Megan E. Dellinger*
_____
Megan E. Dellinger (#5739)

# EXHIBIT 8

*Novartis Pharms. Corp. v. Actavis South Atl. LLC*,
C.A. No. 11-1077, D.I. 174 (D. Del. Nov. 7, 2012)
(excerpted)

Case 1:25-cv-01376-RGA    Document 154    Filed 07/18/16    Page 57 of 69 PageID #: 1734

                    IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF DELAWARE

NOVARTIS PHARMACEUTICALS          :
CORPORATION et al.,               :
                                  :C.A. No. 11-1077-RGA
          Plaintiffs,             :
                                  :
     v.                           :
                                  :
ACTAVIS SOUTH ATLANTIC LLC        :
et al.,                           :
                                  :
          Defendants.             :


                    Wednesday, November 7th, 2012
                    1:08 p.m.

                    Oral Argument
                    Courtroom 6A

                    844 King Street
                    Wilmington, Delaware


   BEFORE:      THE HONORABLE Richard G. Andrews,
                United States District Court Judge


   APPEARANCES:


                McCARTER & ENGLISH, LLP
                BY:  DANIEL M. SILVER, ESQ.

                              -and-

                FITZPATRICK, CELLA, HARPER & SCINTO
                BY:  FILKO PRUGO, ESQ.
                BY:  CHRISTOPHER E. LOH, ESQ.

                     On behalf of Plaintiffs

you addressing?

MS. GIFFORD: I'm addressing B, C, and D in Watson's letter to the Court.

MS. SHARP: DI 166, Your Honor.

THE COURT: Thank you. Okay. B, C, and D.

MS. GIFFORD: The common theme in all of these items, Your Honor, is the plaintiff's refusal to give us discovery that we requested over the course of litigation.

THE COURT: Let's go to D. Plaintiff refused to produce samples of their products to Watson. I guess I have two questions about this, one of which is, can't you go into any drugstore and buy their product?

MS. GIFFORD: It's a controlled substance. I don't believe that we could do that.

THE COURT: You must have a doctor on staff who could write you a prescription. That's a joke.

MS. GIFFORD: I don't have a medical license, Your Honor.

THE COURT: All right. So but I

don't understand.  Why do you need their product?

MS. GIFFORD:  Well, we might need to do testing of their product, Your Honor.

THE COURT:  Why?  The question is whether your proposed product violates their patent.

MS. GIFFORD:  I understand that. In response to the interrogatories, which asked for their basis in following the litigation, they said we believe that your product infringes because of our own development work.

THE COURT:  Right, but I presume -- and, Mr. Prugo, tell me if I'm wrong -- you're not planning at trial to say here's how we did our development, so therefore they must have an antioxidant; right?

MR. PRUGO:  You're absolutely right.

THE COURT:  I don't think there's an issue here.

MS. GIFFORD:  Your Honor, we don't know exactly what they're going to say.  As Mr. Figg pointed out, we haven't seen the data.

THE COURT:  Right, but the data is going to be a scientist, presumably a pharmacologist or somebody like a pharmacologist, chemist, somebody, who's going to say I did a scientific analysis, and here's nice charts and graphs, so it seems to me there's no relevance to what's in their product.

MS. GIFFORD:  Two points I'd like to make, Your Honor.  First, as I said, they interjected their product into the litigation.

THE COURT:  I think Mr. Prugo is now taking it out.

MS. GIFFORD:  The second point is depending on what they say.  Maybe they say there's an antioxidant in our product that's also in their product, yet they had to add a separate antioxidant for stabilizing.  We may need to do testing for that reason.

THE COURT:  What does that have to do with it?  In the end whatever their product does or does not contain, you're not accused of infringing the product.  You're accused of infringing the patent.

MS. GIFFORD:  It's an underlying

factual issue, Your Honor, as to whatever they identify as a stabilizing agent acting as an antioxidant.

THE COURT:  In their patent?

MS. GIFFORD:  In their product, as covered by their patent.  There's no dispute that their product would be covered by the claims of patent.

THE COURT:  Right, but I guess, so what?  Let's assume -- assume whatever you want about their product:  Has an antioxidant, has two antioxidants, has one antioxidant that cancels another antioxidant.  So what?

MS. GIFFORD:  Because their claims require, for example, an antioxidant in an amount effective to stabilize the compound, and whether that antioxidant would be acting as a stabilizer could depend -- we could need to do testing of their product to determine whether that antioxidant is actually acting as a stabilizer if, for example, it was the same compound we identified in our product.

Your Honor, you don't recall from the last conference, but we had many, many

discussions about samples. They requested from us exceedingly large samples.

THE COURT: It's one thing for them to request samples from you. After all, you have the supposed accused infringing products. They don't have an infringing product.

MS. GIFFORD: Right, but they have said their basis for filing this suit is because --

THE COURT: Maybe somewhere down the road if you're going for sectional case or Rule 11 or something else, maybe what's in their product -- not that I think there's any basis for any of this -- I can see why it might be relevant for that. I don't think it means -- we're not at that stage. We probably will never be at that stage.

MS. GIFFORD: We very well may, Your Honor, and you're right. It could be relevant. We don't know, because we don't have all the information yet about what the basis for their accusations are. We asked for their product so we have the ability to do the testing

if we need to.

THE COURT:  I don't think it's relevant.  I don't think it's likely to lead to relevant information.  I'm going to deny that.

Is there anything else?

Mr. Prugo, do you want to be heard on the topic?

MR. PRUGO:  No, Your Honor. That's fine.

THE COURT:  Sorry, Ms. Gifford.

MS. GIFFORD:  That's all right, Your Honor.  Items B and C both relate to responses to interrogatories.

MR. HASH:  Your Honor --

THE COURT:  I guess I denied your motion too without giving you the chance to be heard.

MR. HASH:  Yes, Your Honor.  We're in a different factual situation.

THE COURT:  I'll give you a chance.  Not a big chance, but I'll give you a chance to talk about it from your perspective. At least from the perspective of whoever Ms. Gifford represents, I denied it.

# EXHIBIT 9
# FULLY REDACTED

# EXHIBIT 10

U.S. Patent No. 9,770,441
(excerpted)

US009770441B1

## (12) United States Patent
### Girard et al.

(10) **Patent No.:** **US 9,770,441 B1**
(45) **Date of Patent:** **Sep. 26, 2017**

---

(54) **CRYSTALLINE SOLID FORMS OF 6-CARBOXY-2-(3,5-DICHLOROPHENYL)-BENZOXAZOLE**

(71) Applicant: **Pfizer Inc.**, New York, NY (US)

(72) Inventors: **Kevin Paul Girard**, Quaker Hill, CT (US); **Andrew J. Jensen**, Ledyard, CT (US); **Kris Nicole Jones**, Waterford, CT (US)

(73) Assignee: **Pfizer Inc.**, New York, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/509,343**

(22) PCT Filed: **Aug. 31, 2015**

(86) PCT No.: **PCT/IB2015/056597**

§ 371 (c)(1),
(2) Date: **Mar. 7, 2017**

(87) PCT Pub. No.: **WO2016/038500**

PCT Pub. Date: **Mar. 17, 2016**

### Related U.S. Application Data

(60) Provisional application No. 62/203,953, filed on Aug. 12, 2015, provisional application No. 62/047,614, filed on Sep. 8, 2014.

(51) **Int. Cl.**
*C07D 263/57* (2006.01)
*A61K 31/423* (2006.01)

(52) **U.S. Cl.**
CPC .......... *A61K 31/423* (2013.01); *C07D 263/57* (2013.01); *C07B 2200/13* (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,033,252 A | 7/1991 | Carter |
| 5,052,558 A | 10/1991 | Carter |

| | | | |
|---|---|---|---|
| 5,323,907 A | 6/1994 | Kalvelage | |
| 7,214,695 B2 | 5/2007 | Kelly et al. | |
| 9,249,112 B2 * | 2/2016 | Labaudiniere .......... | C07H 5/06 |

FOREIGN PATENT DOCUMENTS

WO        2013038351 A1        3/2013

OTHER PUBLICATIONS

Supporting Information for Angew. Chem. Int. Ed., 42:2758 (2003).*
Buxbaum, "The Genetics of the Amyloidoses*". Annu. Rev. Med., 2000, 542-569, 51.
Jacobson, "Variant-Sequence Transthyretin (Isoleucine 122) In Late-Onset Cardiac Amyloidosis in Black Americans." The New England Journal of Medicine, 1997, 466-473, 336, 7.
Kelly, "Partial Denaturation of Transthyretin is Sufficient for Amyloid Fibril Formation in Vitro." Biochemistry, 1992, 8654-8660, 31.
Kelly, "Alternative conformations of amyloidogenic proteins govern their behavior." Current Opinion in Structural Biology, Nov. 17, 1996, 6.
Liu, "A glimpse of a possible amyloidogenic intermediate of transthyretin." Nature Structural Biology, 2000, 754-757, 7, 9.
Penchala, "AG10 inhibits amyloidogenesis and cellular toxicity of the familial amyloid cardiomyopathy-associated V122I transthyretin." PNAS, 2013, 9992-9997, 110, 24.
Razavi, "Benzoxazoles as Transthyretin Amyloid Fibril Inhibitors: Synthesis, Evaluation, and Mechanism of Action**." Angew. Chem. Int. Ed., 2003, 2758-2761, 42.
Saraiva, "Transthyretin Mutations in Health and Disease." Human Mutation, 1995, 191-196, 5.
Saraiva, "Biochemical Marker in Familial Amyloidotic Polyneuropathy, Portuguese Type Family Studies on the Transthyretin (Prealbumin)-Methionine-30 Variant." Journal of Clinical Investigation, 1985, 2171-2177, 76.
Westermark, "Fibril in senile systemic amyloidosis is derived from normal transthyretin." Proc. Natl. Acad. Sci, 1990, 2843-2845, 87.

* cited by examiner

*Primary Examiner* — Michael Barker
(74) *Attorney, Agent, or Firm* — Lisa A. Samuels

(57) **ABSTRACT**

The present invention relates to solid forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole and to methods for their preparation. The invention is also directed to pharmaceutical compositions containing at least one solid form and to the therapeutic or prophylactic use of such solid forms and compositions.

**16 Claims, 21 Drawing Sheets**

US 9,770,441 B1

**21**

by the amyloidogenesis of one of over 80 TTR variants. See, for example, Colon, W.; Kelly, J. W. Biochemistry 1992, 31, 8654-60; Kelly, J. W. *Curr. Opin. Struct. Biol.* 1996, 6, 11-7; Liu, K.; et al. *Nat. Struct. Biol.* 2000, 7, 754-7; Westermark, P.; et al. *Proc. Natl. Acad. Sci. U.S.A* 1990, 87, 2843-5; Saraiva, M. J.; et al. *J. Clin. Invest.* 1985, 76, 2171-7; Jacobson, D. R.; et al. *N. Engl. J. Med.* 1997, 336, 466-73; Buxbaum, J. N.; Tagoe, C. E. *Ann. Rev. Med.* 2000, 51, 543-569; and Saraiva, M. *J. Hum. Mutat.* 1995, 5, 191-6, each of which is incorporated by reference in its entirety. Additional TTR amyloid diseases include cardiac amyloidosis following liver transplantation, peripheral nerve amyloidosis following liver transplantation, leptomeningeal amyloidosis, transthyretin mutant-associated carpal tunnel syndrome, vitreous deposition, and transthyretin mutant-associated skin amyloidosis.

Therapeutically effective amounts of the compound of Formula 1 may be administered, typically in the form of a pharmaceutical composition, to treat diseases mediated by modulation or regulation of TTR dissociation. An "effective amount" is intended to mean that amount of an agent that, when administered to a mammal in need of such treatment, is sufficient to effect treatment for a disease mediated by TTR dissociation. Thus, a therapeutically effective amount of Compound 1 is a quantity sufficient to modulate, regulate, or inhibit the dissociation of TTR such that a disease condition that is mediated by that activity is reduced or alleviated. "Treating" is intended to mean at least the mitigation of a disease condition in a mammal, such as a human, and includes: preventing the disease condition from occurring in a mammal, particularly when the mammal is found to be predisposed to having the disease condition but has not yet been diagnosed as having it; modulating and/or inhibiting the disease condition; and/or alleviating the disease condition. Exemplary disease conditions include senile systemic amyloidosis (SSA), familial amyloid polyneuropathy (FAP), familial amyloid cardiomyopathy (FAC), cardiac amyloidosis following liver transplantation, peripheral nerve amyloidosis following liver transplantation, leptomeningeal amyloidosis, transthyretin mutant-associated carpal tunnel syndrome, vitreous deposition, and transthyretin mutant-associated skin amyloidosis.

EXAMPLES

The examples which follow will illustrate the preparation of the distinct forms of the invention, i.e. Form 1 and Form 4, but are not intended to limit the scope of the invention as defined herein or as claimed below.

Example 1—Preparation of Form 1

4-amino-3-hydroxybenzoicacid (1.0 eq, LR) was dissolved at 20° C. in a mixture of tetrahydrofuran (19 L/kg) and water (1.9 L/Kg). 3,5-dichlorobenzoylchloride (1.3 equiv) was added as a tetrahydrofuran solution (1.9 L/kg) and the mixture stirred for at least 30 minutes at 20° C. Once the reaction was deemed complete by HPLC (<5% remaining 4-amino-3-hydroxybenzoicacid), triethylamine (1.2 equiv) was added and the mixture was heated to 35° C. and stirred for at least 90 minutes. The solvent was partially displaced with ethanol by constant level distillation until 5-15% THF remained. The slurry was cooled to 20° C. and stirred for at least 60 minutes then the slurry was filtered. The solids were washed with ethanol (3×4 L/kg) then dried

**22**

under vacuum at 65° C. for at least 16 hours to give pure 4-[(3,5-dichlorobenzoyl)amino]-3-hydroxybenzoic acid in 88-92% yield.

To a slurry of 4-[(3,5-dichlorobenzoyl)amino]-3-hydroxybenzoic acid (1.0 equiv) in tetrahydrofuran (10 L/kg) was added triethylamine (1.1 equiv), followed by water (4 equiv). The mixture was held at 20-25° C. for 1 hour, then the mixture was filtered to remove any remaining insoluble material. Methanesulfonic acid (1.6 equiv) was added and a slurry formed. A constant level displacement of THF/water with toluene was carried out until the reaction temperature was at least 107° C., at which point the displacement was stopped and the reaction then refluxed for at least 15 hours. Once the reaction was deemed complete by UPLC, i.e. >95% pure, it was cooled to 20° C. and 2-propanol (5 L/kg) was added. The slurry was granulated for at least 60 minutes, then filtered and washed twice with 2-propanol (4 L/kg each wash) and dried under vacuum at 60-70° C. for a minimum of 18 hours to give Form 1 in 82-89% yield.

Example 2—Preparation of Form 4

Form 1 (187 mg) was suspended in tetrahydrofuran (7.5 mL) and the suspension was heated at 75° C. The clear solution was hot-filtered through a pre-warmed 0.2 μm nylon filter into a container with toluene (25 mL) chilled on an ice/water bath. The sample was stored in freezer (−10 to −25° C.) overnight. Form 4 was collected, while cold, by vacuum filtration.

Example 3—Preparation of Form 2

A 3 mg/mL THF solution of Form 1 was allowed to evaporate at ambient conditions in a hood and crystals were obtained. Single crystal analysis showed the following results:

| | |
|---|---|
| Empirical formula | $C_{14}H_7NO_3Cl_2$ |
| Formula weight | 308.12 |
| Temperature | Ambient |
| Wavelength | 1.54178 Å |
| Crystal system | Triclinic |
| Space group | P-1 |
| Unit cell dimensions | a = 3.7740(2) Å    α = 80.668(3)° |
| | b = 13.6536(8) Å    β = 89.381 (4)° |
| | c = 15.5098(9) Å    γ = 89.520(3)° |
| Volume | 788.56(8) Å³ |
| Z | 4 |
| Density (calculated) | 1.365 Mg/m³ |
| Goodness-of-fit on $F^2$ | 1.112 |
| Final R indices [I > 2 sigma(I)] | R1 = 0.0776, wR2 = 0.2360 |
| R indices (all data) | R1 = 0.1026, wR2 = 0.2561 |

Example 4—Preparation of Form 6

Form 1 (4168 mg) was suspended in tetrahydrofuran (100 mL), heated and stirred at 60° C. Dimethylacetamide (5 mL) was added. Solution resulted was hot filtered through a pre-warmed 0.2 μm nylon filter into a container with dichloromethane chilled on an ice/water bath. Solids observed were isolated by vacuum filtration and air dried at ambient temperature.

Example 5—Preparation of Amorphous 6-Carboxy-2-(3,5-dichlorophenyl)-benzoxazole

Form 1 (79.7 mg) was suspended in 5 mL of dioxane/water 80/20 and heated at ~80° C. The resulting clear

US 9,770,441 B1

solution was hot filtered through a pre-warmed 0.2 μm nylon filter into a pre-warmed receiving vial. The sample was then frozen on a dry ice/IPA bath and transferred to the freeze dryer for 2 days. Solids were collected.

We claim:

1. A crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole, wherein said crystalline form has an analytical parameter selected from the group consisting of
   a solid state NMR spectrum comprising 13C chemical shifts (ppm) at 120.8±0.2 and 127.7±0.2,
   a powder X-ray diffraction pattern comprising a peak at a diffraction angle (2θ) of 28.6±0.2, and
   a Raman spectrum comprising a Raman shift peak (cm-1) at 1292±2.

2. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 1, wherein said solid state NMR spectrum further comprises 13C chemical shifts (ppm) at 139.6±0.2.

3. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 1, wherein said solid state NMR spectrum further comprises 13C chemical shifts (ppm) at 144.7±0.2.

4. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 1, wherein said powder X-ray diffraction pattern further comprises peaks at diffraction angles (2θ) of 16.5±0.2 and 26.7±0.2.

5. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 1, wherein said powder X-ray diffraction pattern further comprises peaks at diffraction angles (2θ) of 15.4±0.2 and 20.2±0.2.

6. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 5, wherein said powder X-ray diffraction pattern further comprises a peak at a diffraction angle (2θ) of 29.0±0.2.

7. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 6, wherein said powder X-ray diffraction pattern further comprises a peak at a diffraction angle (2θ) of 23.5±0.2.

8. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 1, wherein said crystalline form has a Raman spectrum further comprising Raman shift peaks (cm-1) at 994±2, 1273±2 and 1615±2.

9. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 8, wherein said Raman spectrum further comprises Raman shift peaks (cm-1) at 287±2 and 869±2.

10. The crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole of claim 9, wherein said Raman spectrum further comprises a Raman shift peak (cm-1) at 213±2.

11. A crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole, wherein said form (i) has a powder X-ray diffraction pattern comprising peaks at diffraction angles (2θ) of 26.7±0.2 and 28.6±0.2; and (ii) has a solid state NMR spectrum comprising a 13C chemical shift (ppm) at 127.7±0.2.

12. A crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole, wherein said form (i) has a Raman spectrum comprising Raman shift peaks (cm-1) at 1292±2 and 1615±2; and (ii) has a solid state NMR spectrum comprising a 13C chemical shift (ppm) at 127.7±0.2.

13. The crystalline form of claim 1, wherein said form is non-hygroscopic and anhydrous.

14. The crystalline form of claim 1, wherein said form is substantially pure.

15. A pharmaceutical composition comprising the crystalline form of claim 1 in a therapeutically effective amount in admixture with at least one pharmaceutically acceptable excipient.

16. A method of treating transthyretin amyloid disease in a mammal, the method comprising administering to the mammal a therapeutically effective amount of the crystalline form claim 1.

\* \* \* \* \*

# EXHIBIT 11
# FULLY REDACTED