## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PFIZER INC., FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., and WYETH LLC,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>APOTEX INC. and APOTEX CORP.,<br><br>       *Defendants*. | C.A. No. 25-1306-GBW (consolidated)<br><br>***REDACTED PUBLIC VERSION*** |

## DEFENDANT APOTEX'S OPENING LETTER REQUESTING AN ORDER COMPELLING PLAINTIFF PFIZER TO PRODUCE CERTAIN DISCOVERY

*Of Counsel*:

Andrew M. Alul
Richard T. Ruzich
Roshan P. Shrestha, Ph.D.
Luke T. Shannon
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
312-527-4000

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Attorneys for Defendants*
*Apotex Inc. and Apotex Corp.*

Dated: July 17, 2026

Defendant Apotex respectfully requests an order compelling Plaintiff Pfizer to produce: (1) infringement and invalidity materials from prior related actions, (2) documents concerning tafamidis solid forms disclosed in the patent-in-suit (D.I. 1-1, Compl. Ex. A ("'441 patent")), and (3) samples of the tafamidis forms disclosed in the '441 patent and Vyndamax.

## INTRODUCTION AND RELEVANT FACTUAL BACKROUND

This Hatch-Waxman ("HW") action arises from Apotex Inc.'s ANDA No. 218905 ("Apotex's ANDA"), which seeks approval to market generic tafamidis capsules ("Apotex's ANDA product") corresponding to Pfizer's Vyndamax (tafamidis capsules). Pfizer filed this action in the fall of 2025, alleging that Apotex's ANDA and ANDA product infringe the '441 patent. D.I. 1, Compl.

Apotex is not the first ANDA filer for generic tafamidis. Beginning in 2023, Pfizer sued multiple prior ANDA sponsors in this Court alleging infringement of the '441 patent, with the cases consolidated under C.A. No. 23-879-GBW (the "Prior Action" or "23-879").[1] Trial in the Prior Action began on April 27, 2026, but ended the next day following settlement with the final defendant. 23-879 D.I. 284, 335. Dr. Adam Matzger—who, on information and belief, testified at trial as a Pfizer '441 patent infringement expert—has been retained again by Pfizer in this action. *See* 23-879 D.I. 322-1, Final Pretrial Order ("FPTO") Ex. 12, Pls.' Witness List at 2–3; Ex. A, 6/1/26 email from D. Schneider.

The '441 patent claims crystalline forms of tafamidis defined by specified analytical properties. D.I. 1-1, '441 patent at claims; 23-879, D.I. 322-1, FPTO Ex. 1 ¶ 27. Pfizer's Complaint provides no meaningful explanation for its assertion that Apotex's ANDA product contains any claimed crystalline form. D.I. 1, Compl. ¶¶ 40–58. Its preliminary infringement contentions likewise add little. Despite access to Apotex's ANDA and technical materials, Pfizer asserts only, "[u]pon information and belief, and subject to further discovery," that infringement exists—contending that the claimed crystalline tafamidis is formed during Apotex's manufacturing process and that whatever form of tafamidis that Apotex uses would ultimately convert to the claimed form. Ex. B, Pls.' Prelim. Infringement Contentions, Ex. A at 1-7.

To test these assertions and develop its defenses, Apotex propounded Rule 34 requests for production ("RFPs"). Ex. C., Apotex's First Set of RFPs. Apotex's RFPs seek, *inter alia*, infringement and invalidity materials, including settlement agreements, from the Prior Action (*id.* at RFP Nos. 28, 75, 86-90),[2] documents concerning tafamidis solid forms (*id*. at RFP Nos. 51-53, 55), and samples of the tafamidis forms disclosed in the '441 patent and Vyndamax (*id*. at RFP Nos. 76-77, 79-83). Pfizer responded to those RFPs with boilerplate objections, refused to produce significant Prior Action materials on third-party confidentiality grounds, limited its production on tafamidis solid forms to research and development ("R&D") for the '441 patent, and declined to produce any samples. Ex. E, Pfizer's Resps. to RFP Nos. 28, 51-53, 55, 75, 76-77, 79-83; Ex. F, 5/14/26 letter from A. Hoffman at 2-4.

---

[1] *Pfizer Inc. v. Dexcel Pharma Techs., Ltd.*, C.A. No. 23-879-GBW (D. Del.); *Pfizer Inc. v. Cipla Ltd.*, C.A. No. 23-909 (D. Del.); *Pfizer Inc. v. Aurobindo Pharma Ltd.*, C.A. Nos. 23-923, 23-1182 (D. Del.); *Pfizer Inc. v. Hikma Pharm. USA Inc.*, C.A. No. 23-924 (D. Del.).

[2] *See also* Ex. D., 5/5/26 Ltr. from R. Shrestha at 2-3 (Apotex narrowing its RFP Nos. 86-90).

## ARGUMENT:  PFIZER SHOULD BE COMPELLED TO PRODUCE THE DISCOVERY

### I.        DOCUMENTS FROM THE PRIOR ACTION

The Prior Action involved the same patent owner (Pfizer), the same cause of action (patent infringement), the same patent (the '441 patent), and the same infringement expert (Dr. Matzger). Any suggestion by Pfizer that infringement and invalidity materials from the Prior Action—such as sealed pleadings, discovery responses, invalidity and non-infringement contentions, deposition transcripts, and expert reports—are irrelevant here is belied by Pfizer's own agreement to produce "documents related to the '441 patent containing only Pfizer confidential information."  Ex. F at 2.  As held in prior litigation between the parties, settlement agreements from the Prior Action— which may contain licenses to the '441 patent—are relevant to Apotex's obviousness defense and to a potential patent misuse defense.  *See Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 758-60 (N.D. Ill. 2010); D.I. 9, Second Additional Defense.

Pfizer's principal objection—that it "cannot agree to produce documents that contain third-party confidential information subject to protective orders in other cases," Ex. F at 2—lacks merit.  The stipulated protective order ("SPO") in the Prior Action (23-879 D.I. 32) is materially identical to the SPO entered in this case (D.I. 35).  Both expressly provide that "[b]y entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case." *Compare* 23-879 D.I. 32 ¶ 25, *with* D.I. 35 ¶ 23.  Moreover, to address any confidentiality concerns, Apotex has expressly agreed to receive and maintain Prior Action materials implicating third-party confidential information on an outside-counsel-eyes-only basis.  Consistent with these facts, Third Circuit courts routinely reject objections to the production of otherwise discoverable information on the basis of third-party confidentiality, particularly where a protective order is in place.  *See, e.g., Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 259–61 (D. Del. 1979); *Opperman v. Allstate N.J. Ins. Co.*, No. 07-1887, 2008 WL 5071044, at *4 (D.N.J. Nov. 24, 2008); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 24–25 (D. Conn. 2008).  In similar circumstances, this Court has ordered the production of "unredacted expert reports, declaration, and testimony transcripts" from related litigation involving patents in the same family.  *TQ Delta, LLC v. Dish Network Corp.*, C.A. No. 15-614 (D. Del.), D.I. 404, Special Master Order #11 at 1-10 (Ex. I).

Finally, Pfizer cannot plausibly argue that infringement materials from the Prior Action are irrelevant simply because they concern a different ANDA product.  This is a crystal form patent case, and, as Apotex's expert Dr. Hollingsworth explains, identifying crystals in mixed samples— such as Apotex's ANDA product, which contains both tafamidis API and excipients—requires interpreting data generated by complex analytical techniques described in the '441 patent, including powder X-ray diffraction ("PXRD"), solid-state nuclear magnetic resonance, and Raman spectroscopy.  Ex. G, 7/15/26 Decl. of Mark D. Hollingsworth, Ph.D. ¶¶ 10-14; D.I. 1-1, '441 patent at Figs. 1-21, claim 1.  Dr. Matzger's prior analyses of similar data from testing on another ANDA product are therefore directly relevant to how Pfizer intends to prove infringement here and may expose inconsistencies in his methodology.  For example, if Dr. Matzger previously required ten PXRD peaks to make a qualitative identification in a mixed sample but now relies on only one or two peaks to reach the same conclusion, that inconsistency would directly undermine the reliability of his opinions here.  Hollingsworth Decl. ¶¶ 23-24.

2

## II.    DOCUMENTS CONCERNING SOLID TAFAMIDS FORMS

Apotex has expressly pleaded a written description defense based on the breadth of the '441 patent claims, which define genera of tafamidis crystals through functional limitations requiring at least one of three specified analytical parameters.  D.I. 9, Apotex's Countercls. ¶¶ 31–39.  Yet the specification discloses only a single crystal species—Form 1—within that scope.  *Id.*  Documents from Pfizer, whether pre- or post-patent issuance, showing additional tafamidis crystal forms within claim 1 but absent from the specification would be highly probative of this defense.  *See, e.g., Ariad Pharm. Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1349 (Fed. Cir. 2010).  Pfizer has agreed to produce only R&D documents related to the '441 patent, while acknowledging it possesses post-issuance materials concerning tafamidis solid forms but refusing to produce them on the ground they are allegedly available from third parties (Ex. H, 6/3/26 Hoffman email).  That is not a proper basis to withhold discovery.  *See, e.g., Bently v. Cywes*, C.A. No. 2:22-4189, 2024 WL 1562597, at *4 (S.D. Ohio Apr. 11, 2024).  Moreover, Apotex RFP Nos. 51-53 and 55 are not confined to Pfizer's R&D materials.  The Court should compel Pfizer to produce all documents in its possession regarding tafamidis solid forms, regardless of whether they relate to its R&D efforts.

## III.    SAMPLES OF TAFAMIDIS AND VYNDAMAX

According to Pfizer, sample production in crystal-form patent cases is a one-way street:  Pfizer may obtain samples from Apotex to prove infringement, but Apotex may not obtain samples from Pfizer.  Ex. F at 3-4.  That position is incorrect, unfair, and contrary to longstanding practice.  Apotex is entitled (but not required) to test its own product to support non-infringement defenses.  *See, e.g., Schering Corp. v. Apotex Inc.*, C.A. No. 09-6373, 2012 WL 2263292, at *6, *10 (D.N.J. June 15, 2012) (court accepting Apotex PXRD and Raman testing to successfully rebut Dr. Matzger's opinions).  To do so, Apotex requires pure samples of the tafamidis forms disclosed in the '441 patent—including claimed Form 1 and disclosed but unclaimed Forms 2, 4, and 6, as well as amorphous tafamidis—so its experts can generate reference standards using their own equipment.  Hollingsworth Decl. ¶¶ 15-17.  Those standards can then be compared to data from Apotex's ANDA product (a mixed sample) to identify or rule out claimed or unclaimed forms.  *Id.* ¶ 16.  As Dr. Hollingsworth explains, reliance on the patent's reported data is insufficient because many of the disclosed forms exhibit similar analytical features and because Apotex will use different instruments and conditions, which can cause analytical "shifts" and risk misidentifying unclaimed forms as claimed ones.  *Id.* ¶¶ 17-18.  Accordingly, Apotex needs pure samples of the disclosed tafamidis forms to generate complete, side-by-side analytical profiles and ensure scientifically reliable testing in support of its defenses.

Under the HW Act, a brand may list in the Orange Book only patents that claim the drug product or an approved method of use. 21 U.S.C. § 355(b)(1)(A)(viii); *Jazz Pharm., Inc. v. Avadel CNS Pharm., LLC*, 60 F.4th 1373, 1377 (Fed. Cir. 2023).  Apotex does not know what form of tafamidis Pfizer uses in Vyndamax, making those samples directly relevant:  if testing shows Pfizer is not using the claimed form, Apotex could counterclaim to delist the '441 patent and potentially obtain earlier ANDA approval.  *Jazz*, 60 F.4th at 1378.  Pfizer also asserts that any form Apotex uses will convert to claimed Form 1 because it is "thermodynamically stable." Ex. B at 2.  But if testing of Vyndamax—marketed for seven years (23-879 D.I. 322-1, Ex. 1 ¶ 36)—shows no such conversion, or conversion to an unclaimed form, that would undercut Pfizer's theory as to Apotex's yet-to-be-marketed product.  Hollingsworth Decl. ¶ 22.

3

Respectfully,

Dated:  July 17, 2026

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Of Counsel*:

Andrew M. Alul
Richard T. Ruzich
Roshan P. Shrestha, Ph.D.
Luke T. Shannon
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
312-527-4000
aalul@taftlaw.com
rruzich@taftlaw.com
rshrestha@taftlaw.com
lshannon@taftlaw.com


*Attorneys for Defendants*
*Apotex Inc. and Apotex Corp.*

4

## CERTIFICATE OF SERVICE

I, David A. Bilson, Esquire, hereby certify that, on July 17, 2026, a copy of the foregoing document was served on the following counsel via email:

Jeremy A. Tigan
Megan E. Dellinger
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

Thomas H.L. Selby
Stanley E. Fisher
Christopher J. Mandernach
Andrew L. Hoffman
Ayelet Evrony
Rhochelle Krawetz
Daniel Schneider
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
tselby@wc.com
sfisher@wc.com
cmandernach@wc.com
ahoffman@wc.com

/s/ David A. Bilson
David A. Bilson (#4986)

5