# EXHIBIT A

**Shrestha, Roshan P.**

| | |
|---|---|
| **From:** | Schneider, Daniel <dschneider@wc.com> |
| **Sent:** | Monday, June 1, 2026 10:33 AM |
| **To:** | Shrestha, Roshan P.; Jack Phillips; Shannon, Luke T.; David A. Bilson; Alul, Andrew M.; Ruzich, Richard T. |
| **Cc:** | Pfizer-Tafamidis |
| **Subject:** | Tafamidis litigation - Protective Order Disclosure - Adam J. Matzger, Ph.D. |
| **Attachments:** | Matzger CV 2026b (1).pdf; Matzger Testimony.pdf; Matzger Signed Undertaking.pdf |

Counsel,

Pursuant to paragraph 13 of the Protective Order (D.I. 35), Plaintiffs hereby disclose Adam J. Matzger, Ph.D.  Dr. Matzger's executed undertaking and current CV are attached.  A list of legal matters in which Dr. Matzger has testified by deposition or at trial in the last four years is also attached.

Best,
Daniel

**Daniel P. Schneider**
**Associate | Williams & Connolly LLP**
680 Maine Avenue S.W., Washington, DC 20024
202-434-5856 | dschneider@wc.com | www.wc.com

1

# EXHIBIT B

Redacted in entirety

# EXHIBIT C

# Excerpts

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PFIZER INC., FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., and WYETH LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> APOTEX INC. and APOTEX CORP., <br><br> *Defendants*. | C.A. No. 25-1306-GBW (consolidated) |

**DEFENDANT APOTEX'S FIRST SET OF REQUESTS
FOR THE PRODUCTION OF DOCUMENTS AND THINGS (Nos. 1-90)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex"), serve their First Set of Requests for Production of Documents and Things directed to Plaintiffs Pfizer Inc., FoldRx Pharmaceuticals, LLC, PF PRISM IMB B.V., and Wyeth LLC (collectively, "Pfizer" or "Plaintiffs"), and request that Plaintiffs produce the documents and things requested herein within thirty (30) days of service to the offices of Taft, Stettinius & Hollister LP, 111 E. Wacker Drive, Suite 2600, Chicago, IL 60601, or at such other time and place as may be mutually agreed upon by the parties, in accordance with the instructions and definitions below.

For purposes of these requests, the following Definitions and Instructions apply:

**DEFINITIONS**

For purposes of these requests, the terms and phrases set forth below shall have the following meanings:

1.  The term "ANDA," as used herein, means Abbreviated New Drug Application.

2.  The term "API," as used herein, means active pharmaceutical ingredient.

3.  The term "Apotex," as used herein, means Apotex Inc. and Apotex Corp.

**Request No. 26.**

All documents and things concerning any review or analysis of Apotex's ANDA or any testing or analysis of Apotex's ANDA Product done by or on behalf of Plaintiffs, including any documents concerning any testing or analysis of the form of the API in Apotex's ANDA Product.

**Request No. 27.**

All documents and things concerning the decision to allege infringement of the Patent-in-Suit by Apotex's ANDA product in this lawsuit, or concerning any meeting or communication in which infringement of the Patent-in-Suit by Apotex's ANDA Product was discussed or mentioned.

**Request No. 28.**

All documents and things concerning any Notice Letter received by Plaintiffs pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) of the Federal Food, Drug & Cosmetic Act concerning Vyndamax.

**Request No. 29.**

All documents, communications and things concerning Plaintiffs' claim that the manufacture, use, sale, offer for sale, and/or importation of Apotex's ANDA Product will infringe any claim of the Patent-in-Suit.

**Request No. 30.**

If Plaintiffs contend that any of the claims of the Patent-in-Suit are not invalid, all documents, communications and things that Plaintiffs contend form the basis for, or upon which Plaintiffs rely to support, any such contention.

**Request No. 31.**

All documents and things concerning the Patent-in-Suit.

14

3.   on sale in the United States; or

4.   patented or described in a printed publication anywhere.

**Request No. 49.**

All documents and things concerning tafamidis that were authored, published, drafted, recorded, retained or stored by the Inventors.

**Request No. 50.**

All documents and things concerning tafamidis.

**Request No. 51.**

All documents concerning any solid form of tafamidis, including any crystalline form or amorphous form of tafamidis.

**Request No. 52.**

All documents, communications and things concerning any salt, polymorph, and/or polymorph of a salt of tafamidis.

**Request No. 53.**

All documents concerning any process of process of preparing tafamidis.

**Request No. 54.**

All documents and things concerning any U.S., foreign, and/or international patents or patent applications that disclose, describe, and/or claim tafamidis.

**Request No. 55.**

All documents and things concerning any publications by persons engaged in research on behalf of Plaintiffs with respect to solid forms of tafamidis or processes of preparing tafamidis.

19

**Request No. 70.**

All documents relating to or reflecting the profits or profitability of Vyndamax.

**Request No. 71.**

Documents sufficient to show the pricing, whether proposed, offered or actual, of all marketed dosages and forms of Vyndamax.

**Request No. 72.**

All documents and communications relating to strategies or attempts to prevent or delay generic competition to Vyndamax.

**Request No. 73.**

All documents and communications relating to generic competition to Vyndamax, including evaluation of ANDA filers.

**Request No. 74.**

All documents and things concerning the value of, damages for infringement, and/or royalties for licenses in connection with the Patent-in-Suit.

**Request No. 75.**

All licenses, assignments, or transfers of any interest in the Patent-in-Suit or the alleged invention(s) claimed therein.

**Request No. 76.**

One hundred and fifty (150) capsules of Vyndamax, from at least three different, non-expired, batches.

**Request No. 77.**

Three grams of the tafamidis API used to prepare the Vyndamax, from at least three different, non-expired, batches.

22

**Request No. 78.**

Three grams of each excipient used to prepare the Vyndamax from non-expired batches.

**Request No. 79.**

Three grams of the Form 1 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**Request No. 80.**

Three grams of the Form 2 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**Request No. 81.**

Three grams of the Form 4 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**Request No. 82.**

Three grams of the Form 6 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**Request No. 83.**

Three grams of amorphous 6 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**Request No. 84.**

All documents and things concerning any solid-state characterization of any of Forms 1, 2, 4, 6, and amorphous 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole.

**Request No. 85.**

All documents and things concerning the preparation of any of Forms 1, 2, 4, 6, and amorphous 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole.

**Request No. 86.**

All documents and things filed, produced, or served  in connection with any Related Patent Litigation, including all sealed pleadings, discovery request responses, invalidity contentions, non-infringement contentions, deposition transcripts, and expert reports.

**Request No. 87.**

All documents and things filed, produced, or served in connection with *Pfizer Inc. v. Dexcel Pharma Technologies Limited*, C.A. No. 23-879-GBW-CJB (D. Del.), including all sealed pleadings, discovery request responses, invalidity contentions, non-infringement contentions, deposition transcripts, and expert reports.

**Request No. 88.**

All documents and things filed, produced, or served in connection with *Pfizer Inc. v. Cipla Limited*, C.A. No. 23-909-GBW-CJB (D. Del.), including all sealed pleadings, discovery request responses, invalidity contentions, non-infringement contentions, deposition transcripts, and expert reports.

**Request No. 89.**

All documents and things filed, produced, or served in connection with *Pfizer Inc. v. Aurobindo Pharma Limited*, C.A. Nos. 23-923-GBW-CJB (D. Del.) and 23-1182-GBW-CJB (D. Del.), including all sealed pleadings, discovery request responses, invalidity contentions, non-infringement contentions, deposition transcripts, and expert reports.

**Request No. 90.**

All documents and things filed or produced in connection with *Pfizer Inc. v. Zenara Pharma Private Limited*, C.A. No. 23-924-GBW-CJB (D. Del.), including all sealed pleadings, discovery request responses, invalidity contentions, non-infringement contentions, deposition transcripts, and expert reports.

PHILLIPS, MCLAUGHLIN & HALL, P.A.

Dated: March 11, 2026

/s/ David A. Bilson
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Of Counsel*:
Andrew M. Alul
Richard T. Ruzich
Luke T. Shannon
Roshan P. Shrestha, Ph.D.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
312-527-4000
aalul@taftlaw.com
rruzich@taftlaw.com
lshannon@taftlaw.com
rshrestha@taftlaw.com

*Attorneys for Defendants Apotex Inc. and
Apotex Corp.*

25

## <u>CERTIFICATE OF SERVICE</u>

I, David A. Bilson, Esquire, hereby certify that, on March 11, 2026, a copy of the foregoing document was served on the following counsel via email:

Jeremy A. Tigan
Megan E. Dellinger
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

Thomas H.L. Selby
Stanley E. Fisher
Christopher J. Mandernach
Andrew L. Hoffman
Ayelet Evrony
Rhochelle Krawetz
Daniel Schneider
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
tselby@wc.com
sfisher@wc.com
cmandernach@wc.com
ahoffman@wc.com

_/s/ David A. Bilson_____
David A. Bilson (#4986)

26

# EXHIBIT D



111 East Wacker Drive, Suite 2600
Chicago, IL 60601-4208
Tel: 312.527.4000 | Fax: 312.527.4011
taftlaw.com

**Roshan P. Shrestha, Ph.D.**
312.840.4339
rshrestha@taftlaw.com

May 5, 2026

Thomas H.L. Selby
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024

**Subject: *Pfizer Inc. v. Apotex Inc.,* C.A. No. 25-1306 (GBW) (D. Del.) (Consolidated)**

Dear Mr. Selby,

We write regarding Plaintiffs Pfizer Inc., FoldRx Pharmaceuticals, LLC, PF PRISM IMB B.V., and Wyeth LLC's (collectively, "Pfizer" or "Plaintiffs") deficient responses to Defendants Apotex Inc. and Apotex Corp.'s (collectively, "Apotex" or "Defendants") First Set of Rule 33 Interrogatories ("ROG[s]") (Nos. 1–3) ("Apotex's first set of ROGs") and First Set of Rule 34 Requests for Production ("RFP[s]") (Nos. 1–90) ("Apotex's first set of RFPs").[1]  We request that Pfizer properly address the deficiencies set forth below[2] as soon as possible or let us know your availability to meet and confer on these issues.

### Pfizer's General Refusal to Produce Discovery Subject to Third Party Confidentiality Claims

In its General Objection 10 to Apotex's first sets of ROGs and General Objection 14 to Apotex's first set of RFPs, Pfizer refuses to provide answers or produce documents and things that are the subject of third party confidentiality claims.  Examples in specific responses where Pfizer appears to refuse to produce otherwise discoverable information on third-party confidentiality grounds include Pfizer's response to Apotex RFP No. 12 (licenses and agreements). As Apotex previously explained during the parties' protective order negotiations, this position is improper and contrary

---

[1] Any capitalized terms or patent number abbreviations not defined in this letter shall have the meanings ascribed to them in the Definitions section of Apotex's first set of RFPs.

[2] Apotex's identification of certain deficiencies in Pfizer's discovery responses in this letter is not exhaustive and does not constitute a waiver of Apotex's right to raise additional deficiencies or pursue relief with respect to any deficiencies not expressly addressed herein.

Thomas H.L. Selby, Esq.
May 5, 2026
Page 2

to governing Third Circuit authority. *See, e.g., Opperman v. Allstate N.J. Ins. Co.*, No. 07 1887, 2008 WL 5071044, at *4 (D.N.J. Nov. 24, 2008) (compelling party to produce a third party's confidential information); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 24-25 (D. Conn. 2008) (ordering plaintiff to produce the confidential information of third parties in direct competition with defendant); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 259-61 (D. Del. 1979) (confidential information is discoverable under a protective order). Apotex therefore requests that Pfizer immediately withdraw these improper objections and confirm in writing that it will not withhold otherwise discoverable information on the basis of asserted third-party confidentiality.

### Documents Concerning Pfizer's Decision to File Suit (RFP No. 24)

Apotex RFP No. 24 seeks documents and communications concerning the factual basis for, and the decision to file, suit against Apotex. Pfizer responds with a series of boilerplate objections, all of which are meritless. First, this request does not seek privileged materials, and Pfizer has not stated that it lacks non-privileged documents responsive to the request. Second, Pfizer's relevance objection fails—Apotex is plainly entitled to discovery concerning why Pfizer sued Apotex and whether Pfizer possessed a good-faith belief that Apotex's ANDA infringes the '441 patent, consistent with Fed. R. Civ. P. 11. Third, Pfizer's objections that the phrases "factual basis for filing suit" and "decision to file suit" are vague or ambiguous are baseless; these are well-understood concepts in the law. Finally, Pfizer's contention that the request improperly calls for a "legal conclusion" is likewise without merit—discovery requests are not objectionable merely because responding to them may touch on legal conclusions. *See, e.g.*, Fed. R. Civ. P. 33(a)(2). Apotex therefore requests that Pfizer promptly withdraw these baseless objections and produce all documents and things concerning its basis for filing and decision to file suit against Apotex.

### Documents Concerning Apotex's ANDA (RFP Nos. 25 and 26)

Apotex RFP Nos. 25 and 26 seek documents and things concerning Apotex's ANDA, including any review or analysis of the Apotex ANDA or ANDA product. Pfizer's overbreadth objections are unfounded, as Pfizer fails to explain how these requests—which seek a discrete category of documents that necessarily would not have existed until after Pfizer received Apotex's initial Paragraph IV notice letter in September of last year—could encompass voluminous materials or impose any undue burden. Pfizer's relevance objections are equally meritless: the requested documents plainly concern the accused product in this litigation, and Pfizer offers no explanation as to why such materials would be irrelevant. Pfizer should therefore withdraw its baseless objections and promptly produce all documents concerning Apotex's ANDA.

### Documents Concerning Related Litigation (RFP Nos. 28 and 86-90)

In an effort to reach a compromise with Pfizer regarding its overbreadth objections, Apotex hereby narrows RFP No. 28 to seek production solely of Paragraph IV certification notice letters Pfizer

Thomas H.L. Selby, Esq.
May 5, 2026
Page 3

has received from any third party concerning Vyndamax.  Apotex further narrows RFP Nos. 86–90 to seek all sealed pleadings, discovery responses, invalidity and non-infringement contentions, deposition transcripts, and expert reports filed, served, produced, or otherwise created in connection with any related litigation involving the '441 patent.

As narrowed, these Requests are reasonable and appropriately tailored, rendering Pfizer's overbreadth objections moot.  The requested documents are plainly relevant to Apotex's invalidity and non-infringement defenses to the '441 patent, and Pfizer has offered no meaningful explanation to the contrary.  Pfizer's assertion that these Requests are not limited to the '441 patent and/or Vyndamax is incorrect.

Moreover, Pfizer's attorney-client privilege and work-product objections lack merit, as these materials were exchanged in related litigation between Pfizer and other tafamidis ANDA sponsors.  Pfizer's third-party confidentiality objections are likewise meritless for the reasons previously explained in connection with Pfizer's General Objection No. 14.

Accordingly, Apotex requests that Pfizer promptly withdraw its objections and produce documents responsive to the Requests as narrowed.

### Documents Concerning Any Tafamidis Solid Forms (RFP Nos. 51, 52, 53, and 55)

RFP Nos. 51 and 52 seek documents and things concerning any solid forms of tafamidis, RFP No. 53 seeks documents and things concerning any process for preparing tafamidis, and RFP No. 55 seeks any publications authored by Pfizer researchers concerning any solid tafamidis forms or processes of preparing tafamidis.  Pfizer has agreed to produce only research and development and patent prosecution materials relating to the '441 patent, along with certain regulatory documents concerning Vyndamax.  But these RFPs are broader and properly so:  they seek documents concerning any solid forms of tafamidis—including forms developed by Pfizer after the filing of the '441 patent—and any processes for producing tafamidis, including processes developed after that filing.

One of Apotex's principal defenses is that the claims of the '441 patent are invalid for lack of written description because the patent's genus claims are not adequately supported by the specification.  If Pfizer developed crystalline forms of tafamidis after filing the '441 patent that fall within the scope of the claims but are not described anywhere in the specification, documents reflecting those developments are highly relevant to Apotex's written description defense, notwithstanding Pfizer's relevance objection.  Pfizer's overbreadth objection is likewise meritless, as these RFPs are narrowly targeted to tafamidis—the compound to which the '441 patent claims are directed—not to Pfizer's broader product portfolio.  Pfizer's vagueness objection based on a typographical error in RFP No. 53 also lacks merit, as Pfizer plainly understands what the request seeks.  Pfizer should therefore withdraw its baseless objections and promptly produce all documents and things responsive to these RFPs.

Thomas H.L. Selby, Esq.
May 5, 2026
Page 4

### Licenses and Agreements Involving the '441 Patent (RFP No. 75 and ROG No. 3)

Apotex RFP No. 75 seeks "[a]ll licenses, assignments, or transfers of any interest in the Patent-in-Suit or the alleged invention(s) claimed therein." Pfizer has agreed to produce "non-privileged Licenses and Agreements," a definition that expressly excludes settlement agreements with third parties, apparently relying on its General Objection No. 14. As explained above, General Objection No. 14 is improper.

Pfizer's relevance objection is unfounded. As Pfizer should know from prior litigation with Apotex, settlement agreements involving licenses to the '441 patent are plainly relevant to, at a minimum, Apotex's obviousness defense and its potential patent-misuse defense. *See, e.g., Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 758–60 (N.D. Ill. 2010); *see also Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-cv-1455-WCB, 2017 WL 132265, at *2 (E.D. Tex. Jan. 12, 2017); *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, Civil No. 17-cv-01065-MSG-RL, 2019 WL 1571666, at *1–*4 (D. Del. Apr. 11, 2019). As courts have recognized, settlement agreements are discrete, "easily identifiable and producible without [any] undue burden," and are "routinely produced in patent litigation[] with adequate confidentiality protections." *AbbVie*, 2019 WL 1571666, at *2.

Accordingly, Pfizer's objections based on breadth, undue burden, and disproportionality are meritless and should be withdrawn. Nor are the settlement agreements protected by the attorney-client privilege or any other privilege, as they are not confidential communications between Pfizer and its attorneys. Apotex therefore requests that Pfizer promptly produce all settlement agreements it has entered into with third parties that involve the '441 patent. Relatedly, we ask that Pfizer supplement its response to Apotex ROG No. 3 to reflect recent settlements it has entered into with Dexcel, Hikma, Cipla, and Aurobindo.

### Samples of Vyndamax and Tafamidis (RFP Nos. 76-77 and 79-83)

Apotex RFP Nos. 76–77 and 79–83 seek samples of Vyndamax, the tafamidis API used in Vyndamax, and each tafamidis solid form disclosed in the '441 patent. Pfizer refuses to produce these samples based on relevance, overbreadth, and disproportionality objections, all of which are meritless. The relevance objection is particularly baseless. Apotex is entitled to rebut any testing Pfizer performs on Apotex's ANDA product with testing of its own, and such rebuttal testing requires reference standards derived from samples of all tafamidis solid forms disclosed in the '441 patent. In addition, samples of Vyndamax are directly relevant to a potential delisting claim if Vyndamax does not contain any of the forms claimed in the '441 patent. Notably, Pfizer itself has requested production of samples from Apotex. *See* Pfizer RFP Nos. 3 and 4. Samples of Pfizer's finished product and the tafamidis forms disclosed in the '441 patent are no less relevant than the product and API samples Pfizer seeks from Apotex. Pfizer's overbreadth and proportionality objections are likewise unfounded. These Requests seek discrete, readily accessible samples, and Pfizer has articulated no burden associated with producing them. Apotex

Thomas H.L. Selby, Esq.
May 5, 2026
Page 5

therefore requests that Pfizer immediately withdraw its objections and produce the requested samples.

Please correct these deficiencies as soon as possible or to let us know their availability for a meet and confer this week.

Sincerely,

Taft Stettinius & Hollister LLP

Roshan P. Shrestha, Ph.D.

# EXHIBIT E

# Excerpts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., and WYETH LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 25-1306 (GBW) CONSOLIDATED |
| APOTEX INC. and APOTEX CORP., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT
APOTEX'S FIRST SET OF REQUESTS FOR THE PRODUCTION
OF DOCUMENTS AND THINGS (NOS. 1-90)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the applicable Local Rules of the U.S. District Court for the District of Delaware, Plaintiffs Pfizer Inc., FoldRx Pharmaceuticals, LLC, PF PRISM IMB B.V., and Wyeth LLC, (collectively, "Plaintiffs"), by their undersigned counsel, hereby object and respond as follows to Defendants' Apotex Inc. and Apotex Corp. (collectively, "Apotex") First Set of Requests for the Production of Documents and Things to Plaintiffs (Nos. 1–90). Except as provided otherwise, documents produced in response to these Requests (as set forth in detail below) will be produced on a rolling basis and in accordance with the Court's scheduling order.

**GENERAL OBJECTIONS**

1.    The following general objections form a part of, and are hereby incorporated into, the response to each and every Request set forth below. Nothing in those responses, including any failure to recite a specific objection in response to a particular Request, should be construed as a waiver of any of these general objections.

and things.  Plaintiffs further object to producing and logging documents or things related to other United States or foreign litigations, as well as documents or things related to patent office proceedings or foreign regulatory filings or approvals, on the grounds that such materials are not relevant to the subject matter of this litigation and/or that producing and/or logging them would be unduly burdensome, and will not produce and/or log such documents or things.

14.    Plaintiffs object to each Request, definition and instruction to the extent that it seeks information, documents, or things containing private, confidential, secret, trade secret, proprietary, and/or sensitive business information of Plaintiffs, their employees, and/or third parties (hereinafter referred to as "Confidential Information").  Plaintiffs will not produce Confidential Information to the extent that they are under any obligation—whether imposed by a third party, court, tribunal, legislature, or any other body with authority to impose or enforce such an agreement, or by any statute, regulation, or order—to maintain it in confidence and not disclose it, and all of Plaintiffs' responses should be read to exclude the production of such information. In addition, Plaintiffs will not produce Confidential Information, and will redact Confidential Information from documents and things that they produce, to the extent that such Confidential Information is not relevant to any claim or defense in this action nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)).  The Confidential Information that Plaintiffs will withhold and/or redact may include, but is not limited to, Confidential Information pertaining to individual patients involved in clinical trials; clinical trial investigators' personal information; the personal information of Plaintiffs' employees; information protected by any applicable privacy laws; the configuration of Plaintiffs' information technology systems; drug products that do not contain tafamidis; drugs belonging to other companies; sales and budget forecasts; materials concerning the negotiation of agreements with third parties; trade secret

6

information about pricing and pricing strategy; and proprietary manufacturing information.  All of Plaintiffs' responses should be read to exclude the production of such documents and information.   Plaintiffs will only produce other Confidential Information pursuant to the Protective Order.

15.     Plaintiffs object to each Request, definition and instruction to the extent it is not limited to a particular time period, and as noted above, Plaintiffs object to the production of documents or things that were created after Plaintiffs' receipt of Apotex's Notice of Certification pursuant to § 505(j)(2)(B) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)(2)(B)), except as noted below, and will not produce such documents or things.  To the extent any documents or things are produced that bear a date after the date that the notice letter was received, such production does not constitute a waiver of this objection.

16.     Plaintiffs object to each Request, definition, and instruction to the extent that it seeks production of documents and things relating to VYNDAMAX® in countries other than the United States—including but not limited to documents and things relating to foreign counterparts to the Patent-in-Suit (including any prosecution or foreign litigation involving such patents), foreign regulatory documents, and foreign sales and marketing information—on the grounds that such Requests are overly broad, unduly burdensome, and seek information not relevant to any party's claim or defense nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)).  Plaintiffs will not produce such documents and things, except as noted below, and Plaintiffs' responses should be read to exclude the production of such documents and things. Plaintiffs also object to each Request, definition, or instruction to the extent it seeks the production of draft documents, on the ground and to the extent that production of drafts of

7

**REQUEST FOR PRODUCTION NO. 27.**

All documents and things concerning the decision to allege infringement of the Patent-in-Suit by Apotex's ANDA product in this lawsuit, or concerning any meeting or communication in which infringement of the Patent-in-Suit by Apotex's ANDA Product was discussed or mentioned.

**RESPONSE TO REQUEST NO. 27:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege. Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents and things concerning" the subject matter of this Request. Plaintiffs further object to this Request on the grounds that determination of responsiveness requires a legal conclusion. Plaintiffs further object to this Request as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other discovery Requests, including Request Nos. 24, 25, and 26.

Subject to the foregoing general and specific objections, Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 28.**

All documents and things concerning any Notice Letter received by Plaintiffs pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) of the Federal Food, Drug & Cosmetic Act concerning Vyndamax.

**RESPONSE TO REQUEST NO. 28:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client

privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege. Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information. Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents and things concerning" the subject matter of this Request. Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other discovery Requests, including Request Nos. 23 and 24.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce additional documents in response to this Request, and instead, identify the documents produced in response to Apotex's other Requests.

**REQUEST FOR PRODUCTION NO. 29.**

All documents, communications and things concerning Plaintiffs' claim that the manufacture, use, sale, offer for sale, and/or importation of Apotex's ANDA Product will infringe any claim of the Patent-in-Suit.

**RESPONSE TO REQUEST NO. 29:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs object to this Request as overly broad, unduly burdensome, and seeking documents that are not relevant to the claim or defense of any party and not proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)), including because it seeks "all documents, communications, and things concerning" the subject matter of this Request. Plaintiffs further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege. Plaintiffs further object to this Request as premature, as it seeks documents and information relating to matters that

33

party confidential information.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents and things concerning" the subject matter of this Request, is not limited to the Patent-in-Suit and/or VYNDAMAX®, and is not limited with respect to time.  Plaintiffs further object to this Request to the extent it seeks publicly available documents that are equally accessible by Plaintiffs and Apotex.  Plaintiffs further object to this Request because it seeks documents outside of Plaintiffs' custody and control.  Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other discovery Requests, including Request Nos. 49 and 51-53.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Research and Development Documents, Patent and Prosecution Documents, Licenses and Agreements, and Regulatory Documents.

**REQUEST FOR PRODUCTION NO. 51.**

All documents concerning any solid form of tafamidis, including any crystalline form or amorphous form of tafamidis.

**RESPONSE TO REQUEST NO. 51:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs further object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not relevant to any party's claim or defense nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)), including because it is not limited with respect to time, calls for all manufacturing batch records and related data associated with Plaintiffs' VYNDAMAX® products and their API, seeks "all documents concerning" the subject matter of the Request, is not limited to the Patent-at-Issue and/or VYNDAMAX®, and seeks information not relevant to any claims or defenses in the Current Litigation.  Plaintiffs further object to this Request

to the extent that it seeks documents protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege. Plaintiffs further object to this Request as duplicative of at least Apotex's Request for Production Nos. 50 and 52-55. Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Regulatory Documents, Patent and Prosecution Documents, and Research and Development Documents.

**REQUEST FOR PRODUCTION NO. 52.**

All documents, communications and things concerning any salt, polymorph, and/or polymorph of a salt of tafamidis.

**RESPONSE TO REQUEST NO. 52:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs further object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not relevant to any party's claim or defense nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)), including because it is not limited with respect to time and calls for all manufacturing batch records and related data associated with Plaintiffs' VYNDAMAX® products and their API, seeks "all documents, communications and things concerning" the subject matter of the Request, is not limited to the Patent-at-Issue and/or VYNDAMAX®, and seeks information not relevant to any claims or defenses in the Current Litigation. Plaintiffs further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege. Plaintiffs further object to this Request as duplicative of at least

52

Apotex's Request for Production Nos. 50-51 and 53-55.  Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Regulatory Documents, Patent and Prosecution Documents, and Research and Development Documents.

**REQUEST FOR PRODUCTION NO. 53.**

All documents concerning any process of process of preparing tafamidis.

**RESPONSE TO REQUEST NO. 53:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege.  Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents concerning" the subject matter of the Request, is not limited to the Patent-in-Suit and/or VYNDAMAX®, and is not limited with respect to time.  Plaintiffs further object to this Request as vague and ambiguous, including because it uses the phrase "process of process of."  Plaintiffs further object to this Request to the extent it seeks publicly available documents that are equally accessible by Plaintiffs and Apotex.  Plaintiffs further object to this Request as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery.  Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other

53

Plaintiffs will not produce documents concerning only Foreign Counterpart Applications or Related Patent Applications.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Patent and Prosecution Documents.

### REQUEST FOR PRODUCION NO. 55.

All documents and things concerning any publications by persons engaged in research on behalf of Plaintiffs with respect to solid forms of tafamidis or processes of preparing tafamidis.

### RESPONSE TO REQUEST NO. 55:

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege. Plaintiffs further object to this Request on the grounds that it is overly broad, unduly burdensome, and seeks documents not relevant to any party's claim or defense nor proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)), including because it is not limited with respect to time, is not limited to the Patent-in-Suit and/or VYNDAMAX®, and extends to "persons engaged in research on behalf of Plaintiffs." Plaintiffs further object to this Request to the extent it seeks documents, information, and things that are in the public domain and are of no greater burden for Apotex to obtain than Plaintiffs.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Research and Development Documents.

### REQUEST FOR PRODUCTION NO. 56.

All documents, communications and things concerning any testing, study, consideration or experiment conducted by or on behalf of the Inventors relating to any solid forms of tafamidis, including any salt, polymorph, and/or polymorph of a salt of tafamidis.

55

Subject to and without waiving the foregoing general and specific objections, Plaintiffs respond that, at present, they have not asserted a claim for damages, and therefore decline to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 75.**

All licenses, assignments, or transfers of any interest in the Patent-in-Suit or the alleged invention(s) claimed therein.

**RESPONSE TO REQUEST NO. 75:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request as overly broad, unduly burdensome, and seeking documents that are not relevant to the claim or defense of any party and not proportional to the needs of the case (in accordance with Fed. R. Civ. P. 26(b)(1)).  Plaintiffs further object to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege.  Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.

Subject to and without waiving the foregoing specific objections and the general objections, Plaintiffs will produce the non-privileged Licenses and Agreements.

**REQUEST FOR PRODUCTION NO. 76.**

One hundred and fifty (150) capsules of Vyndamax, from at least three different, non-expired, batches.

**RESPONSE TO REQUEST NO. 76:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce capsules in response to this Request.

70

**REQUEST FOR PRODUCTION NO. 77.**

Three grams of the tafamidis API used to prepare the Vyndamax, from at least three different, non-expired, batches.

**RESPONSE TO REQUEST NO. 77:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce material in response to this Request.

**REQUEST FOR PRODUCTION NO. 78.**

Three grams of each excipient used to prepare the Vyndamax from non-expired batches.

**RESPONSE TO REQUEST NO. 78:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce material in response to this Request.

**REQUEST FOR PRODUCTION NO. 79.**

Three grams of the Form 1 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**RESPONSE TO REQUEST NO. 79:**

Plaintiffs incorporate their general objections as though fully set forth herein. Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

71

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce material in response to this Request.

### REQUEST FOR PRODUCTION NO. 80.

Three grams of the Form 2 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

### RESPONSE TO REQUEST NO. 80:

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce material in response to this Request.

### REQUEST FOR PRODUCTION NO. 81.

Three grams of the Form 4 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

### RESPONSE TO REQUEST NO. 81:

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce material in response to this Request.

### REQUEST FOR PRODUCTION NO. 82.

Three grams of the Form 6 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**RESPONSE TO REQUEST NO. 82:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce material in response to this Request.

**REQUEST FOR PRODUCTION NO. 83.**

Three grams of amorphous 6 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole described in the Patent-in-Suit, from at least three different, non-expired, batches.

**RESPONSE TO REQUEST NO. 83:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs will not produce material in response to this Request.

**REQUEST FOR PRODUCTION NO. 84.**

All documents and things concerning any solid-state characterization of any of Forms 1, 2, 4, 6, and amorphous 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole.

**RESPONSE TO REQUEST NO. 84:**

Plaintiffs incorporate their general objections as though fully set forth herein.  Plaintiffs object to this Request to the extent that it seeks documents and things protected by the attorney-client privilege, the work-product doctrine, the common-interest privilege, or any other applicable privilege.  Plaintiffs further object to this Request to the extent it seeks documents containing third-party confidential information.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly

73

party confidential information.  Plaintiffs object to this Request on the ground that it seeks documents or things not relevant to any party's claim or defense and is unduly burdensome, overly broad, and not proportionate to the needs of the case, including because it seeks "all documents and things" related to the subject matter of this Request and is not limited to the Patent-in-Suit and/or VYNDAMAX®.  Plaintiffs further object to this Request to the extent it seeks publicly available documents that are equally accessible by Plaintiffs and Apotex.  Plaintiffs further object to this Request to the extent it is duplicative of Apotex's other discovery Requests, including Request No. 86.

Subject to and without waiving the foregoing general and specific objections, Plaintiffs are willing to meet and confer regarding this Request.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

Thomas H.L. Selby
Stanley E. Fisher
Christopher J. Mandernach
Andrew L. Hoffman
Ayelet Evrony
Rhochelle Krawetz
Daniel Schneider
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC  20024
(202) 434-5000

April 10, 2026

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiffs*

79

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, copies of the foregoing were caused to be served upon the following in the manner indicated:

John C. Phillips, Jr., Esquire                           *VIA ELECTRONIC MAIL*
David A. Bilson, Esquire
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806
*Attorneys for Defendants Apotex Inc. and Apotex Corp.*

Andrew M. Alul, Esquire                                 *VIA ELECTRONIC MAIL*
Richard T. Ruzich, Esquire
Luke T. Shannon, Esquire
Roshan P. Shrestha, Ph.D.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL  60601
*Attorneys for Defendants Apotex Inc. and Apotex Corp.*


                                        */s/ Megan E. Dellinger*
                                        _____
                                        Megan E. Dellinger (#5739)

# EXHIBIT F

LAW OFFICES

## WILLIAMS & CONNOLLY LLP®

ANDREW L. HOFFMAN
(202) 434-5364
ahoffman@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 14, 2026

<u>Via Email</u>

Roshan P. Shrestha
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
rshrestha@taftlaw.com

Re:    *Pfizer Inc. v. Apotex Inc.,* C.A. No. 25-1306 (GBW) (D. Del.) (Consolidated)

Counsel:

I write in response to your May 5, 2026 letter ("May 5 Letter"), addressing Pfizer's Responses and Objections to Apotex's First Set of Interrogatories and First Set of Requests for Production. I also write to address deficiencies in Apotex's Objections and Responses to Pfizer's First Set of Requests for Production (Nos. 1-9).

**I.    Pfizer's Responses and Objections to Apotex's First Set of Interrogatories and First Set of Requests for Production**

**A.    Pfizer's General Objection No. 10**

Pfizer's refusal to provide answers or produce documents that implicate third-party confidential information subject to protective orders in other cases is proper and consistent with Third Circuit law. Apotex's continued insistence that Pfizer unilaterally breach those protective orders and provide Apotex access to its competitors' information plainly is improper and contrary to governing authority. *See, e.g., Medicis Pharm. Corp. v. Actavis Mid Atlantic LLC*, C.A. No. 11-409-LPS-CJB, D.I. 173 at 74 (D. Del. Aug. 2, 2012); *Inventio AG v. ThyssenKrupp Elevator Ams. Co.*, 662 F. Supp. 2d 375, 384 (D. Del. 2009); *Arnold v. Pa., Dept. of Transp.*, 477 F.3d 105, 107-08 (3d. Cir. 2007); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783-92 (3d. Cir. 1994). The three cases cited in your letter (including an out-of-circuit case) are inapposite—none discuss production of third-party confidential information that is covered by a separate protective order.

WILLIAMS & CONNOLLY LLP®

May 14, 2026
Page 2

### B. Request No. 24

Pfizer appreciates your clarification that Request No. 24 does not seek privileged materials. Pfizer is unaware of any non-privileged documents responsive to this request. We trust this resolves your concerns.

### C. Request Nos. 25-26

Pfizer stands by its objections and responses to Request Nos. 25 and 26. Apotex's requests constitute premature expert discovery. As Pfizer indicated in its responses, Pfizer will produce, at an appropriate time in accordance with the Court's schedule and the Local Rules, the documents upon which Pfizer intends to rely to prove infringement by Apotex, including any analysis or testing of Apotex's ANDA or ANDA Product by testifying experts. We note that Apotex itself lodged materially identical objections to Pfizer's Requests for Production. *See, e.g.*, Apotex's Responses to Pfizer's First Set of Requests for Production (Nos. 1-9) at 17-18.

### D. Request Nos. 28 and 86-90

Pfizer appreciates that Apotex has narrowed Request No. 28 "to seek production solely of Paragraph IV certification notice letters Pfizer has received from any third party concerning Vyndamax" and Request Nos. 86-90 "to seek all sealed pleadings, discovery responses, invalidity and non-infringement contentions, deposition transcripts, and expert reports filed, served, produced, or otherwise created in connection with any related litigation involving the '441 patent." May 5 Letter at 2-3. While Pfizer is willing to produce the Paragraph IV certification letters received from any third party concerning Vyndamax as well as documents related to the '441 patent containing only Pfizer confidential information,[1] Pfizer cannot agree to produce documents that contain third-party confidential information subject to protective orders in other cases. *See supra*.

### E. Request Nos. 51-53, 55

Pfizer stands by its objections and responses to Requests Nos. 51-53 and 55. Apotex's articulation of relevance is not commensurate with the scope of documents sought in these requests. Apotex states: "If Pfizer developed crystalline forms of tafamidis after filing the '441 patent that fall within the scope of the claims but are not described anywhere in the specification, documents reflecting those developments are highly relevant to Apotex's written description defense . . . ." May 5 Letter at 3. However, Apotex's Requests seek "[a]ll documents concerning any solid form of tafamidis," "[a]ll documents, communications and things concerning any salt, polymorph, and/or polymorph of a salt of tafamidis," "[a]ll documents concerning any process of process of preparing tafamidis," and "[a]ll documents and things concerning any publications by

---

[1] For the avoidance of doubt, Pfizer objects to producing documents that concern only the subject matter of U.S. Patent Nos. 7,214,695 or 7,214,696, as those patents are not at issue in this litigation.

WILLIAMS & CONNOLLY LLP®

May 14, 2026
Page 3

persons engaged in research on behalf of Plaintiffs with respect to solid forms of tafamidis or processes of preparing tafamidis." These Requests clearly reach beyond Apotex's stated justification and seek categories of documents unrelated to Apotex's written description defense or the subject matter of the patent-in-suit—including, for example, documents concerning salt forms of tafamidis. The categories of documents Pfizer agreed to produce encompass Pfizer's development of solid forms of tafamidis free acid, including processes for making those forms, and are fully responsive to Apotex's stated relevant rationale. To the extent Apotex seeks documents about purported crystalline forms of tafamidis developed by third parties after filing of the '441 patent, such documents are equally accessible to Apotex.

### F.    Request No. 75 and Interrogatory No. 3

The settlement agreements Apotex seeks implicate third-party confidential information that is subject to protective orders in other cases. Again, Pfizer cannot and will not produce third-party confidential information in violation of those protective orders. *See supra*. Pfizer also disagrees that the settlement agreements are relevant to any presently asserted claim or defense. *See, e.g.*, *BioDelivery Sciences Int'l, Inc. v. Chemo Research, S.L.*, C.A. No. 19-444-CFC-CJB, D.I. 148 (D. Del. Jan. 30, 2020).

Pfizer agrees to supplement its response to Apotex's Interrogatory No. 3 to reflect its recent settlements with Dexcel, Hikma, and Cipla, to the extent it can do so without disclosing any third-party confidential information.

### G.    Request Nos. 76-77 and 79-83

Pfizer stands by its objections and responses to Request Nos. 76-77 and 79-83. Apotex's argument (May 5 Letter at 4) that "[s]amples of Pfizer's finished product and the tafamidis forms disclosed in the '441 patent are no less relevant than the product and API samples Pfizer seeks from Apotex" is mistaken. Testing a generic's API and/or ANDA product to assess infringement is a cornerstone of Hatch-Waxman litigation. The same cannot be said of testing a brand's product. *See, e.g.*, *In re Fetzima*, 2019 WL 2385699, at *4 (D.N.J. June 6, 2019). Apotex's argument that Vyndamax® samples might be relevant to a delisting claim is both far-fetched and not relevant to any claim or defense at issue in this case. *See id.* Apotex's argument that the samples of Vyndamax® and all forms of tafamidis described in the '441 patent are needed as reference standards for rebuttal testing is similarly unavailing. "Infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention." *Fleet Engineers, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989, 992 (Fed. Cir. 2019) (quoting *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993)); *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment . . . ; the only proper comparison is with the claims of the patent."). The claims define a crystalline form of tafamidis using specific analytical characteristics, which Apotex can readily assess without comparison to Pfizer's commercial

WILLIAMS & CONNOLLY LLP®

May 14, 2026
Page 4

product.  Lastly, samples of all tafamidis forms disclosed in the '441 patent are not "readily accessible," contrary to Apotex's assertion.

## II.    Apotex's Responses to Pfizer's First Set of Requests for Production (Nos. 1-9)

### A.    Request No. 1: Documents Related to Apotex's Abbreviated New Drug Application ("ANDA")

Request No. 1 seeks documents that constitute, refer, or relate to Apotex's ANDA, as well as all documents that refer or relate to communications or filings with any U.S. regulatory body concerning Apotex's ANDA, documents with respect to the preparation of Apotex's ANDA, and documents with respect to FDA consideration or approval of Apotex's ANDA.  Beyond its provision of Apotex's ANDA, Apotex states that it will only produce documents to the extent they are "relevant" to any issue of infringement or invalidity in this case.  But Apotex's response raises serious concerns about its willingness and ability to judge which documents relate to any issue of infringement or invalidity.  Apotex asserts that "documents that do not relate to the identity and solid-state properties of the active ingredient [of] the product described in Apotex Inc.'s ANDA have no relevance to the claims or defenses in this case."  Apotex is mistaken.  For example, documents that relate to the composition and manufacturing process of Apotex's ANDA Product are highly relevant to the infringement inquiry, as the chosen excipients and manufacturing process may affect the crystalline form of the tafamidis API in the finished product.

Apotex's suggestion that compliance with District of Delaware Discovery Rule 4(b) through the provision of its ANDA absolves it of any obligation to produce additional documents related to the ANDA is mistaken.  Compliance with Rule 4(b) is necessary, but not sufficient, to satisfy Apotex's discovery obligations.  Put differently, Rule 4(b) does not absolve Apotex of its independent obligations under the Federal Rules of Civil Procedure.

Please confirm that Apotex will produce the requested documents.

### B.    Request No. 2: Documents Related to Apotex's Drug Master File ("DMF")

Request No. 2 seeks documents that constitute, refer, or relate to any DMF for the tafamidis API in Apotex's ANDA Product, including any communications with the FDA concerning any such DMF and any communications with the supplier of the API that is the subject of the DMF.  Apotex repeats its same mistaken relevancy objections raised with respect to the Request No. 1, and its attempt to narrow this request is equally improper.  Contrary to Apotex's assertion, the universe of documents relevant to infringement and validity is larger than those relating to the identity and solid-state properties of the API in Apotex's ANDA Product.  For example, documents that relate to testing protocols, manufacturing protocols, and/or manufacturing conditions of the API that is the subject of the DMF are highly relevant and yet would be carved out under Apotex's objection.

WILLIAMS & CONNOLLY LLP®

May 14, 2026
Page 5

Please confirm that Apotex will produce the requested documents.

Separately, Apotex indicates that it does not hold the tafamidis DMF referenced in Apotex's ANDA and that many of the documents relating to the tafamidis DMF do not reside with Apotex. As you know, Apotex must produce responsive documents in its possession, custody, or control. Please do so with respect to the DMF and related communications, or confirm that Apotex has no right to access the DMF

### C. Request No. 3: 5-gram Unexpired Samples from Each Exhibit Batch of the Tafamidis API

Request No. 3 seeks a 5-gram unexpired, representative sample of each exhibit batch of tafamidis API referenced in Apotex's ANDA. Apotex states that it will produce 3-gram samples of expired API used in the preparation of Apotex's ANDA Product from each available batch in the possession of Apotex's ANDA Product supplier.

Apotex's intent to provide only expired API samples yet simultaneously contend that expired API samples are irrelevant is facially unreasonable. Further, while Pfizer assumes that the API used in preparation of Apotex Inc.'s ANDA Product comes from the exhibit batches, Apotex's response conspicuously elides that fact. So that we may adequately consider your response, please provide the following information as soon as possible:

- The API batches from which samples will be produced;
- When those API batches were last tested;
- The current expiry date of those API batches; and
- Whether those API batches will be retested, and if so, when.

While Apotex may not be the manufacturer of the API used in its ANDA Product, this information should be ███████████████████ to the extent Apotex lacks this information. If Apotex is unwilling to provide this information or if there is no plan to retest the batches, Pfizer requests that Apotex stipulate that the API samples it produces are representative of the API used when manufacturing its ANDA Product.

Finally, Apotex's intent to provide three, rather than five, grams of API is not responsive to Pfizer's request. Apotex has offered no justification to explain how or why producing five grams is excessive, unreasonable, or overly burdensome. Pfizer maintains its request for five gram samples from each of the exhibit batches to ensure adequate supply for any testing.

Please confirm that Apotex will produce the requested information and samples.

WILLIAMS & CONNOLLY LLP®

May 14, 2026
Page 6

        **D.**      **Request No. 7: Documents that Refer or Relate to Apotex's Decision to Use a Particular Crystalline or Polymorphic Form(s) of Tafamidis in Apotex's ANDA Product**

Request No. 7 seeks all documents that refer or relate to Apotex's decision to use a particular crystalline or polymorphic form(s) of tafamidis in its ANDA Product. Apotex states that it will not produce any documents responsive to this request beyond its production of documents in connection with Request Nos. 5 and 6. Request Nos. 5 and 6 respectively request documents that refer or relate to the crystalline or polymorphic forms of tafamidis in Apotex's ANDA Product, and documents that refer or relate to the crystalline or polymorphic form(s) of tafamidis in the API used in Apotex's ANDA Product.

Apotex claims that its decision to use a particular polymorphic form of tafamidis "has nothing to do with the actual form of tafamidis in Apotex Inc.'s ANDA Product." But Request No. 7 is not limited to understanding the actual form of tafamidis in Apotex's ANDA Product—nor must it be. Documents that refer or relate to Apotex's decision to use a particular crystalline form are relevant both to infringement and validity of the '441 patent. Apotex's argument that such documents are irrelevant because "Plaintiffs have not asserted any willful infringement claims" misapprehends the scope of the request: the relevance of these documents does not depend on willfulness. By way of example and without limitation, why Apotex used a particular form may shed light on the purported physical stability of the API, and whether and under what conditions the API used in Apotex's ANDA Product undergoes conversion, which is highly relevant to both infringement and validity.

Please confirm that Apotex will produce the requested documents.

        **E.**      **Request Nos. 8 and 9: Documents that Refer or Relate to the Testing, Evaluation, or Use of Crystalline or Polymorphic Form(s) of Tafamidis in Apotex's ANDA Product (No. 8) or the API Used in Apotex's ANDA Product (No. 9)**

Request Nos. 8 and 9 seek all documents that refer or relate to the testing, evaluation, or use of crystalline or polymorphic form(s) of tafamidis in Apotex's ANDA Product or the API used in Apotex's ANDA Product. As with its responses to Request Nos. 1 and 2, Apotex's responses to these requests draw improper lines as to what is relevant to the claims and defenses in this case. For example, Apotex asserts that dissolution studies are entirely irrelevant. But dissolution studies could shed light on the physical stability and polymorphic behavior of Apotex's tafamidis API, which is relevant both to infringement and validity.

Apotex also objects that Request No. 8 is "premature" because it purportedly seeks expert discovery. This objection conflates fact discovery with expert discovery: Pfizer is not seeking expert opinions—it is seeking fact documents concerning testing that Apotex has performed on the tafamidis in its ANDA Product. The fact that such testing may later be relevant to expert analysis does not transform the underlying documents into expert discovery.

WILLIAMS & CONNOLLY LLP®

May 14, 2026
Page 7

Apotex further objects to Request No. 8 "as being vague and confusing, as it is entirely unclear what type of 'testing' Plaintiffs seek in connection with this Request." For the avoidance of doubt, Pfizer is seeking any testing that relates to the crystalline or polymorphic form of tafamidis in Apotex's ANDA Product. Such testing should include, at a minimum: PXRD testing of the tafamidis API used in Apotex's ANDA Product and the ANDA Product itself; Raman testing of the tafamidis API used in Apotex's ANDA Product and the ANDA Product itself; ssNMR testing of the tafamidis API used in Apotex's ANDA Product and the ANDA Product itself; and any other analytical testing done to evaluate the tafamidis API used in Apotex's ANDA Product and the ANDA Product itself including but not limited to: conversion studies; stability studies; spiking studies; and comparisons of different polymorphic forms of tafamidis, including the tafamidis in Apotex's ANDA Product.

Please confirm that Apotex will produce the requested documents.

***

Pfizer is available to meet and confer on these issues on Monday, May 18 from 9-12:30pm or 2-4pm ET, or Tuesday, May 19 from 9-11am ET. Please provide your availability or propose an alternative date next week.

Sincerely,

*/s/ Andrew L. Hoffman*

Andrew L. Hoffman

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| PFIZER INC., FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., and WYETH LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> APOTEX INC. and APOTEX CORP., <br><br> *Defendants*. | C.A. No. 25-1306-GBW (consolidated) |

### DECLARATION OF MARK D. HOLLINGSWORTH, Ph.D.

1.    I, Mark D. Hollingsworth, Ph.D., hereby declare as follows:

### I.    QUALIFICATIONS

2.    I am an Emeritus Associate Professor of Chemistry at Kansas State University. Over the course of my career, I have developed substantial expertise in solid-state chemistry, crystallography, and the characterization of crystalline and amorphous pharmaceutical compounds. My work has routinely involved the use of powder X-ray diffraction ("PXRD"), solid-state nuclear magnetic resonance ("ssNMR"), and Raman spectroscopy to identify and distinguish polymorphic forms of active pharmaceutical ingredients. A copy of my curriculum vitae is attached as Exhibit A.

### II.    ENGAGMENT

3.    I have been retained by counsel for Defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex") in this action. I am being compensated at my standard consulting rate of $600 per hour. My compensation does not depend on the outcome of this matter.

4.    Counsel for Apotex have advised me that Apotex Inc. has filed with the FDA an Abbreviated New Drug Application ("ANDA") No. 218905 ("Apotex Inc.'s ANDA") seeking

FDA approval to market tafamidis capsules ("Apotex Inc.'s ANDA product") as generic to Vyndamax®, a prescription drug medication commercially marketed by Plaintiffs Pfizer Inc., FoldRx Pharmaceuticals, LLC, PF PRISM IMB B.V., and Wyeth LLC (collectively, "Plaintiffs"). I understand that, in response to Apotex's ANDA filing, Plaintiffs instituted this action alleging that the tafamidis capsules described Apotex Inc.'s ANDA therein infringe U.S. Patent No. 9,770,441 (the "'441 patent")

5.    For purposes of this Declaration, I have been asked to assess whether physical samples of tafamidis forms disclosed in U.S. Patent No. 9,770,441 (the "'441 patent")—including Forms 1, 2, 4, 6, and the amorphous form—are relevant and necessary for evaluating whether Apotex Inc.'s ANDA product falls within the scope of the asserted claims.

6.    I have also been advised that Apotex is not the first ANDA applicant for tafamidis capsules, and that Pfizer previously sued at least four other ANDA sponsors for alleged infringement of the '441 patent in a consolidated action styled *Pfizer Inc. v. Dexcel Pharma Techs.*, Ltd., C.A. No. 23-879 (D. Del.) (the "Prior Consolidated Action").  I understand that a trial in the Prior Consolidated Action commenced in late April 2026, but the matter settled shortly thereafter. Counsel for Apotex have further advised me that there is some overlap between Pfizer's experts in the Prior Consolidated Action and in the instant action; specifically, at least one expert who testified at trial in the Prior Consolidated Action is also serving as an expert in this case.  Counsel for Apotex have asked me to opine on whether materials relating to infringement in the Prior Consolidated Action—including discovery responses, expert reports, deposition testimony, and

2

trial transcripts—are relevant to the infringement issues in this case, and in particular to the identification of the form of tafamidis in Apotex Inc.'s ANDA product.

## III.    THE '441 PATENT

7.    As I understand it, the asserted claims of the '441 patent are directed to classes (or genuses) of tafamidis crystals defined by certain analytical characteristics (*e.g.*, powder X-ray diffraction ("PXRD") peaks, solid state nuclear magnetic resonance ("ssNMR") shifts, or Raman spectroscopy shifts).  Those claimed genuses include what the specification refers to as Form 1, but do not appear to encompass the other tafamidis forms disclosed in the specification, including Forms 2, 4, 6, and the amorphous form.

## IV.    THE SAMPLES APOTEX SEEKS FROM PLAINTIFFS ARE RELEVANT TO APOTEX'S NON-INFRINGEMENT DEFENSE

### a.   The Infringement Question

8.    The central scientific question for purposes of infringement is whether the tafamidis in Apotex Inc.'s ANDA product exhibits the analytical characteristics that place it within the claimed genus—*i.e.*, whether it corresponds to (or is indistinguishable in relevant respects from) the Form 1-type material encompassed by the claims, as opposed to other, unclaimed forms of tafamidis.

9.    I understand that, as a legal matter, Pfizer bears the burden of proving infringement. However, I also have been advised by Apotex's counsel that Apotex is entitled to conduct independent, reliable testing of its own product to support its non-infringement defense.  In my opinion, performing such testing according to a standard scientific protocol would utilize the relevant comparator materials disclosed in the '441 patent.  Without such access, Apotex's ability

3

to generate and present scientific evidence rebutting infringement allegations would be materially constrained.

### b. The Analytical Technique Involved

10.    The analytical techniques identified in the '441 patent—PXRD, ssNMR, and Raman spectroscopy—are standard tools used to determine how molecules are arranged in solid materials.  Although they are scientifically sophisticated, their basic principles can be explained in straightforward terms.

11.    PXRD involves directing X-rays at a powdered sample and measuring how those X-rays scatter.  The way the X-rays scatter depends on how the molecules are arranged in the solid. Each crystalline form produces a unique pattern—often described as a "fingerprint"—that can be used to identify that form.  Comparing the PXRD pattern of an unknown sample with the PXRD patterns of the known forms using the same settings on the same diffractometer is the standard method listed by the United States Phamacopeia for determining which crystalline form is present.

12.    ssNMR measures the behavior of atomic nuclei in a magnetic field.  The signals produced depend on the local chemical environment of the atoms, which can be influenced by how the molecules are packed in the solid.  Different polymorphs of the same compound can produce different NMR signatures.  These signatures can therefore be used to distinguish among different solid-state forms.

13.    Raman spectroscopy involves shining a laser on a sample and measuring how the light scatters due to molecular vibrations and solid-state lattice vibrations.  The vibrational patterns depend on how molecules are bonded and arranged in the solid.  Like PXRD and ssNMR, Raman

4

spectroscopy produces characteristic patterns that can be used to differentiate among polymorphic forms.

14.    The '441 patent itself identifies PXRD, ssNMR, and Raman spectroscopy as appropriate techniques for characterizing tafamidis forms.  Indeed, claim 1 recites crystalline 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole (the chemical name for tafamidis) exhibiting an analytical parameter selected from a group that includes certain ssNMR chemical shifts, PXRD peak positions, and peak positions in the Raman spectrum.  *See* D.I. 1, Compl. Ex. A, '441 patent at claim 1.  Each of these analytical methods relies on comparing data from an unknown sample to data obtained from known reference materials.

### c.    Relevance of the Requested Samples

15.    In my opinion, samples of all tafamidis forms disclosed in the '441 patent are directly relevant to the infringement analysis, including Forms 2, 4, 6, and the amorphous form, even though those forms are not themselves claimed.

16.    If Apotex elects to conduct analytical testing of its ANDA product to support its non-infringement defense, it is my opinion that it will need access to physical samples of all of the tafamidis forms disclosed in the '441 patent—namely Forms 1, 2, 4, 6, and the amorphous form—for use as reference standards.  As a scientific matter, techniques such as PXRD, ssNMR, and Raman spectroscopy rely on comparative analysis, meaning that data obtained from an unknown sample (e.g., Apotex Inc.'s ANDA product) is ordinarily evaluated against data generated from known materials under the same conditions.  The creation of reliable reference standards for direct comparison therefore requires authentic samples of each relevant form.  By generating and compiling analytical "fingerprints" for each tafamidis form disclosed in the '441 patent, Apotex's experts can directly compare those reference profiles to the analytical data obtained from Apotex

Inc.'s ANDA product and determine whether its material exhibits the characteristics of the claimed Form 1-type genus, or instead corresponds to one or more unclaimed forms. Without access to these samples to establish complete and validated reference standards, Apotex would be significantly constrained in its ability to perform scientifically rigorous testing and to demonstrate that its product falls outside the scope of the asserted claims.

17. Moreover, because they are comprised of the same chemical entity, different polymorphs can share similar analytical features. Without access to comparator samples, there is an increased risk that a non-infringing form could be misidentified as being within the claimed genus. More specifically, the analytical criteria recited in claim 1 of the '441 patent—namely, the presence of solid-state NMR signals at 120.8±0.2 and 127.7±0.2 ppm, a PXRD peak at 28.6±0.2° 2θ, *or* a Raman peak at 1292±2 cm$^{-1}$ (*see* ECF No. 1, Compl. Ex. A, '441 patent at claim 1)—are discrete features drawn from broader analytical datasets. In practice, different polymorphic or solid-state forms of the same compound can exhibit partially overlapping or closely similar features with those techniques. For example, a non-infringing tafamidis form (such as Form 2, 4, 6) may produce a PXRD pattern that includes a peak near 28.6° 2θ, or an ssNMR or Raman spectrum containing signals within or close to the claimed ranges, due to happenstance (in the case of PXRD) or similarities in molecular geometry, or local packing motifs. Because claim 1 defines the asserted genus in terms of the presence of a single listed analytical parameter—rather than requiring a complete match across an entire analytical fingerprint—there is a meaningful risk that an unrelated or unclaimed form could satisfy one of these isolated criteria while remaining scientifically distinguishable from the claimed Form 1-type material when analyzed more comprehensively. Absent access to authentic comparator samples of both the claimed and unclaimed tafamidis forms, it is significantly more difficult to determine whether an observed

6

match reflects true identity within the claimed genus or merely a coincidental overlap in a single analytical feature. This creates a substantial risk that a non-infringing form could be misidentified as falling within the scope of claim 1.

18.     Reliance solely on reported data (*e.g.*, figures or tables in the '441 patent) instead of electronic data exacerbates this risk. Published analytical data are often generated under insufficiently specified conditions or conditions not identical to those used by another user. As a result, apparent matches to the limited parameters recited in claim 1—such as a single PXRD peak, ssNMR shift, or Raman band—cannot be reliably evaluated in isolation. Differences in instrument geometry (*e.g.* reflection vs. transmission), calibration, sample preparation, or sample handling during data collection can shift peak positions or intensities, making unrelated forms appear to satisfy the claimed ranges. Without authentic reference samples to generate full analytical profiles under controlled, side-by-side conditions, it is exceedingly difficult to determine whether an observed correspondence reflects true inclusion within the claimed genus or merely spurious overlap of one parameter.

19.     Furthermore, a scientifically valid analysis requires demonstrating that the chosen analytical methods can reliably determine whether a material falls within the claimed genus and distinguish it from materials outside that genus. This requires testing against both claimed-type material (*e.g.*, Form 1) and unclaimed forms (Forms 2, 4, 6, and amorphous).

20.     Absent access to these samples, Apotex's ability to perform a scientifically reliable non-infringement analysis is materially impaired. Specifically, Apotex will not be able to rigorously demonstrate that Apotex Inc.'s ANDA product falls outside the scope of the '441 patent claims. Without access to the samples of the tafamidis forms disclosed and claimed in the '441

7

patent, Apotex is hindered in presenting scientifically grounded testing evidence to rebut Plaintiffs' infringement allegations.

21.    The requested samples are limited to a small set of materials expressly disclosed in the '441 patent and directly tied to the analytical framework upon which the patent relies. In my opinion, producing these samples would impose minimal burden relative to their importance in enabling definitive testing.

22.    Finally, I have been advised that Apotex has requested samples of Vyndamax (the brand product at issue) from Pfizer, and that Pfizer has refused to produce such samples on relevancy grounds. I have also been informed by counsel for Apotex that, at this early stage of the case, Pfizer contends that, regardless of the form of the tafamidis API in Apotex Inc.'s ANDA product, it will convert over time to Form 1 because that is purportedly the most thermodynamically stable form of tafamidis. While I have no knowledge regarding the form of tafamidis in Vyndamax, it is my opinion that testing of Vyndamax could reveal that, over time, whatever tafamidis form is used in its formulation may instead be kinetically unstable or convert to one or more unclaimed forms (*e.g.*, Form 4, Form 6, or another yet unidentified form). Such findings could undermine Pfizer's contention that any form Apotex might use in Apotex Inc.'s ANDA product converts to Form 1.

## V.    DOCUMENTS FROM THE PRIOR CONSOLIDATED ACTION ARE RELEVANT TO THE INFRINGEMENT INQUIRY IN THIS CASE

23.    In my opinion, materials relating to infringement from the Prior Consolidated Action are likely to be relevant to the issues presented in this case. By way of example, solid-state characterization frequently involves the interpretation of analytical data—such as PXRD patterns, thermal data, or spectroscopic results—and the application of professional judgment in determining whether that data supports a qualitative identification of a particular form. To the

8

extent Pfizer's experts offered opinions in the Prior Consolidated Action regarding how such data should be interpreted, including the standards or criteria required to identify a solid form (for example, the number and nature of characteristic PXRD peaks required for identification), those opinions may bear directly on the reliability and consistency of the methodologies being applied in this case.  If Pfizer's experts applied different or less stringent criteria in this action than in the Prior Consolidated Action—such as previously requiring, say, ten characteristic peaks in a PXRD pattern to support a qualitative identification, but are now opining that one or two peaks suffice—materials from the Prior Consolidated Action could be relevant for purposes of evaluating, testing, or impeaching those opinions.

24.    In addition, infringement materials from the Prior Consolidated Action may be relevant because they could reflect how Pfizer and its experts previously understood and characterized tafamidis solid forms, including the types of data they considered sufficient or necessary to support particular conclusions.  Such materials may also reveal whether similar analytical techniques, testing conditions, or sample preparation methods were used and how those factors influenced the resulting interpretations.  Further, to the extent the same experts are involved, prior testimony and reports may shed light on the consistency of their opinions, the assumptions underlying their analyses, and any limitations they previously acknowledged.  Finally, these materials may provide context regarding the scientific and technical issues in dispute, including how comparable ANDA products were evaluated, which in turn may inform the assessment of the infringement allegations relating to Apotex Inc.'s ANDA product.

## VI.    CONCLUSION

25.    Based on my training, experience, and the scientific considerations described above, it is my opinion that samples of tafamidis Forms 1, 2, 4, 6, and the amorphous form are

directly relevant and necessary for Apotex to conduct reliable and scientifically accepted testing to determine whether its product falls within the scope of the asserted claims of the '441 patent. Without such samples, Apotex cannot fully and fairly evaluate or demonstrate non-infringement. Indeed, I expect that Plaintiffs' own experts will have access to samples of the tafamidis forms disclosed and claimed in the '441 patent with which to carry out their own testing to support Plaintiffs' infringement case. Finally, it is my opinion that infringement materials from the Prior Consolidated Action would be highly relevant to the infringement issues in this case, including the proper identification of the form of tafamidis in Apotex Inc.'s ANDA product.

\*     \*     \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 15, 2026

_____
Mark D. Hollingsworth, Ph.D.

10

# EXHIBIT H

## Shrestha, Roshan P.

| | |
|---|---|
| **From:** | Hoffman, Andy <AHoffman@wc.com> |
| **Sent:** | Wednesday, June 3, 2026 8:42 AM |
| **To:** | Shrestha, Roshan P.; Shannon, Luke T.; 'Dellinger, Megan E.'; Evrony, Ayelet; Mandernach, Christopher; Fisher, Stanley; Selby, Thomas; Pfizer-Tafamidis |
| **Cc:** | 'Jack Phillips'; 'David A. Bilson'; Alul, Andrew M.; Ruzich, Richard T. |
| **Subject:** | RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis) |

Roshan,

*First*, despite Pfizer's reasonable (and repeated) request, Apotex refuses to provide any legal authority to support its position with respect to Pfizer samples. Rather than do so, Apotex offers only the empty assertion that the request comports with "well-established practice in ANDA crystal form cases." Were it so "well-established," it should be straightforward for Apotex to identify cases where a court compelled the plaintiff in an ANDA case, with claims and defenses similar to those at issue here, to produce samples of its own product. Apotex has provided none. Apotex appears intent on seeking relief from the Court without providing any support that may aid in narrowing or resolving the dispute. Should Apotex do so, Pfizer has no choice but to inform the Court that upon Pfizer's repeated request for legal authority supporting Apotex's position, Apotex refused to provide any such authority.

*Second*, with respect to documents relating to solid forms of tafamidis, Pfizer made clear in its 6/1 email correspondence that "the Pfizer research you seek all took place before the filing of the '441 patent." There are no discoverable documents that post-date the filing of the '441 patent related to Pfizer's development of solid-state forms of tafamidis. To the extent third parties worked on solid-state forms of tafamidis, that work is equally available to Apotex. There is no relief for the Court to order. We have now explained this issue to Apotex in writing (multiple times) and orally during our meet-and-confer. If Apotex nonetheless proceeds to raise this issue with Court, we will again have no choice but to inform the Court of Apotex's repeated misstatement of Pfizer's responses and position.

*Third*, at our 5/21 meet-and-confer, and again in a 5/27 email correspondence, Pfizer inquired regarding (i) Apotex's incomplete production of ███████████████████████████████, and (ii) the expiry, representativeness, and testing of API and ANDA Product samples. As to (i), based on our review of Apotex's productions, we appear to missing some or all ████████████████████████████████████████████████ We also appear to be missing FDA correspondence regarding ████████████████████████████████████████████████████████████████████████████████████████████████████████████. If we are mistaken, please identify these documents by Bates. Pfizer renews its request that Apotex confirm whether it will request that ███████████ complete tafamidis DMF as well as documents related to the DMF, including correspondence with FDA. Please state Apotex's positions regarding these issues by 5pm ET on 6/4.

Regards,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Tuesday, June 2, 2026 1:07 PM

**To:** Hoffman, Andy <AHoffman@wc.com>; Shannon, Luke T. <LShannon@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Andy,

We are available on Thursday at 1:30 PM EDT.  Please circulate the dial-in details.

Your response regarding documents relating to solid forms of tafamidis (Apotex RFP Nos. 28, 75, and 86–90) is not merely unclear—it is untenable.  As best we can tell, Pfizer is attempting to limit its production to materials tied to the research and development of the '441 patent, while refusing to produce plainly responsive documents within Plaintiffs' possession, custody, or control concerning solid tafamidis forms that post-date the '441 patent.  That position has no basis in the Federal Rules and is unacceptable.  If Pfizer does not promptly confirm that it will produce these materials, we will seek relief from the Court without further notice.

With respect to samples that Apotex seeks from Plaintiffs, the parties are clearly at an impasse.  Apotex has fully satisfied its obligations under L. Civ. R. 37.1.  Pfizer's refusal to produce samples is unjustified and inconsistent with well-established practice in ANDA crystal form cases.  We see no value in endless meet-and-confer on this issue.  Apotex will seek appropriate relief from the Court.

Best,
Roshan

**Roshan P. Shrestha, Ph.D.**
Partner
rshrestha@taftlaw.com
Dir: 312.840.4339
Tel: 312.527.4000
111 East Wacker Drive, Suite 2600
Chicago, IL 60601

**Taft Bio**
**Download vCard**
**taftlaw.com**

**Now over 1,250 attorneys strong.**

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Monday, June 1, 2026 8:11 AM
**To:** Shannon, Luke T. <LShannon@taftlaw.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; 'Dellinger, Megan E.' <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** 'Jack Phillips' <JCP@PMHDELaw.com>; 'David A. Bilson' <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

2

Luke,

The only time the other generics are all available to meet and confer this week is Thursday, June 4, at 1:30 pm ET.  Please let us know if that time works for you, and I will circulate an invite.

As for documents relating to solid forms of tafamidis, your understanding generally is correct.  To be clear, we explained last week and in our letter correspondence that the categories of documents Pfizer agreed to produce encompass Pfizer's development of solid forms of tafamidis free acid.  In other words, the Pfizer research you seek all took place before the filing of the '441 patent.  To the extent Apotex seeks documents about purported crystalline forms of tafamidis developed by third parties after filing of the '441 patent, such documents are equally available to Apotex.

We continue to confer with our client on Apotex's request for samples.  To aid that process, please provide any authority you have for the proposition that a brand must produce samples of its drug product and API given the specific claims and defenses that Plaintiffs and Apotex have advanced here.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Hoffman, Andy
**Sent:** Thursday, May 28, 2026 12:29 PM
**To:** Shannon, Luke T. <LShannon@taftlaw.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Luke,

We will inquire about the other generics' availability to meet and confer next week, and get back to you on the other issues in due course.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shannon, Luke T. <LShannon@taftlaw.com>
**Sent:** Wednesday, May 27, 2026 6:34 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher

<CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel,

We are looking into the issues raised in your email from this morning.  In the meantime, we write to (a) address your fifth point promptly, as we are preparing to move to compel Pfizer to produce documents it is withholding on third-party confidentiality grounds, and (b) confirm Pfizer's position regarding deficiencies in its discovery responses discussed during last Thursday's meet and confer

**<u>Documents Withheld on Third-Party Confidentiality Grounds</u>**

Apotex RFP Nos. 28, 75, and 86–90 seek documents within Pfizer's possession, custody, or control.  These requests are directed to Pfizer under Rule 34—not to any third party.  Apotex has therefore satisfied its meet-and-confer obligations with respect to these documents and is not required to engage in further meet-and-confers with non-parties.

Nonetheless, in the interest of cooperation, Apotex is willing to meet and confer with counsel for any third parties asserting confidentiality over the documents at issue.  Please arrange such a meet and confer and provide proposed dates and times for this Friday or early next week.

**<u>Documents Regarding Solid Forms of Tafamidis</u>**

During last Thursday's meet and confer, we understood that Pfizer agreed to search for and produce documents relating to solid forms of tafamidis without limiting its efforts to materials generated in connection with the work leading to the '441 patent.  That is, Pfizer would search for and produce responsive documents regardless of when the underlying research occurred.

Please confirm that this understanding is correct as soon as possible.  If not, we intend to seek relief from the Court on this issue.

**<u>Samples of Vyndamax, API, and Tafamidis Forms</u>**

We understand that the parties have reached an impasse regarding Pfizer's production of samples.  Apotex will therefore be moving on this issue.

\*       \*       \*

Please provide us with Pfizer's responses to the open items above by no later than next Monday, June 1.

Thank you,
Luke


**Luke T. Shannon**
Of Counsel
LShannon@taftlaw.com
Dir: 312.836.4115

4

Tel: 312.527.4000
111 East Wacker Drive, Suite 2600
Chicago, IL 60601

**taftlaw.com**

**Now over 1,250 attorneys strong.**

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Wednesday, May 27, 2026 8:00 AM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel,

I write to follow-up on several requests made during our meet-and-confer last Thursday, May 21, and related issues.

First, as discussed, Apotex's production of                                                                              is incomplete.  Setting aside whether production of the complete DMF and related documents is required as part of Apotex's core technical documents, please confirm whether Apotex will request that                                                                 , including correspondence with FDA.  *See* Pfizer's RFP No. 2.

Second, please provide the following information and confirm whether Apotex will stipulate that any API samples it produces are representative of the API used when manufacturing its ANDA Product:

- the API batches from which samples will be produced;
- when those API batches were last tested;
- the current expiry date of those API batches; and
- whether those API batches will be retested, and if so, when.

Third, Pfizer reiterates its request for 5g of each API exhibit batch.  Please confirm Apotex's agreement.  If Apotex insists that 5g is more burdensome to produce than 3g, please substantiate that claim.

Fourth, Apotex's response to Pfizer's request for samples of Apotex's ANDA Product is ambiguous as to whether those samples are expired.  Please provide the following information and confirm whether Apotex will stipulate that any ANDA Product samples it produces are representative of Apotex's ANDA Product:

- when the ANDA Product exhibit batches were last tested;
- the current expiry date of the ANDA Product exhibit batches; and
- whether the ANDA Product exhibit batches will be retested, and if so, when.

Fifth, we have inquired whether the other generics oppose production of documents containing their confidential information.  Hikma opposes the production.  We are awaiting responses from the other generics and suggest a meet and confer with those that oppose to determine whether the parties' disagreements can be resolved.

5

Please provide Apotex's responses to the items above by Monday, June 1.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Tuesday, May 19, 2026 10:32 AM
**To:** Hoffman, Andy <AHoffman@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Andy,

We are available at 5 PM ET on May 21, Thursday. Please use the following Zoom link.

https://taftlaw.zoom.us/launch/jc/97803988909

Regards,
Roshan

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Monday, May 18, 2026 9:13 AM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Roshan,

Unfortunately, that window does not work for us.  We are available at 5pm ET this Thursday or Tuesday, 5/26, from 10am-noon.  Please let us know if one of those times works for you.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024

6

202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Friday, May 15, 2026 6:30 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Andy,

We are unavailable at the times you referred in your letter. We are however available on Wednesday afternoon between 1-5 PM ET. If a time in this window works for you, please circulate a dial-in.

Regards,
Roshan

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Friday, May 15, 2026 1:54 PM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Hi Roshan,

Our availability was set forth in the letter correspondence.  If those times don't work, please propose some alternatives.

Thanks,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Friday, May 15, 2026 2:44 PM
**To:** Hoffman, Andy <AHoffman@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson

7

<DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel,

Please provide us with your availability to meet and confer next week.

- Roshan

**Roshan P. Shrestha, Ph.D.**
Partner
rshrestha@taftlaw.com
Dir: 312.840.4339
Tel: 312.527.4000
111 East Wacker Drive, Suite 2600
Chicago, IL 60601

**Taft Bio**
**Download vCard**
**taftlaw.com**

**Now over 1,250 attorneys strong.**

---

**From:** Hoffman, Andy <AHoffman@wc.com>
**Sent:** Thursday, May 14, 2026 2:14 PM
**To:** Shrestha, Roshan P. <rshrestha@taftlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>
**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel,

Please see the attached correspondence.

Best,
Andy

**Andy Hoffman**
**Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5364 |ahoffman@wc.com | www.wc.com

---

**From:** Shrestha, Roshan P. <rshrestha@taftlaw.com>
**Sent:** Tuesday, May 5, 2026 11:34 AM
**To:** Liu, Michael <mliu@wc.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; Hoffman, Andy <AHoffman@wc.com>; Evrony, Ayelet <aevrony@wc.com>; Mandernach, Christopher <CMandernach@wc.com>; Fisher, Stanley <SFisher@wc.com>; Selby, Thomas <TSelby@wc.com>; Pfizer-Tafamidis <Pfizer-Tafamidis@wc.com>

**Cc:** Jack Phillips <JCP@PMHDELaw.com>; Shannon, Luke T. <LShannon@taftlaw.com>; David A. Bilson <DAB@PMHDELaw.com>; Alul, Andrew M. <AAlul@taftlaw.com>; Ruzich, Richard T. <rruzich@taftlaw.com>
**Subject:** RE: Pfizer v. Apotex, C.A. No. 25-1306 (tafamidis)

Counsel, please see attached correspondence.

Regards,
Roshan

**Roshan P. Shrestha, Ph.D.**
Partner
rshrestha@taftlaw.com
Dir: 312.840.4339
Tel: 312.527.4000   |   Fax: 312.966.8573
111 E. Wacker Drive, Suite 2600
Chicago, Illinois 60601-4208

**Taft Bio**
**Download vCard**
**taftlaw.com**

**Now over 1,250 attorneys strong.**

Taft has expanded its service offerings by combining with Morris, Manning & Martin (Atlanta and Washington, D.C.), Mrachek Law (Florida), and Sherman & Howard (Mountain West).  Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TQ DELTA, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 15-614-RGA |
| v. | : | |
| | : | |
| | : | |
| DISH NETWORK CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**SPECIAL MASTER ORDER #11 – RULING ON DISH DEFENDANTS'
MOTION TO COMPEL PRODUCTION OF UNREDACTED EXPERT
REPORTS, DECLARATIONS, AND TESTIMONY TRANSCRIPTS OF
TQ DELTA, LLC'S TECHNICAL EXPERT, DR. VIJAY MADISETTI**

I.      **INTRODUCTION**

Pending before the Special Master is Defendants DISH Network Corp., DISH Network

LLC, DISH DBS Corp., and DISH Technologies L.L.C.'s (collectively "DISH") motion to compel

Plaintiff TQ Delta, LLC ("TQ Delta" or "Plaintiff") to produce unredacted expert reports,

declarations, and testimony transcripts of its technical expert, Dr. Vijay Madisetti ("Dr.

Madisetti"), from other TQ Delta litigations relating to patents from the same family as the patents

asserted in this case,[1] and any future opinions or testimony offered by its experts in other litigations

relating to patents from the same family as the patents asserted in this case (D.I. 380) (the

"Motion").[2]   DISH further requests an award of its fees and costs in connection with this Motion.

(Op. Br. at 3).   On January 25, 2022, TQ Delta submitted its answering brief in opposition to the

---

[1] This Order refers to any and all expert reports, declarations, and testimony transcripts of its technical expert, Dr. Madisetti, from other TQ Delta litigations relating to patents from the same family as the patents asserted in this case as the "Prior Litigation Materials".

[2] In support of the Motion, DISH lodged upon the Special Master an Opening Letter Brief dated January 18, 2021 ("Opening Brief" or "Op. Br.").

Motion ("Answering Brief" or "Ans. Br.") asserting that that the Prior Litigation Materials have "little relevance to the present litigation" and that disclosure of unredacted copies of the Prior Litigation Materials is prohibited under the terms of the protective orders in the Prior Actions.[3] (Ans. Br. at 1). On January 31, 2022, the Special Master heard oral argument on the Motion. After considering the written submissions by the parties and oral argument from counsel, the Motion is ripe for adjudication and ruling by the Special Master. For the reasons set forth more fully below, the Motion is GRANTED.

## II.  BACKGROUND AND RELEVANT PROCEDURAL POSTURE

Plaintiff initiated this action on July 17, 2015, alleging that DISH infringed eight (8) of TQ Delta's patents. (D.I. 1). Two patents remain at issue in the present action:  U.S. Patent Ns. 8,718,158 ("the '158 patent") and 9,014,243 ("the '243 patent").

On February 5, 2016, DISH served upon TQ Delta its First Set of Requests for Production to Plaintiff (Nos. 1-138), which sought, among other things, the production of materials from TQ Delta's prior litigations. (D.I. 48; Op. Br., Ex. C).  On August 21, 2021, TQ Delta disclosed to DISH that Dr. Madisetti would serve as its expert in the present action.

The parties subsequently met and conferred regarding DISH's relevant discovery requests, and TQ Delta represented that there were no expert opinions on damages in those cases, or on technical topics by experts other than Dr. Madisetti. (Op. Br. at 1). Based upon this representation, DISH narrowed the relevant discovery requests to include only five categories of materials. (*Id.*) One of the five categories of materials was "prior expert reports, declarations, deposition

---

[3] "Prior Actions" refer to the prior TQ Delta litigations where in Dr. Madisetti served as an expert witness, including *TQ Delta, LLC v. 2Wire, Inc.,* 1:13-cv-01835-RGA ("2Wire Case") and *TQ Delta, LLC v. Adtran, Inc.,* 1:14-cv-00954-RGA ("ADTRAN Case"). At issue in the Prior Actions were six patents in the same patent family as the patents asserted in the present action, including U.S. Patent Nos. 7,292,627, 7,471,721, 8,073,041, 8,090,008, 8,218,610, and 8,355,427.

testimony, and any other materials from Dr. Madisetti from the [2Wire Case] and [ADTRAN Case]." (Op. Br., Ex. D at 2).

To date, TQ Delta has not produced to DISH any of the Prior Litigation Materials. Rather, on January 6, 2022, TQ Delta provided to DISH a list of all Prior Litigation Materials identifying the Defendant, the title of the report or declaration, and the docket entry. (Ans. Br., Ex. D). This list included both sealed and publicly filed Prior Litigation Materials.

DISH's Motion requests the Court to require TQ Delta to produce unredacted Prior Litigation Materials. (D.I. 380). In support of the Motion, DISH asserts that Dr. Madisetti's prior opinions are relevant to the present action because they pertain to "the scope and validity of claims bearing a remarkable resemblance to those asserted in this case" and specifically represents that Dr. Madisetti's prior opinions relate to other "phase scrambling" patents like the patents at issue in this action. (Op. Br. at 2). DISH also asserts that TQ Delta's production of the Prior Litigation Materials would not be unduly burdensome to TQ Delta because TQ Delta's counsel have the documents available in its possession and because TQ Delta can designate the Prior Litigation Materials as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in the present action to protect any non-party confidential information. (*Id.* at 3).

In opposition to the Motion, TQ Delta contends that the protective orders[4] in the Prior Actions prohibit the disclosure of unredacted copies of the Prior Litigation Materials because the Prior Litigation Materials contain information that has been designated "HIGHLY

---

[4] The applicable protective order in the 2Wire Case is attached to the Answering Brief at Exhibit A. The applicable protective order in the ADTRAN Case is attached to the Answering Brief as Exhibit B. The two protective orders in the Prior Actions are collectively referred to as the "Protective Orders." Also, at play is a protective order governing the production of information by Broadcam Corporation ("Broadcam") in the Prior Litigations (the "Broadcam Protective Order"). The Broacdcam Protective Order is attached to the Answering Brief as Exhibit C.

3

CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" by other parties in the Prior Actions who are non-parties in this action. (Ans. Br. at 1). In other words, TQ Delta contends that it is prohibited from producing the Prior Litigation Materials to DISH because they contain confidential information of non-parties. (*Id.* at 2). TQ Delta further contends that DISH ought to "deal directly with the non-parties to obtain permission to receive the non-parties' confidential information" because that would be "'more convenient, less burdensome, [and] less expensive' than requiring TQ Delta to insert itself in that process." (*Id.*).

## III. ANALYSIS

### A. Legal Standard

Pursuant to Rule 26 of the Federal Rule of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. Pro. 26(b)(1).

The Third Circuit "employs a liberal discovery standard," *Westchester Fire Ins. Co. v. Household Intl'l, Inc.*, 167 F. Appx 895, 899 (3d Cir. 2006), and recognizes that "the federal rules allow broad and liberal discovery." *Pacetti by Pacetti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Similarly, the District of Delaware has "'construed liberally and with common sense' the requirement of relevancy, rather than measure relevancy by the precise issues framed by the pleadings or limited by other concepts of narrow legalisms. Thus, discovery should ordinarily be

4

allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Rohm & Haas Co. v. Brotech Corp.*, 1990 U.S. Dist. LEXIS 20117, at *12 (D. Del. Sept. 14, 1990); *see also See Finjan, Inc. v. Rapid7, Inc.*, 2020 WL 5045186, at *2 (D. Del. Aug. 7, 2020) ("Relevance is liberally construed to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Discovery may be limited if the court determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(c).

**B.    TQ Delta is Ordered to Produce the Prior Litigation Materials to DISH in Unredacted Form.**

To determine whether DISH is entitled to unredacted versions of the Prior Litigation Materials, the Court's analysis begins with Rule 26(b)(1). First, the Court must determine whether the information requested concerns a nonprivileged matter that is relevant to any party's claim or defense. Here, the Special Master finds that the Prior Litigation Materials are relevant to the claims and defenses in the present action. Specifically, Dr. Madisetti's prior opinions concern other "phase scrambling" patents in the same patent family as the '158 and '243 patents. *See* Op. Br., Ex. A at 4. In fact, in the ADTRAN Case, Dr. Madisetti opined on the construction of the "phase characteristic" term. (Op. Br., Ex. K at 20-26). This term is similarly recited by the '158 patent

5

in the present action. Thus, based on the resemblance of the patents at issue in the present action and the patents at issue in the Prior Actions, the Special Master finds that the Prior Litigation Materials are relevant to the claims and defenses in this action.

Having determined that the Prior Litigation Materials are relevant, the Special Master next evaluates whether the production of unredacted versions of the Prior Litigation Materials is proportional to the needs of the case considering (i) the importance of the issues at stake in the action, (ii) the amount in controversy, (iii) the parties' relative access to relevant information, (iv) the parties' resources, (v) the importance of the discovery in resolving the issues, and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit. Here, the parties' dispute centers around whether the production of unredacted versions of the Prior Litigation Materials amounts to an undue burden to TQ Delta.

Again, TQ Delta argues that production of the unredacted versions of the Prior Litigation Materials is unduly burdensome because the Protective Orders prohibit the use and disclosure of documents or other materials to DISH for use in this action absent the non-parties' consent. (Ans. Br. at 2-3). Indeed, the Protective Orders in the Prior Actions limit the use of documents or other discovery materials produced or exchanged in connection with the Prior Actions to use in each Prior Action respectively, absent written consent by the Designating Party[5] or unless otherwise ordered by the Court. (Ans. Br., Ex. A at 1 ("Documents or other discovery materials produced or exchanged in connection with this Action may only be used in this Action . . . and may not be used for other actions *absent the written agreement of the producing party*.") (emphasis added);

---

[5] The Protective Orders include the following definitions: (i) "Designating Party" is defined as "a Party or non-party that designates information or items that is produced in disclosures or in responses to discovery as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code"; and (ii) "Receiving Party" is defined as "a Party that receives Discovery Material from a Producing Party." (Ans. Br., Ex. A. at 3; Ex. B at 3-4).

6

Ex. B (same); *see also* Ans. Br., Ex. A at 4 (¶ 3 ("All documents, materials, items, testimony or information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and "HIGHLY CONFIDENTIAL – SOURCE CODE," . . . shall be governed by this Protective Order and shall be used only for the purposes of this Action and not for any other litigation . . . and shall not be disclosed to anyone except as provided in this Protective Order, absent a specific order by the Court."); Ex. B at 5 (¶ 3 (same)); Ex. A at 12 (¶ 7.1 ("A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party only in connection with this Action and not for any other litigation (including any other action brought by TQ Delta) . . . and shall not disclose Protected Material to anyone except as provided in this Order absent a specific order by the court.")); Ex. B at 13 (¶ 7.1 (same)).

In addition to allowing disclosure of designated confidential information when required by a court order, the Protective Orders in the Prior Actions include provisions expressly addressing a Designating Party's rights in the event a Receiving Party is ordered to disclose information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE." (Ans. Br., Ex. A at 23-24 (¶ 8); Ex. B. at 24-25 (¶ 8)). Specifically, the Protective Orders provide that if "an order issued in other litigation would compel disclosure" of such confidential information "the Receiving Party must so notify the Designating Party, in writing, promptly and in no event more than ten (10) court days after receiving the . . . order" and must include a copy of the order. (Ans. Br., Ex. A at 23; Ex. B at 24). The Protective Orders recognize that these provisions serve to "alert the interested parties to the existence of [the Protective Orders] and to afford the Designating Party in this Action an

opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued." (Ans. Br., Ex. A at 23; Ans. Br., Ex. B at 25).[6]

The Special Master has carefully considered the parties' arguments and makes the following findings: based upon the provisions of the Protective Orders in the Prior Actions and the Broadcom Protective Order, the Special Master finds that, upon an order from this Court requiring TQ Delta to produce any non-party confidential information, TQ Delta need only satisfy the notice requirements set forth in the Protective Orders and the Broadcam Protective Order. *See* Ans. Br., Ex. A at 23, Ex. B at 24 and Ex. C at 16-17. Such notice requirements are not unduly burdensome for TQ Delta. Also, TQ Delta does not dispute that its counsel possesses copies of the Prior Litigation Materials in unredacted form and, thus, it is not unduly burdensome for TQ Delta to produce these Prior Litigation Materials to DISH if so ordered by this Court. In other words, the burden of TQ Delta producing the Prior Litigation Materials in unredacted form is not outweighed by its likely benefit.

At the same time, the Special Master recognizes the importance of protecting non-parties' confidential information. The Special Master certainly wants to be sensitive to avoid doing any harm that may result to the non-parties by requiring the disclosure of non-party confidential information in this action. The Special Master is unaware of any manner in which the non-parties are adverse to DISH. To the contrary, by virtue of both the non-parties and DISH being adverse to TQ Delta in pending patent litigations, their interests appear to be somewhat aligned. Also, in

---

[6] The Broadcam Protective Order includes similar notice provisions to the extent a court order compels disclosure of "BROADCOM – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE." Ex. C at 16-17. Further, the Protective Orders in the Prior Actions and the Broadcom Protetive Order state that "[t]he Designating Party shall bear the burdens and expenses of seeking protection in that court of its confidential material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another Court." (Ans. Br., Ex. A at 24; Ex. B at 25; Ex. C at 16-17).

8

this action, the Court has entered a protective order allowing the parties to designate documents, testimony and information exchanged between the parties as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." (D.I. 72) Thus, any Prior Litigation Materials produced in this action may be designated as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" to continue to protect the non-party confidential information in this action.

In light of the above, the Special Master concludes that DISH is entitled to the Prior Litigation Materials given their relevance to the claims and defenses in this action, and that the burden of TQ Delta producing the Prior Litigation Materials in unredacted form is not outweighed by its likely benefit. Therefore, TQ Delta is ordered to produce the Prior Litigation Materials in unredacted form to DISH as follows: Specifically, the Special Master orders that within two (2) days of the date of this Order, TQ Delta shall satisfy all requisite notices requirements under the Protective Orders in the Prior Actions and the Broadcam Protective Order, which includes notifying all affected non-parties of this Order requiring the production of unredacted versions of the Prior Litigation Materials containing information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL SOURCE CODE" or "BROADCOM – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE." Thereafter, within ten (10) days of the date of this Order, TQ Delta shall produce all Prior Litigation Materials to DISH in unredacted form in this action as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to and subject to the terms of the protective order entered in this action. If, after receiving notice from TQ Delta, any non-party objects to the production of its confidential information to DISH in this action, it may move for a protective order before this Court on or

9

before February 10, 2022. In the event that a non-party files a motion for protective order with this Court on or before February 10, 2022 to prevent disclosure of its designated confidential information to DISH, the ten (10) day deadline for TQ Delta to produce all Prior Litigation Materials to DISH in unredacted form shall be stayed only with respect to Prior Litigation Materials containing the confidential information of the non-party or non-parties who have filed motion(s) for protective order with this Court and only until the Court is able to hear and determine the merits of such motion(s). [7]

### C.     DISH's Request For Fees and Expenses Is Denied.

DISH requests an award of fees and costs under Federal Rule of Civil Procedure 37(a)(5)(A) and 28 U.S.C. § 1927 in connection with the Motion. (Op. Br. at 3). TQ Delta opposes this request. (Ans. Br. at 3). It is within this Court's discretion to impose sanctions under Federal Rule of Civil Procedure 37. *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir.1995) (internal quotation marks omitted); *see also* L.R. 1.3(a) ("Sanctions may be imposed, at the discretion of the Court, for violations of the Rules, as well as for violations of the Fed. R. Civ. P. and any order of the Court. Such sanctions may include, but are not limited to, costs, fines and attorneys' fees imposed on the offending party and that party's attorney."). The Special Master, in his discretion, finds that both sides presented meritorious arguments on the Motion and, therefore, denies DISH's request for an award of its fees and expenses in connection with the Motion.

---

[7] DISH further seeks the Court require TQ Delta to produce any future opinions or testimony provided by Dr. Madisetti or other experts in the Prior Actions that are relevant to "phase scrambling" patents. (Op. Br. at 2). If and when Dr. Madisetti or another expert in the Prior Actions renders any future opinions or testimony in the Prior Actions that are relevant to the "phase scrambling" patents in the Prior Actions, the same rationale will generally apply. However, without deciding such possible future disputes at this time, DISH can file another motion if and when the situation arises for the Special Master to evaluate and rule on the dispute in context.

## IV.   CONCLUSION

For the foregoing reasons, the Special Master GRANTS DISH's Motion.  Within two (2) days of the date of this Order, TQ Delta shall satisfy all requisite notices requirements under the Protective Orders in the Prior Actions and the Broadcam Protective Order, which includes providing notice to all affected non-parties of this Order requiring the production of unredacted versions of the Prior Litigation Materials containing information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL SOURCE CODE" or "BROADCOM – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE."   Thereafter, within ten (10) days of the date of this Order, TQ Delta shall produce all Prior Litigation Materials to DISH in unredacted form in this action as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to and subject to the terms of the protective order entered in this action.  If, after receiving notice from TQ Delta, any non-party objects to the production of its confidential information to DISH in this action, it may move for a protective order before this Court on or before February 10, 2022.  In the event that a non-party files a motion for protective order with this Court on or before February 10, 2022 to prevent disclosure of its designated confidential information to DISH, the ten (10) day deadline for TQ Delta to produce all Prior Litigation Materials to DISH in unredacted form shall be stayed only with respect to Prior Litigation Materials containing the confidential information of the non-party or non-parties who have filed motion(s) for protective order with this Court and only until the Court is able to hear and determine the merits of such motion(s).

ENTERED this 1st day of February, 2022.

Gregory B. Williams (#4195)
Special Master

11

SO ORDERED this ___23___ day of _____February_____, 2022.

/s/ Richard G. Andrews
UNITED STATES DISTRICT COURT JUDGE

12