IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., AND WYETH LLC,<br><br>Plaintiff,<br><br>v.<br><br>APOTEX INC., APOTEX CORP., and DIFGEN PHARMACEUTICALS LLC,<br><br>Defendants. | ) | C.A. No. 25-01306-GBW |

**DEFENDANTS' ANSWER TO THE FIRST AMENDED COMPLAINT, DEFENSES, AND COUNTERCLAIMS**

Defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex") and DifGen Pharmaceuticals LLC ("DifGen") (Apotex and DifGen, collectively, "Defendants"), by their undersigned attorneys, for their Answer to the First Amended Complaint ("FAC") filed by Plaintiffs Pfizer Inc. ("Pfizer"), FoldRx Pharmaceuticals, LLC ("FoldRx"), PF PRISM IMB B.V. ("PF PRISM"), and Wyeth LLC ("Wyeth") (collectively, "Plaintiffs"), state as follows. Pursuant to Fed. R. Civ. P. 8(b)(3), Defendants deny all allegations in the FAC except those expressly admitted below.

1. Paragraph 1 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, Defendants admit that Plaintiffs' FAC purports to state an action for patent infringement under Title 35 of the United States Code, and for declaratory judgment of patent infringement under 28 U.S.C. §§ 2201 and 2202. Defendants admit that Apotex Inc. submitted ANDA No. 218905 ("Apotex Inc.'s ANDA") with the U.S. Food and Drug Administration ("FDA") pursuant to 21 U.S.C. § 355(j) *et seq.* seeking approval to market

tafamidis capsules, 61 mg, as generic to Plaintiffs' Vyndamax® ("Apotex Inc.'s ANDA product"), prior to the expiration of U.S. Patent No. 9,770,441 ("'441 patent"). Defendants further admit that what purports to be a copy of the '441 patent is attached as Exhibit A to the FAC. Defendants deny all remaining allegations of paragraph 1.

2. Paragraph 2 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, Apotex admits that Apotex Inc. sent a notice letter to, *inter alia*, Plaintiffs Pfizer and FoldRx, dated September 9, 2025, which served as written notification to Plaintiffs pursuant to 21 U.S.C. § 355(j)(2)(B) that Apotex Inc. submitted Apotex Inc.'s ANDA to the FDA and that the ANDA included a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") as to the '441 patent ("Apotex Inc.'s Notice Letter"), and that Apotex Inc.'s Notice Letter satisfied all statutory, legal, and regulatory requirements. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 2 of the FAC and therefore denies them.

**PARTIES**

3. Upon information and belief, admitted.

4. Upon information and belief, Defendants admit that Plaintiff FoldRx is a limited liability company with a place of business at 66 Hudson Boulevard East, New York, NY 10001. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore deny them.

5. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5, and therefore deny them.

6. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore deny them.

7. Apotex admits that Apotex Inc. is a Canadian-based global health company that, *inter alia*, manufactures and markets generic drugs, and that has a place of business at 150 Signet Drive, Toronto, Ontario, M9L 1T9, Canada. Apotex denies the remaining allegations in Paragraph 7. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 7 of the FAC and therefore denies them.

8. Apotex admits that Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 2400 N. Commerce Parkway, Suite 400, Weston, FL 33326, and that it markets generic drugs in the United States. Apotex denies the remaining allegations of Paragraph 8. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 8 of the FAC and therefore denies them.

9. Denied.

10. Apotex admits that Apotex Inc. is a Canadian-based global health company that, *inter alia*, manufactures and markets generic drugs. Apotex denies the remaining allegations of Paragraph 10. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 10 of the FAC and therefore denies them.

11. Denied.

12. Denied.

13. Denied.

14. DifGen admits that it is a US-based global pharmaceutical limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business

at 3200 Commerce Parkway, Miramar, Florida 33025. DifGen denies the remaining allegation of Paragraph 14. Apotex is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 14 of the FAC and therefore denies them.

15. Defendants admit that DifGen assisted in the development of Apotex Inc.'s ANDA product and provided information used in connection with the preparation of Apotex Inc.'s ANDA. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny all remaining allegations.

16. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

17. Defendants admit that DifGen prepared certain documents and reports that were ultimately included in or submitted in support of Apotex Inc.'s ANDA. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny all remaining allegations.

18. Defendants admit that DifGen participated in the research and development of Apotex Inc.'s ANDA product and, subject to FDA approval, is expected to manufacture and supply that product. Further answering, solely to conserve the resources of the parties and the Court,

DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny the remaining allegations.

19. Defendants admit that DifGen participated in the research and development of Apotex Inc.'s ANDA product and, subject to FDA approval, is expected to manufacture and supply that product. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny the remaining allegations.

20. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

21. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

22. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A)

for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

23. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

24. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

25. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

26. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties

and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

27. Defendants admit that DifGen and Apotex Inc. are parties to the License & Supply Agreement dated June 26, 2023, and that the License & Supply Agreement speaks for itself and is the best evidence of its contents. Further answering, solely to conserve the resources of the parties and the Court, DifGen does not contest that it is a proper defendant under 35 U.S.C. § 271(e)(2)(A) for purposes of this action only. Defendants deny any allegation inconsistent with the terms of that Agreement and deny all remaining allegations.

28. Denied.

29. Defendants admit that DifGen issued a press release concerning approval of a nintedanib product. Defendants deny all remaining allegations.

**JURISDICTION AND VENUE**

30. Paragraph 30 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, Defendants admit that the Court has jurisdiction over the subject matter of Count I of Plaintiffs' FAC. Defendants deny any and all remaining allegations contained in this Paragraph.

31. Paragraph 31 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Apotex does not contest personal jurisdiction over Apotex Inc. in this Judicial District solely for the limited purposes of this action only. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to

form a belief as to the truth or accuracy of the allegations of Paragraph 31 of the FAC and therefore denies them.

32. Paragraph 32 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Apotex does not contest personal jurisdiction over Apotex Corp. in this Judicial District solely for the limited purposes of this action only. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 32 of the FAC and therefore denies them.

33. Paragraph 33 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, DifGen does not contest personal jurisdiction in this Judicial District solely for the limited purposes of this action only. DifGen denies any and all remaining allegations contained in this Paragraph. Apotex is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 33 of the FAC and therefore denies them.

34. Paragraph 34 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Defendants do not contest personal jurisdiction in this Judicial District solely for the limited purposes of this action only. Defendants deny any and all remaining allegations contained in this Paragraph.

35. Paragraph 35 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Defendants do not contest personal jurisdiction in this Judicial District solely for

the limited purposes of this action only. Defendants deny any and all remaining allegations contained in this Paragraph.

36. Paragraph 36 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Defendants do not contest personal jurisdiction in this Judicial District solely for the limited purposes of this action only. Defendants deny any and all remaining allegations contained in this Paragraph.

37. Paragraph 37 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Apotex does not contest personal jurisdiction in this Judicial District solely for the limited purposes of this action only. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 37 of the FAC and therefore denies them.

38. Paragraph 38 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Apotex does not contest venue over Plaintiffs' claims against Apotex Inc. in this Judicial District solely for the limited purposes of this action only. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 38 of the FAC and therefore denies them.

39. Paragraph 39 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, Apotex does not contest venue over Plaintiffs' claims against Apotex Corp. in this

Judicial District solely for the limited purposes of this action only. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 39 of the FAC and therefore denies them.

40. Paragraph 40 contains legal conclusions and allegations to which no answer is required. To the extent an answer may be required, solely to conserve the resources of the parties and the Court, DifGen does not contest venue over Plaintiffs' claims against DifGen in this Judicial District solely for the limited purposes of this action only. DifGen denies any and all remaining allegations contained in this Paragraph. Apotex is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 40 of the FAC and therefore denies them.

**FACTUAL BACKGROUND**

41. Upon information and belief, admitted.

42. Admitted.

43. Admitted.

44. Admitted.

45. Apotex admits that Apotex Inc.'s Notice Letter included an "Offer of Confidential Access" that satisfied all statutory, legal, and regulatory requirements. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 45 of the FAC and therefore denies them.

46. Apotex admits that, in an exchange of correspondence, counsel for Plaintiffs Pfizer and FoldRx and counsel for Apotex negotiated the terms of Apotex Inc.'s "Offer of Confidential

Access," and that Apotex complied with all statutory, legal, and regulatory requirements in connection with those negotiations. Apotex further admits that, because it was under no legal obligation to offer to produce anything beyond Apotex Inc.'s ANDA, and because Pfizer and FoldRx refused to agree to terms that would adequately safeguard the confidentiality of Apotex Inc.'s ANDA and the non-ANDA materials that they sought, the parties did not reach an agreement concerning Apotex Inc.'s "Offer of Confidential Access." Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 46 of the FAC and therefore denies them.

47. Apotex admits that, on October 24, 2025, Plaintiffs filed the complaint in Civil Action No. 25-01306-GBW in this District, and that that complaint was filed within 45 days of Plaintiffs' receipt of Apotex Inc.'s Notice Letter. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 47 of the FAC and therefore denies them.

48. Defendants admit that DifGen participated in the research and development of Apotex Inc.'s ANDA product, provided information used in connection with the preparation of Apotex Inc.'s ANDA, and, subject to FDA approval, is expected to manufacture and supply that product. Defendants deny any and all remaining allegations contained in this Paragraph.

**COUNT I – [ALLEGED] INFRINGEMENT OF THE '441 PATENT**

49. Defendants incorporate each of their preceding answers to paragraphs 1-48 as if fully set forth herein.

50. Defendants admit that the '441 patent is entitled "CRYSTALLINE SOLID FORMS OF 6-CARBOXY-2(3,5-DICHLOROPHENYL)-BENZOXAZOLE," and that it bears an issue

date of September 26, 2017. Defendants deny any and all remaining allegations contained in this Paragraph.

51. Defendants admit that the cover of the ’441 patent identifies Kevin Paul Girard, Andrew J. Jensen, and Kris Nicole Jones as “Inventors.” Defendants deny any and all remaining allegations contained in this Paragraph.

52. Defendants admit that the ’441 patent is assigned on its face to Pfizer.

53. Defendants are without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 53 of the FAC and therefore deny them.

54. Defendants admit that the FDA’s electronic publication entitled, *Approved Drug Products with Therapeutic Equivalence Evaluations* (“the Orange Book”), identifies the ’441 patent in connection with Vyndamax®. Defendants are without sufficient information with which to form a belief as to the truth or accuracy of the remaining allegations of Paragraph 54 of the FAC and therefore deny them.

55. Apotex admits that Apotex Inc.’s Notice Letter notified Plaintiffs Pfizer and FoldRx that Apotex Inc. submitted its ANDA to the FDA, and that the ANDA contains a Paragraph IV certification as to the ’441 patent. Apotex denies any and all remaining allegations contained in this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 55 of the FAC and therefore denies them.

56. Apotex admits that Apotex Inc.’s Notice Letter notified Plaintiffs that Apotex Inc. submitted its ANDA to the FDA, and that the ANDA contains a Paragraph IV certification as to the ’441 patent certifying that the ’441 patent is invalid, unenforceable, and/or will not be infringed by Apotex Inc.’s ANDA product. Apotex denies any and all remaining allegations contained in

this Paragraph. DifGen is without sufficient information with which to form a belief as to the truth or accuracy of the allegations of Paragraph 56 of the FAC and therefore denies them.

57. Denied.

58. Defendants admit that claim 1 of the ’441 patent recites:

> A crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole, wherein said crystalline form has an analytical parameter selected from the group consisting of
>
> a solid state NMR spectrum comprising 13C chemical shifts (ppm) at 120.8±0.2 and 127.7±0.2,
>
> a powder X-ray diffraction pattern comprising a peak at a diffraction angle (2θ) of 28.6±0.2, and
>
> a Raman spectrum comprising a Raman shift peak ($cm^{-1}$) at 1292±2.

Defendants deny all remaining allegations of this Paragraph.

59. Defendants admit that Apotex Inc.’s ANDA product contains tafamidis.

60. Denied.

61. Defendants admit that claim 15 of the ’441 patent recites “[a] pharmaceutical composition comprising the crystalline form of claim 1 in a therapeutically effective amount in admixture with at least one pharmaceutically acceptable excipient.” Defendants deny any and all remaining allegations contained in this Paragraph.

62. Denied.

63. Defendants admit that claim 16 of the ’441 patent recites “[a] method of treating transthyretin amyloid disease in a mammal, the method comprising administering to the mammal a therapeutically effective amount of the crystalline form claim 1.” Defendants deny any and all remaining allegations contained in this Paragraph.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

**COUNT II – DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ’441 PATENT**

76. Defendants incorporate each of its preceding answers to paragraphs 1-75 as if fully set forth herein.

77. Denied.

78. Denied.

79. Denied.

**[PRAYER FOR RELIEF]**

Defendants deny that Plaintiffs are entitled to any of the relief requested in their Prayer for Relief or otherwise.

## DEFENDANTS' ADDITIONAL DEFENSES

Defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex") and DifGen Pharmaceuticals LLC ("DifGen") (Apotex and DifGen, collectively, "Defendants") assert the following defenses without prejudice to the denials in this Answer and without admitting any allegations of the First Amended Complaint ("FAC") filed by Plaintiffs Pfizer Inc., FoldRx Pharmaceuticals, LLC, PF PRISM IMB B.V., and Wyeth LLC (collectively, "Plaintiffs") not otherwise admitted.

### First Additional Defense
### (Non-Infringement of U.S. Patent No. 9,770,441 B1)

The filing of Apotex Inc.'s Abbreviated New Drug Application No. ("ANDA") No. 218905 ("Apotex Inc.'s ANDA"), and the manufacture, use, offer for sale, sale, or importation of the tafamidis capsules, 61 mg, described in Apotex Inc.'s ANDA ("Apotex Inc.'s ANDA product"), do not and will not infringe, directly or indirectly, either literally or under the doctrine of equivalents, any valid and enforceable claim of the U.S. Patent No. 9,770,441 B1 ("'441 patent").

### Second Additional Defense
### (Invalidity of the '441 Patent)

The claims of the '441 patent are invalid and/or unenforceable under 35 U.S.C. §§ 101, *et seq.*, including, *inter alia*, §§ 101, 102, 103, and/or 112, or under other judicially-created bases for invalidation.

### Third Additional Defense
### (Failure to State a Claim)

Plaintiffs' FAC, in whole and/or in part, fails to state a claim upon which relief can be granted.

**Fourth Additional Defense**
**(Lack of Subject Matter Jurisdiction)**

This Court lacks subject matter jurisdiction over Plaintiffs' claims asserted under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, including Count II of the FAC.

**Fifth Additional Defense**
**(Failure to State a Claim for Exceptional Case or Willful Infringement)**

Plaintiffs' FAC fails to state a proper claim for an exceptional case and/or willful infringement.

**Reservation of Additional Defenses**

Defendants reserve the right to plead additional affirmative defenses or counterclaims that may be revealed through the course of discovery, including unenforceability.

**DEFENDANTS' COUNTERCLAIMS**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants/Counterclaim-Plaintiffs Apotex Inc. and Apotex Corp. (collectively, "Apotex") and DifGen Pharmaceuticals LLC ("DifGen") (Apotex and DifGen, collectively, "Defendants"), by way of their attorneys, hereby state for their Counterclaims against Plaintiffs/Counterclaim-Defendants Pfizer Inc., FoldRx Pharmaceuticals, LLC, PF PRISM IMB B.V., and Wyeth LLC (collectively, "Plaintiffs"), the following:

1. This is an action for a declaratory judgment of non-infringement and invalidity of one or more claims of U.S. Patent No. 9,770,441 B1 ("'441 patent"). Upon information and belief, a true and correct copy of the '441 patent is attached to the First Amended Complaint ("FAC") as Exhibit A.

**The Parties**

2. Apotex Inc. is a corporation organized and existing under the laws of Canada, with a place of business at 150 Signet Drive, Toronto, Ontario, Canada M9L 1T9.

3. Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida, 33326.

4. DifGen is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 3200 Commerce Parkway, Miramar, Florida 33025.

5. Upon information and belief, Plaintiff Pfizer Inc. is a corporation organized and existing under the laws of the State of Delaware and having a place of business at 66 Hudson Boulevard East, New York, NY 10001.

6. Upon information and belief, Plaintiff FoldRx Pharmaceuticals, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a place of business at 66 Hudson Boulevard East, New York, NY 10001.

7. Upon information and belief, Plaintiff PF PRISM IMB B.V. is a private limited company (*besloten venootschap*) organized under the law of the Netherlands, having its registered seat in Rotterdam, the Netherlands, and having its business address at Rivium Westlaan 142, 2909 LD, Cepelle aan den IJessel, the Netherlands.

8. Upon information and belief, Plaintiff Wyeth LLC is a limited liability company organized and existing under the laws of the State of Delaware with offices at 66 Hudson Boulevard East, New York, NY 10001.

9. Upon information and belief, Plaintiff FoldRx Pharmaceuticals, LLC is the holder of New Drug Application ("NDA") No. 212161 for Vyndamax®, and is a wholly owned subsidiary of Plaintiff Pfizer Inc.

**Jurisdiction and Venue**

10. These Counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003) ("MMA") (codified in relevant part at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e)(5)).

11. This Court has original jurisdiction over the subject matter of these Counterclaims under 28 U.S.C. §§ 1331 and 1338(a); under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and under the MMA (21 U.S.C. § 355(j) and 35 U.S.C. § 271(e)(5)).

12. This Court has subject matter jurisdiction over these Counterclaims for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a), 2201(a) and (b), and 2202, based on

an actual controversy between Defendants and Plaintiffs arising under the Patent Laws of the United States, 35 U.S.C. § 271(e)(2)(A).

13. This Court has personal jurisdiction over Plaintiffs based, *inter alia*, on the filing of this lawsuit in this jurisdiction and because Plaintiffs are doing business in this jurisdiction. Additionally, this Court has personal jurisdiction over Plaintiffs Pfizer Inc., FoldRx Pharmaceuticals, LLC, and Wyeth LLC because they are domiciled in this jurisdiction.

14. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c).

**Facts Common to All Counts**

15. On or about September 26, 2017, the U.S. Patent and Trademark Office ("PTO") issued the '441 patent.

16. Plaintiffs purport to own and have the right to enforce the '441 patent.

17. Plaintiff FoldRx Pharmaceuticals LLC purports to be the holder of NDA No. 212161 for tafamidis capsules, 61 mg, sold in the United States under the trademark Vyndamax®.

18. On or about May 3, 2019, the U.S. Food and Drug Administration ("FDA") approved NDA No. 212161.

19. Plaintiffs purport and claim to have the right to enforce the '441 patent, and have listed that patent in the FDA's publication entitled *Approved Drug Products with Therapeutic Equivalence Evaluations*, otherwise known as the "Orange Book," for Vyndamax®.

20. Defendant/Counterclaim-Plaintiff Apotex Inc. has filed Abbreviated New Drug Application ("ANDA") No. 218905 ("Apotex Inc.'s ANDA") with the FDA seeking approval for tafamidis capsules, 61 mg ("Apotex Inc.'s ANDA product"), identifying Vyndamax® as approved in NDA No. 212161 as the Reference Listed Drug pursuant to 21 C.F.R. § 314.3.

21. Because Apotex Inc.'s ANDA seeks FDA approval to market Apotex Inc.'s ANDA product prior to the expiration of the '441 patent, Apotex Inc.'s ANDA includes a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) for that patent.

22. Plaintiffs have sued Defendants in this District for, *inter alia*, alleged infringement of the '441 patent under 35 U.S.C. § 271(e)(2)(A).

**Count I**
**(Declaratory Judgment of Non-Infringement of the '441 Patent)**

23. Defendants reallege and incorporate by reference the allegations of Paragraphs 1-22 of these Counterclaims as if fully set forth herein.

24. There is an actual, substantial, and continuing case or controversy between Defendants and Plaintiffs regarding, *inter alia*, non-infringement of the claims of the '441 patent under 35 U.S.C. § 271(e)(2)(A).

25. The filing of Apotex Inc.'s ANDA has not infringed and does not infringe, either directly or indirectly, any valid or enforceable claim of the '441 patent, either literally or under the doctrine of equivalents.

26. Defendants are entitled to a judicial declaration that the filing of Apotex Inc.'s ANDA has not infringed and does not infringe, either directly or indirectly, any valid or enforceable claim of the '441 patent, either literally or under the doctrine of equivalents, and that, consequently, Apotex Inc.'s ANDA product—if made, used, sold, offered for sale, imported or marketed—does not and would not infringe, either directly or indirectly, any valid and enforceable claim of the '441 patent, either literally or under the doctrine of equivalents.

**Count II**
**(Declaratory Judgment of Invalidity of the '441 Patent)**

27. Defendants reallege and incorporate by reference the allegations of Paragraphs 1-26 of these Counterclaims as if fully set forth herein.

28. There is an actual, substantial, and continuing case or controversy between Defendants and Plaintiffs regarding, *inter alia*, the invalidity of the '441 patent.

29. The claims of the '441 patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

***Obviousness***

30. The claims of the '441 patent are obvious over Christine E. Bulawa et al., *Tafamidis, a potent and selective transthyretin kinetic stabilizer that inhibits the amyloid cascade*, 109(24) PNAS 9629 (2012) and Supplemental Information for same ("Bulawa"), and/or Hossein Razavi et al., *Benzoxazoles as Transthyretin Amyloid Fibril Inhibitors: Synthesis, Evaluation, and Mechanism of Action*, 42 ANGEW. CHEM. INT. 2758 (2003) and Supporting Information ("Razavi"), in view of the person of ordinary skill in the art's ("POSA") knowledge of routine polymorph screening, as embodied in prior art references such as John Haleblian et al., *Pharmaceutical Applications of Polymorphism*, 58(8) J. Pharm. Sci. 911 (1969); Stephen Byrn et al., *Pharmaceutical Solids: A Strategic Approach to Regulatory Considerations*, 12(7) Pharm Res. 945 (1995); Chong-Hui Gu et al., Polymorph Screening: Influence of Solvents on the Rate of Solvent-Mediated Polymorphic Transformation, 90 (11) J. Pharm. Scis. 1878 (2001); Sherry L. Morissette et al., *High-throughput crystallization: polymorphs, salts, co-crystals and solvates of pharmaceutical solids*, 56 ADV. DRUG DELIV. REV. 275 (2004); Jonathan M. Miller et al., *Identifying the Stable Polymorph Early in the drug Discovery -Development Process*, 10 Pharm

Dev. & Tech. 291 (2005); G. Patrick Stahly, *Diversity in Single- and Multiple-Component Crystals. The Search for and Prevalence of Polymorphs and Cocrystals*, 7(6) CRYSTAL GROWTH & DESIGN 1007 (2007); Jaakko Aaltonen et al., *Solid form Screening – A Review*, 71 EUR. J. PHARM. & BIOPHARM. 23 (2009); Anthony M. Campeta et al., *Development of a Targeted Polymorph Screening Approach for a Complex Polymorphic and Highly Solvating API*, 99(9) J. PHARM. SCIS. 3874 (2010); Ann Newman, *Specialized Solid Form Screening Techniques*, 17 ORG. PROCESS RES., DEV. 457 (2012); and Eun Hee Lee, *A practical guide to pharmaceutical polymorph screening and selection*, 9 ASIAN J. PHARM. SCIS. 163 (2014) (collectively, "the Polymorph Screening References") Bulawa and Razavi both disclose prior art processes of preparing tafamidis, and that tafamidis was already a clinically advanced compound being developed as a solid oral dosage form, which would have required a POSA to conduct standard preformulation studies to identify the thermodynamically stable and manufacturable crystalline form. Plaintiffs have contended in this action that Form 1 is "the thermodynamically stable form under normal manufacturing conditions" and that other forms convert to it. Pls.' Initial Infringement Contentions Ex. A at 2. Through routine polymorphs screening as exemplified in the Polymorph Screening References, the POSA would have inevitably recrystallized tafamidis in an appropriate solvent (*e.g.*, 2-propanol) to obtain the most stable solid form, which Plaintiffs contend is the claimed Form 1 material.

31. The POSA would have had a strong expectation of success in identifying Form 1 through conventional screening. Tafamidis was already a known, isolated, pharmaceutically relevant compound in advanced clinical development. Bulawa and Razavi provide the active pharmaceutical ingredient ("API") and its synthesis, while the Polymorph Screening References provide a clear, routine roadmap for identifying its stable solid form. A POSA would have

expected that a standard screening protocol, including recrystallization and slurries using a wide variety of solvents, would successfully yield the thermodynamically stable polymorph, which, according to Plaintiffs, is the claimed Form 1. Accordingly, the claimed crystalline Form 1 represents the expected and predictable outcome of routine development work, not an inventive advance.

32. Thus, the claims of the '441 patent are obvious. Claims 1-12, which recite genuses of tafamidis crystals that include Form 1, are therefore invalid because Form 1 itself is obvious, as explained above. Claim 13 requires the crystal of claim 1 to be "non-hygroscopic and anhydrous," both of which are inherent properties of Form 1, and is therefore also obvious. Claim 14 requires the crystalline form of claim 1 to be substantially pure. A POSA would have readily purified the stable Form 1 inevitably identified during a routine polymorph screen, and claim 14 is therefore obvious. Claim 15 recites a pharmaceutical composition comprising the crystalline form of claim 1 together with at least one pharmaceutically acceptable excipient, while claim 16 recites a method of treating transthyretin amyloid disease using a therapeutically effective amount of the crystalline form of claim 1. The very purpose of the preformulation work a POSA would have undertaken—including the routine polymorph screen that would inevitably uncover the claimed Form 1—would have been to formulate tafamidis in a solid oral dosage form with excipients. That formulation work is routine and well within the ordinary skill of a POSA, making claim 15 obvious. Claim 16 likewise is obvious because Bulawa teaches that tafamidis was already in clinical development for treating transthyretin amyloid disease, and a POSA would have been motivated to administer the claimed Form 1 for that same therapeutic use. Any alleged secondary considerations do not overcome the strong *prima facie* case of obviousness.

***Lack of Written Description***

33. The specification of the ’441 patent does not contain a written description of the subject matter recited in the claims of the ’441 patent sufficient to allow a POSA to recognize that the named inventors invented what is claimed.

34. For example, claim 1 of the ’441 patent recites as follows:

> A crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole, wherein said crystalline form has an analytical parameter selected from the group consisting of
>
> a solid state NMR spectrum comprising 13C chemical shifts (ppm) at 120.8±0.2 and 127.7±0.2,
>
> a powder X-ray diffraction pattern comprising a peak at a diffraction angle (2θ) of 28.6±0.2, and
>
> a Raman spectrum comprising a Raman shift peak ($cm^{-1}$) at 1292±2.

35. Claim 1 is directed to a genus of crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole. That is, the literal scope of claim 1 covers any crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole that exhibits at least one of the recited analytical parameters.

36. However, the specification only describes one crystalline form of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole that exhibits at least one of the recited analytical parameters: “Form 1.” *See generally* D.I. 71, FAC Ex. A, ’441 patent at col. 1, ll. 1 – col. 23, ll. 4.

37. Nowhere in the specification of the ’441 patent is there a description of a genus or group of crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole that exhibit any one of three different analytical parameters recited in claim 1.

38. The specification alleges that “whether a compound will crystallize, under what conditions it will crystallize, how many crystalline solid forms of the compound might exist, or the solid-state of any of those forms” is entirely unpredictable. *See id*. at col. 9, ll. 34-38. But it

provides no direction or guidance on how to identify or prepare those other crystalline forms covered by claim 1 (beyond Form 1), how many of them in fact exist, and what their structures or identifying features are that will result in analytical parameters recited in claim 1.

39. The analytical parameters recited in claim 1 are functional limitations that define the claimed genus of crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole.

40. There is nothing in the specification of the ’441 patent demonstrating to a POSA that the named inventors were in possession of the genus of crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole recited in claim 1; it is thus invalid for failing to comply with the written description requirement. Claims 2-10 and 13-16 depend from claim 1, either directly or indirectly, and are invalid for the same reason; specifically, they cover subject matter not adequately described in the ’441 patent specification (*viz*., the subject matter of claim 1).

41. Claims 11 and 12 recite subgenera of claim 1 that are themselves nowhere described in the specification of the ’441 patent, and are thus also invalid for failure to satisfy the written description requirement.

***Non-Enablement***

42. The claims of the ’441 patent are also invalid for lack of enablement, as the ’441 patent specification does not describe the manner and process of making and using the invention so as to enable a POSA in the art to make and use the full scope of the invention without undue experimentation. Specifically, nowhere in the ’441 patent specification is there a teaching of how to make and use crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole that exhibit any one of the three analytical parameters recited in claim 1 beyond Form 1.

43. It would require undue experimentation—including the preparation of numerous crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole and subjecting each of those

forms to X-ray powder diffraction, solid state nuclear magnetic resonance, and Raman spectroscopy testing—for a POSA to determine what crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole would exhibit at least one of the analytical parameters recited in claim 1 of the ’441 patent.

44. Claim 1 is therefore invalid for lack of enablement. Claims 2-10 and 13-16 depend from claim 1, either directly or indirectly, and are invalid for the same reason as they are not enabled to their full scope.

45. Claims 11 and 12 recite subgenera of claim 1 that are also not enabled. Specifically, nowhere in the ’441 patent specification is there a teaching of how to make and use crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole that exhibit the analytical parameters recited in those claims beyond Form 1.

46. It would require undue experimentation—including the preparation of numerous crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole and subjecting each of those forms to X-ray powder diffraction, solid state nuclear magnetic resonance, and/or Raman spectroscopy testing—for a POSA to determine what crystalline forms of 6-carboxy-2-(3,5-dichlorophenyl)-benzoxazole would exhibit the analytical parameters recited in claims 11 and/or 12 of the ’441 patent

47. Claims 11 and 12 are therefore invalid for lack of enablement.

* * *

48. Defendants are entitled to a judicial declaration that the claims of the ’441 patent are invalid.

**<u>Prayer for Relief</u>**

WHEREFORE, Defendants respectfully pray for judgment in their favor and against Plaintiffs:

A. Declaring that the filing of Apotex Inc.'s ANDA, has not infringed and does not infringe, either directly or indirectly, any valid or enforceable claim of the '441 patent, either literally or under the doctrine of equivalents, and that, consequently, Apotex Inc.'s ANDA product—if made, used, sold, offered for sale, imported or marketed—does not and would not infringe, either directly or indirectly, any valid or enforceable claim of the '441 patent, either literally or under the doctrine of equivalents;

B. Declaring that the claims of the '441 patent are invalid;

C. Dismissing Plaintiffs' Declaratory Judgment claims, including Count II of the FAC, for lack of subject matter jurisdiction;

D. Ordering that Plaintiffs' FAC be dismissed with prejudice and judgment be entered in favor of Defendants;

E. Declaring this case exceptional and awarding Defendants their reasonable attorneys' fees and costs under 35 U.S.C. § 285;

F. Ordering that Plaintiffs, and their officers, agents, servants, employees, attorneys, successors and any person who acts in concert or participation with them, be preliminarily and permanently enjoined from using the '441 patent to block, hamper, hinder or obstruct FDA approval of Apotex Inc.'s ANDA; and

G. Awarding such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: September 17, 2026

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
dab@pmhdelaw.com

*Of Counsel*:

Andrew M. Alul
Richard T. Ruzich
Roshan P. Shrestha, Ph.D.
Luke T. Shannon
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
312-527-4000
aalul@taftlaw.com
rruzich@taftlaw.com
rshrestha@taftlaw.com
lshannon@taftlaw.com

*Attorneys for Defendants Apotex Inc., Apotex Corp., and DifGen Pharmaceuticals LLC*